# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT COURT OF MARYLAND

STEPHEN V. KOLBE, *et al.*,          *

    *Plaintiffs,*          *

    v.          *          Civil Case No. 13-cv-02841-CCB

MARTIN O'MALLEY, *et al.*,          *

    *Defendants.*          *

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT

DOUGLAS F. GANSLER
Attorney General of Maryland

MATTHEW J. FADER (Fed. Bar # 29294)
STEPHEN M. RUCKMAN (Fed. Bar # 28981)
Assistant Attorney General
200 St. Paul Place, 20th Floor
Baltimore, Maryland 21202
410-576-7906 (tel.); 410-576-6955 (fax)
mfader@oag.state.md.us

DAN FRIEDMAN (Fed. Bar # 24535)
Assistant Attorney General
Office of the Attorney General
Legislative Services Building
90 State Circle, Room 104
Annapolis, Maryland 21401
410-946-5600 (tel.)
dfriedman@oag.state.md.us

Dated:  November 22, 2013          Attorneys for Defendants

# TABLE OF CONTENTS

Page

INTRODUCTION .................................................................................................. 1

FACTUAL BACKGROUND ................................................................................ 2

STANDARD OF REVIEW .................................................................................. 6

ARGUMENT ........................................................................................................ 7

I.   THE PLAINTIFFS' CHALLENGE TO CHAPTER 427'S BAN ON HIGH-CAPACITY
     DETACHABLE MAGAZINES FAILS TO STATE A CLAIM ON WHICH RELIEF
     CAN BE GRANTED BECAUSE THE BAN DOES NOT IMPLICATE THE SECOND
     AMENDMENT (COUNT TWO). ....................................................................... 7

     A.   The Second Amendment Framework ........................................................ 7

     B.   Maryland's Ban on High-Capacity Detachable Magazines Does Not
          Fall Within the Scope of the Second Amendment Right. ..................... 10

II.  THE PLAINTIFFS FAIL TO STATE A CLAIM FOR VIOLATION OF THE EQUAL
     PROTECTION OF THE LAWS (COUNT THREE). ............................................ 16

III. THE PLAINTIFFS HAVE FAILED TO STATE A VOID-FOR-VAGUENESS CLAIM
     UPON WHICH RELIEF CAN BE GRANTED (COUNT FOUR). .......................... 21

     A.   The Plaintiffs' Due Process Challenge Fails Because a Facial
          Challenge Based on Vagueness Can Only Succeed if the Law Is
          Impermissibly Vague in All of Its Applications ................................... 23

     B.   To the Extent the Plaintiffs Are Making an As-Applied Challenge,
          They Have Failed to Plead a Plausible Claim of Vagueness in Any
          Potential Application of the Statute to Them. ..................................... 31

IV.  THE BUSINESS PLAINTIFFS' SECOND AMENDMENT CLAIMS MUST BE
     DISMISSED BECAUSE THE SECOND AMENDMENT DOES NOT PROTECT A
     RIGHT TO SELL FIREARMS. ......................................................................... 32

CONCLUSION .................................................................................................. 35

# TABLE OF AUTHORITIES

Page

## Cases

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................7

*Bell v. Maryland*, 378 U.S. 226 (1964) ...................................................................... 19

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..........................................................6

*Cabell v. Chavez-Salido*, 454 U.S. 432 (1982)............................................................ 19

*City of Chicago v. Morales*, 527 U.S. 41 (1999) ......................................................... 23

*City of Clebourne v. Clebourne City Ctr., Inc.* 473 U.S. 432 (1985)......................... 17, 20

*Coal. of N.J. Sportsmen, Inc. v. Whitman*, 44 F. Supp. 2d 666 (D.N.J. 1999) ................ 25

*Crawford v. Marion Cnt. Election Bd.*, 553 U.S. 181 (2008) .......................................... 24

*District of Columbia v. Heller,* 554 U.S. 570 (2008) ............................. 7, 8, 11, 13, 14, 15

*Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011)..................................................... 34

*Federal Communications Commission v. Fox TV Stations*, 132 S. Ct. 2307 (2012) ........ 22

*Foley v. Connelie*, 435 U.S. 291 (1978) .......................................................................... 18

*Gallagher v. City of Clayton*, 699 F.3d 1013 (8th Cir. 2012) .......................................... 24

*Giarratano v. Johnson*, 521 F.3d 298 (4th Cir. 2008)...................................................... 17

*Grayned v. City of Rockford*, 408 U.S. 104 (1972) .......................................................... 21

*Heller v. District of Columbia*, 670 F.3d 1244 (D.C. Cir. 2011) ...................................... 15

*Hodges v. Colorado Springs*, 1992 U.S. App. LEXIS 10105 (10th Cir. May 4, 1992) ....................................................................................................................... 20

*Kowalski v. Tesmer*, 543 U.S. 125 (2004)........................................................................ 34

*Martin v. Lloyd*, 700 F.3d 132 (4th Cir. 2012) .................................................. 22, 23, 24, 27

*McDonald v. City of Chicago*, ___ U.S. ___, 130 S. Ct. 3020 (2010) ......................... 9, 12

*Pizzo v. City & County of San Francisco*, 2012 U.S. Dist. LEXIS 173370 (N.D. Cal. Dec. 5, 2012) ................................................................................................ 20

*Richmond Boro Gun Club v. City of New York*, 896 F. Supp. 276 (E.D.N.Y. 1995) ........ 25

*San Diego County Gun Rights Cmte. v. Reno*, 98 F.3d 1121 (9th Cir. 1996) .................. 17

*Silveira v. Lockyer*, 312 F.3d 1052 (9th Cir. 2002) ........................................................ 21

*Smith v. Goguen*, 415 U.S. 566, 574 (1974) ................................................................... 22

*Springfield Armory, Inc. v. City of Columbus*, 29 F.3d 250 (6th Cir. 1994) .................... 30

*United States v. Aguilar*, 585 F.3d 652 (4th Cir. 2009) ................................................... 22

*United States v. Chafin*, 423 F. App'x. 342 (4th Cir. 2011) ....................................... 33, 34

*United States v. Chapman*, 666 F.3d 220 (4th Cir. 2012) ........................................... 11, 14

*United States v. Chester*, 628 F.3d 673 (4th Cir. 2010) ................................................. 9, 11

*United States v. Comstock*, 627 F.3d 513 (4th Cir. 2010) ................................................ 23

*United States v. Conrad*, 2013 WL 546373 (W.D. Va. Feb. 13, 2013) ........................... 33

*United States v. Hager*, 721 F.3d 167 (4th Cir. 2013) .................................................... 22

*United States v. Klecker*, 348 F.3d 69 (4th Cir. 2003) ................................................... 23

*United States v. Lanning*, 723 F.3d 476 (4th Cir. 2013) ................................................. 22

*United States v. Lee*, 815 F.2d 971 (4th Cir. 1987) ........................................................ 24

*United States v. Masciandaro*, 638 F.3d 458 (4th Cir. 2011) ........................................... 9

*United States v. Miller*, 307 U.S. 174 (1939) ................................................................. 12

*United States v. Salerno*, 481 U.S. 739 (1987) ............................................................... 24

*United States v. Whorley*, 550 F.3d 326 (4th Cir. 2008) ..................................................... 22

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455
　U.S. 489 (1983) ................................................................................. 22, 23, 24

*Wag More Dogs, LLC v. Cozart*, 680 F.3d 359 (4th Cir. 2012) .................................................7, 22

*Washington State Grange v. Washington State Republican Party*, 552 U.S. 442
　(2008) ..................................................................................................... 24

*White Tail Park, Inc. v. Stroube*, 413 F.3d 451 (4th Cir. 2005) .................................... 32, 34

*Williams v. Puerto Rico*, 910 F. Supp. 2d 386 (D.P.R. 2012) ............................................ 20

*Wilson v. County of Cook*, 968 N.E.2d 641 (Ill. 2012) ...................................................... 30

*Woollard v. Gallagher*, 712 F.3d 865 (4th Cir.), *cert. denied* No. 13-42, 2013 U.S.
　LEXIS 7384 (2013).......................................................................... 4, 9, 24

*W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100 (2d. Cir.
　2008) ..................................................................................................... 34

*Wroblewski v. City of Washburn*, 965 F.2d 452 (7th Cir., 1992) ...................................... 17

## Constitutional Provisions

U.S. Const., amend. II ............................................................................. passim

U.S. Const., amend. V ................................................................................. 2

U.S. Const., amend. XIV, § 1 ......................................................................... 16

## Federal Statutes

7 U.S.C. § 2238 ..................................................................................... 12

10 U.S.C. § 899 ..................................................................................... 12

10 U.S.C. § 904 ..................................................................................... 12

10 U.S.C. § 2110 ................................................................................... 12

10 U.S.C. § 2385 ...................................................................................................... 12

10 U.S.C. § 2538 ...................................................................................................... 12

10 U.S.C. § 2539 ...................................................................................................... 12

10 U.S.C. § 2576 ...................................................................................................... 12

10 U.S.C. § 2576a .................................................................................................... 12

10 U.S.C. § 4655 ...................................................................................................... 12

10 U.S.C. § 4684 ...................................................................................................... 12

10 U.S.C. § 9655 ...................................................................................................... 12

10 U.S.C. § 9684 ...................................................................................................... 12

14 U.S.C. § 655 ........................................................................................................ 12

16 U.S.C. § 3912 ...................................................................................................... 12

18 U.S.C. § 922(a)(1)(A) .......................................................................................... 12

18 U.S.C. § 922(a)(1)(B) .......................................................................................... 12

18 U.S.C. § 922(d)(3) ............................................................................................... 34

18 U.S.C. § 922(g) .................................................................................................... 12

18 U.S.C. § 926B ...................................................................................................... 20

18 U.S.C. § 926C ...................................................................................................... 20

18 U.S.C. § 962 ........................................................................................................ 12

18 U.S.C. § 967 ........................................................................................................ 12

18 U.S.C. § 1022 ...................................................................................................... 12

18 U.S.C. § 1386 ...................................................................................................... 12

22 U.S.C. § 450 ........................................................................................... 12

22 U.S.C. § 522 ........................................................................................... 12

22 U.S.C. § 523 ........................................................................................... 12

22 U.S.C. § 524 ........................................................................................... 12

22 U.S.C. § 527 ........................................................................................... 12

22 U.S.C. § 2349aa-2 ................................................................................... 12

22 U.S.C. § 2778 ......................................................................................... 12

26 U.S.C. § 995 ........................................................................................... 12

26 U.S.C. § 5847 ......................................................................................... 12

31 U.S.C. § 321 ........................................................................................... 12

## State Statutes

Md. Code Ann., Crim. Law § 4-301 ................................................................ 3

Md. Code Ann., Crim. Law § 4-301(f) ........................................................... 10

Md. Code Ann., Crim. Law § 4-302(7) ...................................................... 17, 18

Md. Code Ann., Crim. Law § 4-303(a) ............................................................ 3

Md. Code Ann., Crim. Law § 4-303(b)(2) ....................................................... 3

Md. Code Ann., Crim. Law § 4-303(b)(3) ....................................................... 3

Md. Code Ann., Crim. Law § 4-305 ................................................................ 3

Md. Code Ann., Crim. Law § 4-305(b) ........................................................... 10

Md. Code Ann., Crim. Law § 4-306(a) ........................................................... 29

Md. Code Ann., Pub. Safety 3-101(e) ............................................................ 17

Md. Code Ann., Pub. Safety § 5-101(r) ...................................................... 7, 29

Md. Code Ann., Pub. Safety § 5-101(r)(2) ................................................................... 7, 29

Md. Code Ann., Pub. Safety § 5-117 ............................................................................ 29

Md. Code Ann., Pub. Safety § 5-118 ............................................................................ 29

Md. Code Ann., Pub. Safety § 5-123(a) ....................................................................... 29

Md. Code Ann., Pub. Safety § 5-144 ............................................................................ 29

**Rules**

Fed. R. Civ. P. 12(b)(1) ................................................................................................. 2

Fed. R. Civ. P. 12(b)(6) ............................................................................................... 16

**Regulations**

COMAR 12.04.02.03A .................................................................................................. 18

COMAR 12.04.02.06A .................................................................................................. 18

COMAR 12.04.02.06B(2) ............................................................................................. 18

COMAR 12.04.02.06B(3) ............................................................................................. 19

COMAR 12.04.02.07 .................................................................................................... 18

COMAR 12.04.02.08A .................................................................................................. 18

COMAR 12.04.02.08E .................................................................................................. 19

COMAR 12.04.02.10C .................................................................................................. 19

**Miscellaneous**

1 A New and Complete Law Dictionary ........................................................................ 11

1 Dictionary of the English Language 106 (4th ed.) (reprinted 1978) ............................ 11

4 Blackstone, Commentaries on the Laws of England (1769) ......................................... 8

95 Atty. Gen. Md. 101 (2010) ......................................................................................... 26

2007 Laws of Maryland, ch. 427 .............................................................................. passim

Puerto Rico's Weapons Act of 2000, P.R. Laws Ann. Tit. 25, §§ 455-460(k) ................ 20

State of Connecticut Dep't of Emerg. Srvcs. and Public Protection, State Police
     Identify Weapons Used in Sandy Hook Investigation; Investigation Continues,
     Jan. 18, 2013, *available at* http://www.ct.gov/despp/cwp/view.asp?
     Q=517284&A=4226 ..................................................................................................... 4

The American Heritage Dictionary of the English Language 405 (5th ed. 2011) ............ 30

## INTRODUCTION

Defendants Governor Martin O'Malley, Attorney General Douglas F. Gansler, Superintendent of State Police Colonel Marcus Brown, all sued in their official capacities, and the Maryland State Police, have moved to dismiss counts Two, Three, and Four of the third amended complaint ("Th. Am. Complaint") for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). The plaintiffs' claim in Count Two—which alleges that Maryland's ban on the purchase or receipt of large-capacity detachable magazines violates the right to keep and bear arms in the Second Amendment to the United States Constitution—fails to state a claim upon which relief can be granted because the ban does not burden conduct protected by the Second Amendment.  The plaintiffs' claim in Count Three—which alleges that the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution is violated by a narrow exception to bans on the purchase or receipt of assault long guns and high-capacity detachable magazines for certain transfers by law enforcement agencies to retired law enforcement officers—fails to state a claim because the plaintiffs have not stated a plausible claim that they are similarly situated to the retired law enforcement officers.  And the plaintiffs' claim in Count Four—which alleges that the definition of an assault long gun, which has been in existence in connection with a separate statute for more than two decades, is void for vagueness in violation of the Due Process Clause of

the Fifth Amendment—fails to state a claim because the plaintiffs have not stated a plausible claim for the facial invalidity of the statute.

Additionally, four of the plaintiffs, Wink's Sporting Goods, Inc., Atlantic Guns, Inc., Maryland Licensed Firearm Dealers Association, Inc., and, to the extent it purports to represent the interests of member firearms sellers, the National Sports Shooting Foundation (together, the "Business Plaintiffs"), lack the requisite standing to bring claims under the Second Amendment because there is no Second Amendment right to sell a firearm.  As a result, Counts One and Two must be dismissed as to those plaintiffs pursuant to Fed. R. Civ. P. 12(b)(1).

## FACTUAL BACKGROUND

The Firearm Safety Act of 2013, Chapter 427 of the 2007 Laws of Maryland (hereinafter, "Chapter 427"), represents a comprehensive effort to amend Maryland's gun laws to enhance public safety, including by the establishment of a handgun qualification license for purchasers of handguns, a ban on armor-piercing bullets, a number of provisions addressing mental health issues connected with firearms, and several other provisions.  *See generally* 2007 Laws of Maryland, ch. 427 (attached as Exhibit A).

The plaintiffs in this case challenge two aspects of Chapter 427.  First, the plaintiffs challenge a provision that prohibits a Maryland person, after October 1, 2013, from, among other things, possessing, selling, or receiving "assault long guns" and "copycat weapons," (collectively "assault weapons") as those terms are specifically

defined.  Md. Code Crim. Law ("CR") §§ 4-303(a), 4-301.[1]  That prohibition does not apply to any assault long guns or copycat weapons that were lawfully possessed, or for which a purchase order or application to purchase was completed, before October 1, 2013.  CR § 4-303(b)(3).  Moreover, licensed firearms dealers to whom the law applies may "continue to possess, sell, offer for sale, or transfer an assault long gun or copycat weapon that the licensed firearms dealer lawfully possessed on or before October 1, 2013." CR § 4-303(b)(2).

Second, the plaintiffs challenge a provision of Chapter 427 that generally prohibits a Maryland person, including a licensed firearms dealer, from, among other things, possessing, selling, or receiving "a detachable magazine that has a capacity of more than 10 rounds of ammunition for a firearm."  CR § 4-305.  This represents a reduction from the prohibition on detachable magazines with a capacity of more than 20 rounds, which was in place before October 1, 2013.

Chapter 427 was enacted in the wake of a series of mass shootings perpetrated by individuals using assault weapons and high-capacity magazines, most immediately the murder of 20 elementary school students and six teachers at an elementary school in Newtown, Connecticut on December 14, 2012.  According to the Connecticut State Police, the Newtown shooter used a Bushmaster assault rifle, specifically the Bushmaster

---

[1]     Chapter 427 left in place Maryland's longstanding ban on "assault pistols."  The plaintiffs do not challenge that ban.

.223 caliber XM 15-E2S assault rifle, with a high-capacity 30-round magazine to perpetrate his heinous crime.[2]

Chapter 427 was introduced on January 18, 2013 as Senate Bill 281, passed by the General Assembly on April 4, 2013, and signed by Governor O'Malley on May 16, 2013. *See* History of Ch. 427, *available at* http://mgaleg.maryland.gov/webmga/frmMain.aspx?pid=billpage&stab=03&id=sb0281&tab=subject3&ys=2013RS (last visited Sept. 30, 2013).

Andrew C. Turner is an individual plaintiff who alleges:  (1) that he owns what are now classified as assault long guns as well as detachable magazines holding in excess of ten rounds;[3] (2) that if allowed by law, he plans on purchasing additional such assault long guns and high-capacity detachable magazines in the future;[4] (3) that he uses his assault long guns for home defense and hunting;[5] and (4) that he suffers a physical ailment as a result of which, he contends, he requires access to detachable magazines

---

[2]    *See* State of Connecticut Dep't of Emerg. Srvcs. and Public Protection, State Police Identify Weapons Used in Sandy Hook Investigation; Investigation Continues, Jan. 18, 2013, *available at* http://www.ct.gov/despp/cwp/view.asp?Q=517284&A=4226 (last visited Sept. 27, 2013).

[3]    *See* ECF No. 3-2, Declaration of Andrew Turner ("Turner Decl.") ¶ 3; *see also* declarations of former plaintiffs:  ECF No. 3-3, Declaration of Shawn J. Tardy ("Tardy Decl.") ¶ 3; ECF No. 3-4, Declaration of Matthew Godwin ("Godwin Decl.") ¶ 3.

[4]    *See* ECF No. 30, Complaint ¶ 73; ECF No. 3-2, Turner Decl. ¶ 5; *see also* ECF No. 3-3, Tardy Decl. ¶ 5; ECF No. 3-4, Godwin Decl. ¶ 5.

[5]    *See* ECF No. 3-2, Turner Decl. ¶ 6; ECF No. 3-3, *see also* Tardy Decl. ¶ 8; ECF No. 3-4, Godwin Decl. ¶ 6.

with a quantity in excess of 10 rounds to "fully utilize" firearms he owns.[6]   Stephen V.
Kolbe is an individual plaintiff who alleges that he does not currently own any of the
banned firearms, but wishes to purchase one.   *See* ECF No. 30, Th. Am. Complaint ¶ 4.

Plaintiffs Wink's and Atlantic Guns are business plaintiffs who allege that
"regulated long guns classified as 'assault weapons' by [Chapter 427] represent a
substantial number of all long guns sold by" them, especially "firearms based on the AR-
15 platform."[7]   They further allege that their inability to sell detachable magazines
holding in excess of ten rounds will result in lost sales and the necessity of refunding
money with respect to other sales.[8]

Plaintiff Maryland Licensed Firearm Dealers Association, Inc. ("MLFDA") is a
Maryland corporation whose members are individual firearms dealers.   ECF No. 30, Th.
Am. Complaint ¶ 14.   MLFDA alleges that weapons now classified as "assault long
guns" "represent a substantial number of all long guns sold" by its members, specifically
with respect to firearms based on the AR-15 platform, and that its members also sell
detachable magazines capable of holding in excess of ten rounds.[9]

Plaintiffs Associated Gun Clubs of Baltimore ("AGC"), Maryland State Rifle and
Pistol Association ("MSRPA"), Maryland Shall Issue, Inc. ("MSI"), and the National

---

[6]       *See* ECF No. 3-2, Turner Decl. ¶ 6; ECF No. 3-3, *see also* Tardy Decl. ¶ 8; ECF
No. 3-4, Godwin Decl. ¶ 6.

[7]       *See* ECF No. 3-5, Declaration of Carol Wink ("Wink Decl.") ¶ 4; ECF No. 3-6,
Declaration of Stephen Schneider ("Schneider Decl.") ¶ 6.

[8]       *See* ECF No. 3-5, Wink Decl. ¶ 4; ECF No. 3-6, Schneider Decl. ¶ 6.

[9]       *See* ECF No. 3-6, Schneider Decl. ¶ 6.

Sports Shooting Foundation ("NSSF") are organizations claiming to represent the interests of unidentified business or individual members' interests with respect to the laws at issue.  ECF No. 30, Th. Am. Complaint ¶¶ 10-13.

The plaintiffs allege that the weapons classified as assault long guns and banned by Chapter 427, as well as the high-capacity detachable magazines banned by Chapter 427, are commonly possessed and used in Maryland, ECF No. 30, Th. Am. Complaint ¶¶ 28, 36, 42, 46, 49, 61, 63, 81; are commonly used and useful for self-defense, hunting, and sport, *id.* ¶¶ 36, 47, 50, 64, 67, 68, 71, 82, 84, 87; and are rarely used in crimes, *id.* ¶¶ 41, 48.  The plaintiffs also allege that the individual plaintiffs and individual members of the organizational plaintiffs want to buy weapons classified as assault long guns and banned by Chapter 427, as well as high-capacity detachable magazines with a capacity of more than 10 rounds banned by Chapter 427, for use in home self-defense, hunting, or sport shooting, *id.* ¶¶ 37, 38, 43, 73, 88; and that the business plaintiffs and business members of the organizational plaintiffs want to sell such weapons and magazines, *id.* ¶¶ 39, 73, 88.

## STANDARD OF REVIEW

To survive a motion to dismiss for failure to state a claim on which relief can be granted, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although the Court is required to "'take the facts in the light most favorable to the plaintiff,'" the Court "need

not accept legal conclusions couched as facts or 'unwarranted inferences, unreasonable conclusions, or arguments.'"  *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) (quoting *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (internal citation omitted)).  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

## ARGUMENT

I.  **THE PLAINTIFFS' CHALLENGE TO CHAPTER 427'S BAN ON HIGH-CAPACITY DETACHABLE MAGAZINES FAILS TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED BECAUSE THE BAN DOES NOT IMPLICATE THE SECOND AMENDMENT (COUNT TWO).**

### A.  The Second Amendment Framework

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const., amend. II.  In *District of Columbia v. Heller*, the Supreme Court reviewed a District of Columbia law that imposed a "complete prohibition" on the possession of handguns in the home.  554 U.S. 570, 629 (2008).  After engaging in a lengthy textual and historical analysis of the Second Amendment, the Court concluded: (1) that the amendment codified a pre-existing right, *id.* at 592; (2) that this right is an individual right, not dependent on militia service, *id.*; and (3) that, "whatever else [the Second Amendment] leaves to future evaluation, it surely elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home," *id.* at 635.  As a result, the Supreme Court held that the District could not ban

7

handguns, the class of arms "that is overwhelmingly chosen by American society" for the lawful purpose of self-defense in the home. *Id.* at 628.

Although the Supreme Court declined to speculate about other conduct that might fall *within* the protection of the Second Amendment, *id.*, the Court observed that, notwithstanding the amendment's unconditional language, "the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* at 626. Indeed, the Court identified, by way of example, a number of types of laws that it presumed would fall *outside* the protection of the amendment. First, the Court observed that a majority of nineteenth-century courts had upheld the constitutionality of complete prohibitions on the carry of concealed weapons. *See id.* Second, the Court identified as "presumptively lawful regulatory measures": (i) longstanding bans on "the possession of firearms by felons and the mentally ill"; (ii) bans on "the carrying of firearms in sensitive places such as schools and government buildings"; and (iii) "laws imposing conditions and qualifications on the commercial sale of arms." *Heller*, 554 U.S. at 626-27 & n.26. Third, the Court recognized that the right was limited to weapons "in common use at the time," a recognition supported by "the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'" *Id.* at 627 (quoting 4 Blackstone, Commentaries on the Laws of England 148-149 (1769)). The Court's list, which contained only "examples" of presumptively lawful regulations, did "not purport to be exhaustive." *Id.* at 627 n.26.

Two years after *Heller*, in *McDonald v. City of Chicago*, the Supreme Court held that the individual Second Amendment right is "fully applicable to the States." ___ U.S.

8

___, 130 S. Ct. 3020, 3026 (2010).   Although *McDonald* did not further clarify the substantive scope of the Second Amendment right, it promised that "'state and local experimentation with reasonable firearms regulation will continue under the Second Amendment.'"   *Id.* at 3047 (quoting Brief of State of Texas, *et al.* as *Amici Curiae* at 23).

The Court of Appeals for the Fourth Circuit has adopted a two-pronged approach to analyzing laws under the Second Amendment.   *Woollard v. Gallagher*, 712 F.3d 865, 874-75 (4th Cir.), *cert. denied* No. 13-42, 2013 U.S. LEXIS 7384 (2013); *United States v. Chester*, 628 F.3d 673, 680 (4th Cir. 2010).  Under this approach, the first question is "whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee." *Chester*, 628 F.3d at 680 (internal quotation marks omitted).   If not, the challenged law is valid.   *Id.*   If, on the other hand, the burdened conduct is found to be within the scope of the Amendment, then the second prong requires the application of "an appropriate form of means-end scrutiny."   *Id.*   The Fourth Circuit—like nearly every other federal court to have considered the question—has adopted intermediate scrutiny as the appropriate test for regulations affecting behavior that implicates the Second Amendment right, but that is outside the core of in-home self-defense by law-abiding citizens.   *United States v. Masciandaro*, 638 F.3d 458, 471 (4th Cir. 2011); *Woollard*, 712 F.3d at 876.   Under that test, the government bears the burden of demonstrating that the challenged regulation "is reasonably adapted to a substantial government interest."   *Masciandaro*, 638 F.3d at 471; *see also Woollard*, 712 F.3d at 876 (same); *Chester*, 628 F.3d at 683 (under intermediate scrutiny, "the government must

demonstrate . . . that there is a 'reasonable fit' between the challenged regulation and a 'substantial' government objective").

**B.     Maryland's Ban on High-Capacity Detachable Magazines Does Not Fall Within the Scope of the Second Amendment Right.**

Chapter 427 defines a detachable magazine as "an ammunition feeding device that can be removed readily from a firearm without requiring disassembly of the firearm action or without the use of a tool, including a bullet or a cartridge."  CR § 4-301(f).  The law then states that a person "may not manufacture, sell, offer for sale, purchase, receive, or transfer a detachable magazine that has a capacity of more than 10 rounds of ammunition for a firearm."  CR § 4-305(b).   The statute does not make unlawful the continued possession or use of detachable magazines already owned, but effectively bans (with certain exceptions) the purchase, transfer, or import of new detachable magazines with a capacity of more than 10 rounds.  Such magazines are referred to as high-capacity or large-capacity detachable magazines.  Prior to the October 1, 2013 effective date of Chapter 427, Maryland law had restricted the purchase of magazines to those holding no more than 20 rounds, a limit whose constitutionality was never challenged.  Thus, the effect of the new law is to reduce the limit from 20 rounds to 10 rounds.  The plaintiffs fail to explain how this reduced limit crosses a constitutional line.  A maximum capacity of 10 rounds was also the limit under the federal assault weapons ban in place from 1994 until 2004.

The threshold inquiry of the first step of the two-step analysis is whether Maryland's Permit Statute "imposes a burden on conduct falling within the scope of the

Second Amendment's guarantee as historically understood." *United States v. Chapman*, 666 F.3d 220, 225 (4th Cir. 2012) (citing *Chester*, 628 F.3d at 680).  In *Heller*, in answering what types of "arms" are protected by the Second Amendment, the Supreme Court observed that the "18th-century meaning" of "arms" "is no different from the meaning today":  "'weapons of offence, or armour of defence.'"  554 U.S. at 581 (quoting 1 Dictionary of the English Language 106 (4th ed.) (reprinted 1978)).  Another late 18th-century legal dictionary relied upon by the Court defined arms as "'any thing that a man wears for his defence, or takes into his hands, or useth in wrath to cast at or strike another.'"  *Id.* (quoting 1 A New and Complete Law Dictionary).  Rejecting the notion that "arms" was limited to those in existence at the time the Second Amendment was ratified, the Supreme Court in *Heller* held that the amendment's protection "extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding."  554 U.S. at 582.

Thus, an initial question in determining whether a ban on high-capacity detachable magazines imposes a burden on conduct falling within the scope of the Second Amendment is whether high-capacity detachable magazines are protected by the amendment at all.  They are not.  A high-capacity detachable magazine is not an "arm"; it is not itself a "weapon[] of offence," or a thing worn for defense or taken "to cast at or strike another."  Rather, it is a particular subclass of ammunition container used to load a firearm.  In this respect, high-capacity detachable magazines are not even ammunition, [10]

---

[10]     Even if a high-capacity detachable magazine could be construed as part of "ammunition," courts and statutes have long recognized a distinction between arms and

but instead are devices used for feeding ammunition into firearms.  And, notably, high-capacity detachable magazines are not necessary components of firearms, but, by definition, are detachable, allowing them to be switched out with other detachable magazines that are of lower capacity but that can still feed ammunition, up to 10 rounds at a time, into a firearm.

Although the plaintiffs state a preference for the use of high-capacity detachable magazines, they do not and cannot allege that firearms are rendered inoperable with lower-capacity detachable magazines.  The plaintiffs allege that "[m]agazines are integral parts of firearms," ECF No. 30, ¶ 79, but Maryland has not banned magazines, just new purchases of those with a capacity in excess of 10 rounds.  In response to the defendants' initial motion to dismiss, the plaintiffs added the following allegation to their amended complaint:  "Magazine capacity is also a critical component of the functionality and

---

ammunition.  *See, e.g.*, *McDonald*, 130 S. Ct. at 3038 (noting an 1865 Mississippi law that banned the "keep or carry of fire-arms of any kind, or any ammunition"); *United States v. Miller*, 307 U.S. 174, 182 (1939) (noting a 1765 Virginia declaration requiring state militia "officers, non-commissioned officers, and privates, [to] constantly keep the aforesaid arms, accoutrements, and ammunition, ready to be produced whenever called for by his commanding officer").  And numerous federal laws currently draw that same distinction by listing arms and ammunition separately.  For example, 18 U.S.C. § 922(a)(1)(A) makes it illegal for anyone other than a licensed importer, manufacturer, or dealer to import, manufacture, or sell firearms, while § 922(a)(1)(B) separately addresses the import, manufacture, or sale of ammunition; and § 922(g) makes unlawful the possession of "any firearm or ammunition" by nine categories of individuals.  *See also, e.g.*, 7 U.S.C. § 2238; 10 U.S.C. § 899; 10 U.S.C. § 904; 10 U.S.C. § 2110; 10 U.S.C. § 2385; 10 U.S.C. § 2538; 10 U.S.C. § 2539; 10 U.S.C. § 2576; 10 U.S.C. § 2576a; 10 U.S.C. § 4655; 10 U.S.C. § 4684; 10 U.S.C. § 9655; 10 U.S.C. § 9684; 14 U.S.C. § 655; 16 U.S.C. § 3912; 18 U.S.C. § 962; 18 U.S.C. § 967; 18 U.S.C. § 1022; 18 U.S.C. § 1386; 22 U.S.C. § 450; 22 U.S.C. § 522; 22 U.S.C. § 523; 22 U.S.C. § 524; 22 U.S.C. § 527; 22 U.S.C. § 2349aa-2; 22 U.S.C. § 2778; 26 U.S.C. § 995; 26 U.S.C. § 5847; 31 U.S.C. § 321.

utility of a firearm for self-defense, in that restrictions on magazine capacity limit the effectiveness of the firearm and, therefore, the ability of law-abiding citizens to defend themselves with that firearm." *Id.* ¶ 80.  This conclusory allegation is insufficient to bring high-capacity detachable magazines within the scope of protection of the Second Amendment, as, even if true, it would not establish a plausible claim that *high-capacity* detachable magazines are arms within the meaning of the Second Amendment, or that they are necessary to the operation of firearms.[11]  Moreover, even if the conclusory allegation were otherwise sufficient, the plaintiffs fail to allege any facts to state a plausible claim that magazines holding more than 10 rounds are necessary for any lawful purpose.

Although the plaintiffs do not allege that any firearms are inoperable without high-capacity detachable magazines—much less that an entire class of firearms would be rendered inoperable, as was the case in *Heller*—they contend that there are particular individuals who might not be able to fire rapidly more than ten rounds in succession if left only with magazines holding up to ten rounds because those individuals might be incapable of quickly changing magazines under stress or because others "could not change magazines quickly due to old age, major disability, arthritis, and other physical conditions."  ECF No. 30, ¶ 83.  Even if the inability to fire more than 10 rounds with the same firearm in rapid succession could conceivably be considered a burden on the Second Amendment right—and the plaintiffs fail to explain why such individuals could

---

[11]    The plaintiffs' allegation has no limiting principal, and if accepted would presumably support a constitutional right to a 200 round-detachable magazine or greater.

not, for example, have multiple firearms available—such claims would only be appropriately considered in an as-applied challenge to Maryland's high-capacity detachable magazine ban, not the facial challenge presented in this case.[12]

Moreover, because the Fourth Circuit has looked to whether a law regulates conduct protected by "the Second Amendment as historically understood," *Chapman*, 666 F.3d at 225, it is notable that at the time of the ratification of the Second Amendment there were a number of statutes that severely restricted access to ammunition, apparently without any belief that these statutes interfered with the right to keep and bear arms that was codified in the Second Amendment.   For example, "several towns and cities (including Philadelphia, New York, and Boston) regulated, for fire-safety reasons, the storage of gunpowder, a necessary component of an operational firearm."   *Heller*, 554 U.S. at 684-85 (Breyer, J., dissenting).   The effect of these laws was to restrict the number of rounds that could be fired in defense of one's home, *id.* at 683-87, which was already severely restricted by the technology of the day.   Although the *Heller* majority found such laws inapposite to the complete handgun ban at issue in that case, *id.* at 631-32, those founding-era laws were far more restrictive than the law at issue in this

---

[12]     The plaintiffs' allegations that "there are individual Plaintiffs and members of association Plaintiffs who only have one magazine for their firearm; own obsolete models of firearms for which extra magazines are no longer available; [and] do not keep extra loaded magazines with their firearms," ECF No. 30, Complaint ¶ 83, are similarly unavailing.  Individuals with only one magazine can continue to use it, regardless of its capacity; individuals with obsolete models of firearms for which extra magazines are not available can purchase a new firearm—as they would presumably have been required to do regardless of the ban on acquisition of new high-capacity detachable magazines; and individuals who do not keep extra loaded magazines with their firearms can choose to do so.  The law does not restrict any of these activities.

14

case, which does not ban or restrict ammunition or any other mechanism that is necessary to the operation of a firearm.  Even as to those laws that actually restricted access to or use of gunpowder—a necessary component for the operation of any firearm of the day—the *Heller* majority held that they did not "remotely burden the right of self-defense as much as an absolute ban on handguns." *Id.* at 632.  Chapter 427, by contrast, precludes only new acquisitions of detachable magazines that can fire more than ten rounds without being re-loaded or switched out for a new magazine for the same firearm.  There is no basis to conclude that such a ban burdens conduct protected by the Second Amendment as historically understood.

Although some other courts adjudicating constitutional challenges to bans on high-capacity detachable magazines have assumed, solely for the purposes of argument, that ammunition and magazines might fall within the scope of the Second Amendment's protection, *see, e.g.*, *Heller v. District of Columbia*, 670 F.3d 1244, 1261 (D.C. Cir. 2011) ("*Heller II*") (declining to resolve whether high-capacity magazines falls within the scope of the Second Amendment's protection because, even if they do, Washington D.C.'s ban on them satisfies intermediate scrutiny), there is no basis for concluding that they do.  To the contrary, because high-capacity detachable magazines are neither "arms" nor are they required to operate arms, they fall outside the scope of the Second Amendment's protection, and Count Two should be dismissed.

There are additional reasons why the ban on high-capacity magazines fall outside the protection of the Second Amendment, but which are not raised in this motion to dismiss because they call for consideration of materials outside of the pleadings.

Similarly, even if high-capacity detachable magazines were deemed to be protected by the Second Amendment, Maryland's ban on such magazines would survive the second step of the analysis dictated by the Fourth Circuit, application of the applicable level of scrutiny.  However, that analysis would also call for consideration of materials outside of the pleadings and, therefore, is not reasonably susceptible to being addressed on a motion to dismiss.[13]  Nonetheless, for the reasons set forth above, high-capacity magazines fall outside the protection of the Second Amendment as a matter of law, and the Court should therefore dismiss Count Two.

## II.   THE PLAINTIFFS FAIL TO STATE A CLAIM FOR VIOLATION OF THE EQUAL PROTECTION OF THE LAWS (COUNT THREE).

Count Three of Plaintiffs' Complaint alleges a violation of the Equal Protection Clause of the Fourteenth Amendment because the Firearms Safety Act of 2013 treats retired law enforcement officers differently than other individuals for purposes of possessing assault weapons and high capacity magazines.   ECF No. 30, Th. Am. Complaint at ¶¶ 91-98.  This count fails to state a claim upon which relief can be granted and must be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

The Equal Protection Clause of the Fourteenth Amendment states that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the law." U.S. Const., amend. XIV, § 1.  This requires that similarly-situated individuals be treated alike.  *City of Clebourne v. Clebourne City Ctr., Inc.* 473 U.S. 432, 439 (1985).

---

[13]   If necessary, the defendants anticipate raising those issues, as well as their entitlement to summary judgment as to Count One of the complaint, in a motion for summary judgment to be filed in accord with the scheduling order (ECF No. 19).

However, "legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *Id*. at 440.  The Fourth Circuit has explained how to test an equal protection claim for sufficiency of the pleadings:

> While we . . . must take as true all of the complaint's allegations and reasonable inferences that follow, we apply the resulting 'facts' in the light of the deferential rational basis standard. To survive a motion to dismiss for failure to state a claim, a plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to government classifications.

*Giarratano*, 521 F.3d at 303-04 (*quoting Wroblewski v. City of Washburn*, 965 F.2d 452 (7th Cir., 1992)).  Plaintiffs have failed to even approach this pleading threshold.

As exceptions to the ban on the transfer of an assault weapon or a high-capacity detachable magazine, Chapter 427 permits the transfer from a law enforcement agency to a retired law enforcement officer only if: (1) it is sold or transferred on retirement, or (2) it was "purchased or obtained by the person for official use with the law enforcement agency before retirement." CR § 4-302(7).  Thus, these are not broad exceptions allowing all retired law enforcement officers to obtain as many assault weapons as they like whenever they would like, nor are these exceptions connected to a need for home self-defense by retired law enforcement officers.  Instead, the first is an exception applicable only to transfers to law enforcement personnel by a law enforcement agency upon retirement, and the second permits the transfer only of weapons actually obtained by such a law enforcement officer for official use.  These exceptions are thus similar to an exception previously contained in the federal Crime Control Act of 1994.  *See San Diego Cnty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1124 (9th Cir. 1996) (stating that the

17

federal "Act exempt[ed] governmental agencies and law enforcement officers, as well as firearms transferred to an individual upon retirement from a law enforcement agency").

Retired law enforcement officers are not similarly situated as a matter of law to other citizens with respect to either exception. Law enforcement officers are differentiated by their experience of having been entrusted with the statutory duty to protect public safety, and the corresponding statutory authority to detain, arrest, and use force against other citizens to carry out their duty. *Id.*; *see also* PS § 3-101(e) (defining "law enforcement officer" as an individual who is a member of a law enforcement agency and "is authorized by law to make arrests"). Thus, a law enforcement officer is "not to be equated with a private person engaged in routine public employment or other common occupations of the community who exercises no broad power over people generally." *Foley v. Connelie*, 435 U.S. 291, 298 (1978) (internal quotations omitted). Moreover, retired law enforcement officers can also be expected to face different types of threats after retirement than the public at large.

Retired Maryland law enforcement officers are also differently situated than other citizens when it comes to the use of, and training with respect to, firearms. To be allowed to carry a firearm as a law enforcement officer in Maryland—including an assault weapon—one has to successfully complete extensive firearms classroom instruction, training, and qualification on that firearm, Code of Maryland Regulations ("COMAR") 12.04.02.03A, and then submit to firearms training every year thereafter, COMAR 12.04.02.08A; *see also* COMAR 12.04.02.06A (requirements applicable to long guns); COMAR 12.04.02.06B(2) (initial training from 7-35 hours depending on the type of long

18

gun); COMAR 12.04.02.06B(3) (minimum rounds fired requirements ranging from 50-350 rounds); COMAR 12.04.02.07 (course of fire requirements).  Failure to complete annual training on a firearm results in seizure of that firearm until successful completion of training is completed.  COMAR 12.04.02.08E.  Maryland law enforcement officers, unlike other Marylanders, are also required to receive—as part of their classroom instruction on firearms—training on the rules for the use of deadly force, judgment training on the use of deadly force, and "emotional, mental, and psychological preparation needed for the possibility of a deadly force shooting situation."  COMAR 12.04.02.10C.  These extensive training requirements imposed on Maryland's law enforcement officers differentiate them from other citizens with respect to firearm safety. *See Cabell v. Chavez-Salido*, 454 U.S. 432, 443-44 (1982) ("The general law enforcement character of all California 'peace officers' is underscored by the fact that all have the power to make arrests and all receive a course of training in the exercise of their respective arrest powers and in the use of firearms") (internal citations omitted); *Bell v. Maryland*, 378 U.S. 226, 327-28 (1964) ("Instead of attempting to take the law into their own hands, people have been taught to call for police protection to protect their rights wherever possible").  The Plaintiffs are not similarly situated to law enforcement officers in these important respects.

Moreover, it would also have been rational for the General Assembly to conclude that an assault weapon or high-capacity detachable magazine transferred to a law enforcement officer—combined with the general provisions of Chapter 427 that would

prohibit such retired law enforcement officer from transferring possession of the weapon or magazine to others—would be less likely to end up in the hands of criminals.

When considering challenges to state laws under the Equal Protection Clause, "[t]he general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985). Accordingly, the distinctions drawn between law enforcement officers and other citizens in Chapter 427 easily pass constitutional muster. *See, e.g.*, *Williams v. Puerto Rico*, 910 F. Supp. 2d 386, 398-399 (D.P.R. 2012) (holding that Puerto Rico's Weapons Act of 2000, P.R. Laws Ann. Tit. 25, §§ 455-460(k), which creates different weapons permit procedures for government officials than other citizens, does not violate the Equal Protection Clause); *Pizzo v. City & Cnty. of San Francisco*, 2012 U.S. Dist. LEXIS 173370 (N.D. Cal. Dec. 5, 2012) (unpublished) (granting summary judgment to city defendants in case involving equal protection challenge to (a) sections of the California Penal Code that create an exception to concealed and loaded carry laws for honorably retired police officers with concealed carry permits and (b) the Federal Law Enforcement Officers Safety Act, 18 U.S.C. §§ 926B & 926C, which allows qualified federal law enforcement officers—both active and retired—to carry concealed firearms notwithstanding applicable state laws). Although the United States Court of Appeals for the Ninth Circuit came to a different conclusion in *Silveira v. Lockyer*, 312 F.3d 1052 (9th Cir. 2002), that decision is not controlling here.

Thus, the plaintiffs have failed to state a cause of action on which relief can be granted because they have failed to plead a plausible claim that retired law enforcement officers are similarly situated to members of the general public with respect to the challenged provisions.

## III.   THE PLAINTIFFS HAVE FAILED TO STATE A VOID-FOR-VAGUENESS CLAIM UPON WHICH RELIEF CAN BE GRANTED (COUNT FOUR).

The plaintiffs have also failed to state a claim upon which relief can be granted for their claim that Chapter 427's list of banned assault weapons is unconstitutionally vague. Although the plaintiffs' amended complaint identifies two firearms as to which they contend a "citizen of ordinary intelligence" would not know if they are banned without assistance from the Maryland State Police, their allegations clearly demonstrate that they are readily able to identify a core of weapons that are banned by Chapter 427.  Moreover, the theoretical need for guidance in particular cases does not render a law unconstitutionally vague, and any such claims would be required to be brought in an as-applied challenge by an individual who wishes to purchase one of those particular firearms, not as a facial challenge to the statute.  The plaintiffs have thus failed to plead a plausible claim that Chapter 427 is unconstitutionally vague.

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104 (1972). The "void for vagueness doctrine addresses at least two connected but discrete due process concerns: first, that regulated parties should know what is required of them so they may act accordingly; second, precision and guidance are necessary so that those

21

enforcing the law do not act in an arbitrary or discriminatory way." *Federal Communications Commission v. Fox TV Stations*, 132 S. Ct. 2307, 2317 (2012).  The Supreme Court has identified the "most meaningful" aspect of vagueness doctrine as not actual notice to those to which a law might apply, but rather "'the requirement that a legislature establish minimal guidelines to govern law enforcement.'" *United States v. Lanning*, 723 F.3d 476, 482 (4th Cir. 2013) (quoting *Smith v. Goguen*, 415 U.S. 566, 574 (1974)).

However, courts "do not hold legislators to an unattainable standard when evaluating enactments in the face of vagueness challenges." *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 371 (4th Cir. 2012).  "[B]ecause we are condemned to the use of words, we can never expect mathematical certainty from our language." *Id.* (internal quotation omitted).  Thus, "'[a] statute need not spell out every possible factual scenario with 'celestial precision' to avoid being struck down on vagueness grounds.'" *United States v. Hager*, 721 F.3d 167, 183 (4th Cir. 2013) (quoting *United States v. Whorley*, 550 F.3d 326, 334 (4th Cir. 2008)).  A statute "'must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional, but also grave doubts upon that score.'" *Hager*, 721 F.3d at 183 (quoting *United States v. Aguilar*, 585 F.3d 652, 658 (4th Cir. 2009)).  Thus, if any aspect of a statute could be deemed vague, a "federal court must 'consider any limiting construction that a state court or enforcement agency has proffered.'"  *Martin v. Lloyd*, 700 F.3d 132, 136 (4th Cir. 2012) (quoting *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494 n.5 (1983)).

**A.  The Plaintiffs' Due Process Challenge Fails Because a Facial Challenge Based on Vagueness Can Only Succeed if the Law Is Impermissibly Vague in All of Its Applications.**

In this case, the plaintiffs purport to make a facial challenge to Chapter 427. However, the Supreme Court has held that in cases that do not involve the First Amendment, "a plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Village of Hoffman*, 455 U.S. at 494. As the Court elaborated: "'[Vagueness] challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand.' . . . 'One to whose conduct a statute clearly applies may not successfully challenge it for vagueness.'" *Id.* at 495 n.7 (internal citations omitted); *see also United States v. Klecker*, 348 F.3d 69, 71 (4th Cir. 2003) ("[F]acial vagueness challenges to criminal statutes are allowed only when the statute implicates First Amendment rights.) Thus, to succeed on a vagueness challenge that does not implicate the First Amendment, "the complainant must demonstrate that the law is impermissibly vague in all of its applications." *Village of Hoffman*, 455 U.S. at 497.[14]

---

[14]    In *City of Chicago v. Morales*, 527 U.S. 41, 55 (1999) (plurality op.), a three-judge plurality of the Supreme Court suggested that a criminal law containing no mens rea requirement may be subject to a slightly more flexible standard allowing a facial attack if "vagueness permeates the text of a law." That alternative formulation has not been adopted in any majority opinion by the Supreme Court or, it appears, by the Fourth Circuit. In *United States v. Comstock*, 627 F.3d 513, 518-19 (4th Cir. 2010), the Fourth Circuit noted that "some members of the [Supreme] Court have expressed reservations about the applicability" of the stringent "no set of circumstances" test articulated for facial challenges in *United States v. Salerno*, 481 U.S. 739 (1987), but the Fourth Circuit did not adopt the *Morales* plurality's formulation. Instead, the Fourth Circuit noted that "at the very least, a facial challenge cannot succeed if 'a statute has a 'plainly legitimate sweep.'" *Comstock*, 627 F.3d at 518-19 (quoting *Crawford v. Marion Cnt. Election Bd.*,

The Fourth Circuit's decision in *Martin*, 700 F.3d 132, is instructive.  In *Martin*, a plaintiff gaming company sued to enjoin enforcement of a South Carolina law that prohibited specific types of gaming machines (such as keno, poker, and slots) as well as any "other devices pertaining to games of chance of whatever name or kind." 700 F.3d at 134.  The plaintiffs argued that this latter catch-all category was unconstitutionally vague. The Fourth Circuit rejected the claim, relying on the Supreme Court's rule that "a plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Id.* at 137.  Most importantly, the Fourth Circuit emphasized that the plaintiffs' claim failed under *Village of Hoffman* because they did not offer any proof that they were in the business of developing a type of device that might fall into the allegedly vague category or "describe any concrete example of the kind of game they [were] seek[ing] to develop" that might have been within the scope of the statute.  *Id.*  Thus, a plaintiff must demonstrate that his or her actions will result in a potentially vague application of the law, *id.*; *see also Gallagher v. City of Clayton*, 699 F.3d 1013 (8th Cir. 2012), and "cannot rely merely on the fact that some hypothetical applications might raise constitutional problems."  *Martin*, 700 F.3d at 137 (quoting *United States v. Lee*, 815 F.2d 971, 974 (4th Cir. 1987)).

Thus, even if assault weapons bans might contain some potentially vague terms, courts have nonetheless rejected void-for-vagueness claims if the statutory terms covered *any* identifiable "core" of prohibited conduct.  *See, e.g., Richmond Boro Gun Club v. City*

---

553 U.S. 181, 202 (2008) (quoting *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 (2008))).  For reasons discussed below, Chapter 427 would meet any applicable facial challenge test.

*of New York*, 896 F. Supp. 276 (E.D.N.Y. 1995), *aff'd*, 97 F.3d 681 (2d Cir.1996); *Coal.*

*of N.J. Sportsmen, Inc. v. Whitman*, 44 F. Supp. 2d 666 (D.N.J. 1999), *aff'd*, 263 F.3d 157

(3d Cir. 2001).

In this case, the plaintiffs have failed to plead facts that, if proven, would "demonstrate that the law is impermissibly vague in all of its applications," or that "vagueness permeates" the law.  To the contrary, the plaintiffs' own allegations clearly demonstrate an identifiable "core" of prohibited conduct.  Chapter 427 identifies with particularity a list of 45 assault long guns that are prohibited, along with their "copies." Plaintiffs' own allegations confirm the existence of this "core" of prohibited conduct in that the individual and business plaintiffs have demonstrated their knowledge of certain firearms that are subject to Chapter 427's ban on assault long guns.  For example, plaintiff Andrew Turner's declaration states that he "currently own[s] three regulated long guns which are classified as 'assault weapons' by [Chapter 427]," (ECF No. 3-2, ¶ 3); plaintiff Stephen V. Kolbe alleges in the complaint that he "does not currently own any firearms banned by the Act but wishes to purchase a firearm that is banned," (ECF No. 1, ¶ 6); the declaration of Carol Wink, operator of Wink's, states that "regulated long guns classified as 'assault weapons' by [Chapter 427] represent a substantial number of all long guns sold by Wink's Sporting Goods," a firearms dealer she operates (ECF No. 3-5, ¶ 4); and the declaration of Stephen Schneider, President of MLFDA and the owner and operator of Atlantic Guns, states that "regulated long guns classified as 'assault weapons' by SB 281 represent a substantial number of all long guns sold by MLFDA's individual members, including Atlantic Guns" (ECF No. 3-6, ¶ 6).

25

Thus, all of these plaintiffs have already identified particular assault long guns that fit within the "core" of prohibited conduct by Chapter 427, and none has identified any uncertainty about whether a single firearm they own or wish to own fits within that core. Instead, the plaintiffs make three allegations about vagueness, none of which state a claim on which relief can be granted. First, the plaintiffs claim that the law must be vague because the Office of the Attorney General issued an opinion "in an attempt to clarify the ambiguity inherent in the term 'copy.'" ECF No. 30, Th. Am. Complaint ¶ 107. That opinion concludes that to be a copy of a weapon now designated as an assault long gun requires more than cosmetic similarity, but instead requires that a listed weapons share "a similarity between the internal components and function of the firearm in question." Ex. B, Regulated Firearms—Assault Weapons—Whether a Weapon Is a "Copy" of a Designated Assault Weapon and Therefore Subject to the Regulated Firearms Law, 95 Atty. Gen. Md. 101, 108 (2010). The opinion further states that whether such a similarity exists is "a factual question entrusted in the first instance to the Department of State Police." *Id.* at 108-09.

This guidance does not identify any inherent vagueness in the law, but instead offers an interpretation of the Attorney General that cosmetic similarity is insufficient to bring a firearm within the definition of a copy. And noting that the MSP, the state agency charged with administering the law—rather than the Attorney General's Office— was responsible for making its own factual determinations as to whether something is a copy is not noteworthy, nor does the requirement that the law be interpreted render it unconstitutionally vague. Indeed, the courts are charged with looking to such limiting

26

constructions as a way of avoiding a conclusion of vagueness. *Martin*, 700 F.3d at 136. Moreover, the fact that the law may require interpretation with respect to its applicability to certain firearms does not undermine the conclusion, verified by the plaintiffs' own allegations, that the law applies clearly to a core of prohibited conduct.

Second, the plaintiffs complain about the law's designation of "Colt AR-15, CAR-15, and all imitations except Colt AR-15 Sporter H-BAR rifle" as assault long guns.  ECF No. 30, Th. Am. Complaint ¶¶ 110-12.  The plaintiffs' purported confusion as to what is covered by this definition is belied by their other allegations, including the testimony of the principals of both business plaintiffs, in referring to "regulated long guns classified as 'assault weapons'" by Chapter 427, that:  "firearms based on the AR-15 platform currently are far and away the most commonly purchased long gun in Maryland, and are in common possession and use by the residents of Maryland."  ECF No. 3-5, Wink Decl. ¶ 4; ECF No. 3-6, Schneider Decl. ¶ 6.  The plaintiffs thus demonstrate that they understand what is banned by Chapter 427, and why that is of concern to them.  The fact that Colt manufactured numerous semi-automatic models of its AR-15, each bearing a different model number—not to mention the numerous copies of the same model made by other manufacturers bearing other names—demonstrates the need for identification of covered assault weapons not only by the original brand and model, but with application to "copies" of such weapons as well.  Finally, the fact that the AR-15 Sporter H-BAR (*i.e.*, heavy barrel) may no longer be in active production does not introduce vagueness into the definition.  Regardless of when it was manufactured, existing Colt AR-15 Sporter

H-BAR rifles are not banned, and may be re-sold, transferred, and received in Maryland.[15]

Third, although the third amended complaint now identifies two particular firearms as to which the plaintiffs contend "a person of average intelligence" would not know whether they are copies of the banned AR-15, ECF No. 30, Th. Am. Complaint ¶¶ 113-14, they still fail to allege that any of the individual plaintiffs wishes to purchase either of these firearms or that any of the business plaintiffs wishes to sell either of these firearms.  Thus, the plaintiffs have failed to allege vagueness with respect to any firearm that is actually at issue.  Even were they to have made such allegations, that still would not overcome the fact that their allegations clearly identify a core of prohibited conduct.

Moreover, the plaintiffs have not alleged that they are incapable of determining whether any particular firearm is covered by the ban, but instead allege only that to do so one would need to consult with the  Maryland State Police.  *Id.* ¶ 113.  This is not a case involving a statute addressing loitering or some other conduct that an individual might inadvertently and unintentionally undertake.  The provision of Chapter 427 at issue involves the purchase of firearms, which is not conduct that can be undertaken unwittingly.   And even the plaintiffs concede they are able to identify numerous prohibited weapons, even if they now claim it is conceivable they may come to a

---

[15]    The ban does not apply only to initial sales of new firearms, but also to any subsequent sale or transfer of such firearms.

different conclusion than the MSP as to the statute's applicability to a particular firearm. For that reason as well, the plaintiffs' claim of vagueness fails.

Additionally, although the plaintiffs complain about the list of banned assault long guns as though it was newly enacted in Chapter 427, the list has been part of Maryland law since 1989.  It was originally added as § 441(d) of then-Article 27 of the Maryland Code, which defined "assault weapon" as including "any of the following specific firearms or their *copies*."  That definition—now contained in § 5-101(r)(2) of the Public Safety Article of the Maryland Code—has served for more than two decades to apprise individuals and firearms dealers of which long guns could be transferred only after first submitting to the MSP a completed firearm application and waiting up to seven days for a response.  *See* PS § 5-101(r) (defining "regulated firearm"); § 5-117 (requiring submission of firearm application before purchase or transfer of a regulated firearm); § 5-118 (firearm application requirements); § 5-123(a) (prohibiting sale or transfer of regulated firearms until seven days after submission of firearm application to the MSP). The penalty for violating the regulated firearms law—by, for example, selling a "copy" of an assault weapon without submitting a firearm application—is up to five years imprisonment and a $10,000 fine. PS § 5-144.  By contrast, the penalty for violating the assault weapons ban is up to 3 years imprisonment and a fine of up to $5,000.  CR § 4-306(a).  Thus, the same list of assault weapons that the plaintiffs now claim is too vague to comply with is one that Marylanders have actually been complying with for many years, under threat of greater criminal penalties than those imposed under Chapter 427.

29

The reason none of these plaintiffs had difficulty identifying which long guns are classified assault weapons, and why the definition of assault weapons has been in place successfully for many years, is that it is not vague, at least with respect to the majority of covered firearms.  Assault long guns are defined as any of the weapons specifically listed and, because model names and manufacturers can change so quickly, their "copies."  *See Wilson v. County of Cook*, 968 N.E.2d 641, 649-653 (Ill. 2012) (in rejecting challenge to ban on "copies or duplicates" of listed assault weapons, stating that this phrase was added "in order to prevent manufacturers form simply changing the name of the specified weapons to avoid criminal liability").  The American Heritage Dictionary defines "copy" as "[a]n imitation or reproduction of an original; a duplicate."  The American Heritage Dictionary of the English Language 405 (5th ed. 2011).  In *Wilson*, the Illinois Supreme Court rejected a similar vagueness challenge to Cook County's assault weapons ban on "copies and duplicates."  968 N.E.2d at 652-53.  The court concluded that a person of ordinary intelligence would understand that a ban on a specific list of weapons and "copies and duplicates" of those weapons would include "the specific weapons listed and any imitations or reproductions of those weapons made by that manufacturer or another." *Id.* at 652.  Thus, when the phrase "copies and duplicates" is read together with the list, the court found that the "provision is not vague." *Id.*

The sole case the plaintiffs have thus far identified in support of their vagueness claim is inapposite.  In *Springfield Armory, Inc. v. City of Columbus*, the United States Court of Appeals for the Sixth Circuit addressed the constitutionality of a ban on assault weapons that covered 46 specific weapons and "other models by the same manufacturer

30

with the same action design that have slight modifications or enhancements."  29 F.3d

250, 251 (6th Cir. 1994).   The Sixth Circuit found this definition "fundamentally

irrational and impossible to apply consistently," especially in its application only to

weapons made by the same manufacturer as the 46 listed weapons, but not identical

weapons made by other manufacturers.  *Id.* at 252.  Maryland's law does not suffer that

same flaw, as it covers all copies, not just those made by particular manufacturers.  The

Sixth Circuit also found vague the statute's application to weapons with "slight

modifications or enhancements," but with no guidance as to which modifications or

enhancements might be slight, and what might count as a modification.  *Id.* at 252-53.

The court concluded it was simply impossible to know with respect to any particular

modification or enhancement whether the weapon would be banned or not.  *Id.* at 253.

Again, Maryland's law does not suffer from this flaw as it does not contain either of the

terms the Sixth Circuit found vague—"slight" or "modifications."  Maryland's law is not

unconstitutionally vague, and the plaintiffs' facial challenge must be rejected.

> **B.     To the Extent the Plaintiffs Are Making an As-Applied Challenge, They Have Failed to Plead a Plausible Claim of Vagueness in Any Potential Application of the Statute to Them.**

The plaintiffs' due process claim in Count Four is stated exclusively as a facial

challenge to Chapter 427.  It does not allege vagueness in application specific to any of

the plaintiffs, but instead generally makes allegations as to how a "reasonable person"

would interpret the Act.  *E.g.*, ECF No. 30, Complaint ¶ 105.  Thus, it does not appear

that the plaintiffs have brought an as-applied challenge to Chapter 427's ban on assault

long guns.  Even if they had, the plaintiffs have failed to plead a plausible claim of vagueness in any potential application of the statute to them.  To the contrary, as discussed above, their allegations demonstrate precisely the opposite.  Thus, in this pre-enforcement challenge, they have failed to identify any application of Chapter 427 that is vague as to them, and any as-applied challenge must also be rejected.

For these reasons, Count Four must be dismissed.

## IV.   THE BUSINESS PLAINTIFFS' SECOND AMENDMENT CLAIMS MUST BE DISMISSED BECAUSE THE SECOND AMENDMENT DOES NOT PROTECT A RIGHT TO SELL FIREARMS.

In addition to individual plaintiffs, and organizations that claim to represent the interests of other individuals, the plaintiffs include two entities in the business of selling firearms—Wink's and Atlantic Guns—and two organizations whose membership is comprised wholly, in the case of MLFDA, or mostly, in the case of NSSF, of sellers of firearms.[16]  In the complaint, Wink's, Atlantic Guns, MLFDA, and the NSSF do not claim to possess direct Second Amendment rights, but instead allege that "Business

---

[16]   With respect to NSSF, the plaintiffs aver that its interest in this litigation "derives principally from the fact that the NSSF's FFL manufacturer, distributor, and retail members provide the lawful commerce in firearms that makes exercise of Second Amendment rights possible.  Until the effective date of the Act, NSSF's individual members have sold and will sell [banned assault weapons and high capacity magazines]." ECF No. 30, Th. Am. Complaint, ¶ 13.  This averment is insufficient as a matter of law to establish either organizational standing or associational standing.  *See White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 458 (4th Cir. 2005) (discussing requirements for organizational and associational standing).  However, NSSF has also averred that its membership includes at least some individual "hunters and recreational target shooters." ECF No. 30, Th. Am. Complaint ¶ 13.  With respect to NSSF, the argument in this motion to dismiss addresses its claims to the extent they are made on behalf of its "principal[]" interest in protecting the interests of its manufacturer, distributor, and retailer members.  It is not clear whether NSSF is making any other claims.

Plaintiffs . . . will imminently suffer a significant loss of income by virtue of Defendants' enforcement of the Act."   ECF No. 30, Th. Am. Complaint ¶ 18; *see also id*. ¶¶ 39-42 (describing gun sales of Business Plaintiffs).   In their amended complaint, these plaintiffs now also purport to represent the Second Amendment rights of their "customers and potential customers."   *Id.* ¶ 17.

Even if the assault long guns and high-capacity magazines at issue here were protected by the Second Amendment, the Business Plaintiffs still have no Second Amendment rights to assert.   The literal text of the Second Amendment speaks only of a right to "keep" and "bear" arms, not a right to sell them.   U.S. Const., amend. II.   In *United States v. Chafin*, the United States Court of Appeals for the Fourth Circuit confronted this exact question.   423 F. App'x. 342 (4th Cir. 2011) (unpublished).   In that case, the defendant alleged that his conviction for selling firearms to an unlawful drug user, 18 U.S.C. § 922(d)(3), violated the Second Amendment.   The Fourth Circuit disagreed, holding that there was no evidence to "remotely suggest that, at the time of its ratification, the Second Amendment was understood to protect an individual's right to *sell* a firearm."   *Id*. at 344 (emphasis in original).   Moreover, the Court made clear that "although the Second Amendment protects an individual's right to bear arms, it does not necessarily give rise to a corresponding right to sell a firearm."   *Id*.; *see also United States v. Conrad*, 2013 WL 546373, at *7-8 (W.D. Va. Feb. 13, 2013) (relying on *Chafin*).

These plaintiffs' claims are not saved by the allegation added to their amended complaint that these plaintiffs "can and do represent the interests of their customers and

potential customers in exercising their Second Amendment rights by acquiring the banned firearms and magazines."  ECF No. 30, Th. Am. Complaint ¶ 18.  Although the Seventh Circuit has allowed such a standing claim, *see Ezell v. City of Chicago*,  651 F.3d 684, 696 (7th Cir. 2011), this circuit has not and other courts have rejected third-party standing claims on behalf of prospective customers in other circumstances.  *See, e.g.*, *Kowalski v. Tesmer*, 543 U.S. 125 (2004) (rejecting third-party standing on behalf of prospective customers); *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100 (2d. Cir. 2008) (rejecting attempts by business to litigate claims on behalf of customers).  Indeed, allowing a seller of firearms to have standing simply by claiming to be representing the interests of its customers—especially when individuals are already parties—would render meaningless the holding in *Chafin*.  Thus, plaintiffs Wink's, Atlantic Guns, MLFDA and, to the extent it is representing the interests of its business members, NSSF, lack constitutional standing to assert claims under the Second Amendment, and Counts One and Two must be dismissed as to them pursuant to Federal Rule 12(b)(1).  *See White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 458 (4th Cir. 2005) ("the standing limitation is derived from the cases and controversies requirement of Article III").

## CONCLUSION

The Court should dismiss Counts Two, Three, and Four of the Complaint, and should dismiss the claims of plaintiffs Wink's, Atlantic Guns, MLDFA, and NSSF as to Count One.

DOUGLAS F. GANSLER
Attorney General


_____/s/_____
MATTHEW J. FADER (Fed. Bar # 29294)
STEPHEN M. RUCKMAN (Fed. Bar # 28981)
Assistant Attorney General
200 St. Paul Place, 20th Floor
Baltimore, Maryland 21202
410-576-7906 (tel.); 410-576-6955 (fax)
mfader@oag.state.md.us

DAN FRIEDMAN (Fed. Bar # 24535)
Assistant Attorney General
Office of the Attorney General
Legislative Services Building
90 State Circle, Room 104
Annapolis, Maryland 21401
Tel. 410-946-5600
dfriedman@oag.state.md.us

Dated: November 22, 2013                Attorneys for Defendants