## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

STEPHEN V. KOLBE, *et al.,*       *

      *Plaintiffs,*         *

      v.                  *      Civil Case No. 13-cv-02841-CCB

MARTIN O'MALLEY, *et al.,*      *

      *Defendants.*        *

                             *

*    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *

## REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS'
## MOTION TO DISMISS THIRD AMENDED COMPLAINT

The Plaintiffs' plea that this Court delay consideration of the insufficiency of their Third Amended Complaint for resolution at summary judgment notwithstanding, the Defendants' Motion to Dismiss is now briefed and ready for this Court's resolution. The proper function of the Motion to Dismiss is to test the pleadings. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-81 (2009). If the pleadings are deficient, it is no answer that another part of the Complaint may survive, that discovery may potentially cure a defect, that another Plaintiff may have standing, or that the Plaintiffs would prefer to submit summary judgment briefing on their defective claims. Because, by their *Third* Amended Complaint, the Plaintiffs' allegations are still insufficient to state plausible causes of action in Counts Two, Three, and Four, those causes of action must be dismissed.

-1-

**ARGUMENT**

I.   **MARYLAND'S BAN ON NEW TRANSFERS OF HIGH-CAPACITY DETACHABLE MAGAZINES DOES NOT IMPLICATE THE SECOND AMENDMENT.**

Maryland's ban on new transfers of high-capacity detachable magazines contained in the Firearm Safety Act of 2013 does not implicate the Second Amendment. Memorandum in Support of Defendants' Motion to Dismiss Third Amended Complaint (ECF 32-1) ("Motion to Dismiss") at 7-16. Nothing in the text or history of the Second Amendment suggests to the contrary, nor have the Plaintiffs identified any authority to the contrary.

Attempting to divorce their claim from the text and history of the Second Amendment, the Plaintiffs posit a broader right of "individual law-abiding, responsible citizens . . . to engage in armed self-defense, especially in their home." *Id.* at 6. Thus, they appear to argue, any weapon, and even any accessory to any weapon, that they deem potentially useful in armed self-defense is within the ambit of the Second Amendment.[1] From this they argue erroneously that *all* magazines, regardless of capacity or any other characteristics, are protected by the Second Amendment because some magazines could potentially be used in self-defense.

In addition to lacking support in the text or history of the Second Amendment, this theory suffers at least three additional fatal flaws. First, the Plaintiffs are fighting against

---

[1] It is ironic that the Plaintiffs have selected an interpretive technique that bears stronger resemblance to Justice William O. Douglas's opinion in *Griswold v. Connecticut*, 381 U.S. 479 (1965), with its "penumbras" and "emanations," than to Justice Scalia's opinion in *District of Columbia v. Heller*, 554 U.S. 570 (2008).

a strawman.  The Plaintiffs effectively ask the Court to treat the issue before it as though Maryland had banned all detachable magazines, not only those with a capacity in excess of ten rounds, and address their arguments to this broader, fictional ban.  Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss (ECF 33) ("Plaintiffs' Opposition") at 4-6.  But Maryland has not banned the transfer of all detachable magazines, only those with a capacity in excess of ten rounds.  The question before this Court is thus not whether a ban on all detachable magazines would implicate the protections of the Second Amendment, but whether Maryland's law addressed only to detachable magazines capable of holding more than ten rounds implicates those protections.  The Plaintiffs do not and cannot allege that such magazines are necessary to make any firearm operable, or even useful, when the law continues to allow magazines with a capacity of up to ten rounds to be freely transferred.  The Plaintiffs' claim in Count Two thus fails to satisfy the first prong of the analysis required by the Fourth Circuit for Second Amendment claims, and must be dismissed.  *United States v. Chester*, 628 F.3d 673, 680 (4th Cir. 2010) (describing two-tiered analysis of Second Amendment claims in which the first step is to inquire whether the proposed action is within the scope of the Second Amendment).

Second, the Plaintiffs' theory, if accepted, would effectively eliminate the first step of the *Chester* analysis by assuming that every weapon—and even every accessory to a weapon—that a plaintiff could plausibly claim had some utility for self-defense,

would fall within the ambit of the Second Amendment.  That cannot be what the *Chester* court envisioned when it established its two-tiered analysis. [2]

Third, the Plaintiffs' constitutional theory contains no limiting principle.  It is unbounded by constitutional text.  It is unbounded by history.  *Anything* they want for armed self-defense, they argue, is within the ambit of the Second Amendment.  Thus, under their interpretation, the Second Amendment applies not just to firearms and components necessary for their operation, but to magazines capable of holding more than 10 rounds.  But the Plaintiffs' theory would not stop there.  Under their theory, the right would also protect the bandoliers and pouches that can be used to hold the magazines.  And it would presumably apply not just to magazines holding between 10 and 20 rounds, but to magazines holding 50 rounds, 100 rounds, or more.  That is not a strawman; that is the Plaintiffs' constitutional theory.

The Plaintiffs also claim support from two cases that offer them none.  First, the Plaintiffs confusingly claim support for their position from the fact that the United States Court of Appeals for the District of Columbia assumed, without deciding, that high-capacity magazines fell within the ambit of the Second Amendment's protection.  *Heller v. District of Columbia*, 670 F.3d 1244, 1261 (D.C. Cir. 2011) ("*Heller II*").  No conclusion can be drawn from that other than that the D.C. Circuit found it preferable to

---

[2] Although the Plaintiffs have made plain their disagreement with the approach taken by the Fourth Circuit in *Chester*, they seem to recognize that it controls this Court's analysis.  Plaintiffs' Opposition at 5 n.1.  As such, both prongs of the *Chester* approach must necessarily have meaning.

dispose of the claim before it on other grounds.[3]  Second, the Plaintiffs claim that the decision of the United States Court of Appeals for the Seventh Circuit in *Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011), stands for the proposition that the Second Amendment protects more than firearms.  Plaintiffs' Opposition at 8.  The issue in *Ezell*, however, was not whether the Second Amendment protected more than firearms, but whether a ban on firing ranges effectively eliminated the right to possess a handgun for home defense—what the Plaintiffs themselves equate to the right recognized in *Heller* "to own an *operable* firearm in their homes for self-defense."  Plaintiffs' Opposition at 8 (emphasis supplied by the Plaintiffs).  The Plaintiffs do not and cannot allege that magazines with a capacity of more than ten rounds are necessary to make a firearm operable.  Count II must be dismissed.

## II.   THE EXCEPTIONS IN THE LAW FOR RETIRED LAW ENFORCEMENT OFFICERS DO NOT VIOLATE EQUAL PROTECTION.

For two reasons, the Plaintiffs' defense of their equal protection claim is without merit.  First, the Plaintiffs have failed to allege a plausible claim that they are similarly situated to retired law enforcement officers.  If the Plaintiffs are not similarly situated to retired law enforcement officers, they have not stated a claim regardless of the government's rationale for the classification.  Second, even if they had adequately alleged

---

[3] Of course the *Heller II* decision can provide little succor to these Plaintiffs, deciding, as it did, that the District of Columbia's ban on assault weapons did not violate the Constitution.

that they were similarly situated—and therefore that it was appropriate for the Court to apply a standard of scrutiny—the classification clearly survives rational basis scrutiny.

The Equal Protection Clause of the Fourteenth Amendment does not remove from the States the power to classify, but "'keeps governmental decision makers from treating differently persons who are in all relevant respects alike.'" *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)). "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Id.* Only after that showing has been made does a court proceed "to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." *Id.*

As the Defendants pointed out in their Motion to Dismiss, the class of retired law enforcement officers is differentiated from the class of citizens who are not retired law enforcement officers by virtue of law enforcement officers' far more extensive firearms training, including with respect to training in the use of firearms to protect the lives and property of others. Although the Plaintiffs now allege in their Third Amended Complaint that there is no requirement that retired law enforcement officers have greater training specifically with those banned firearms than the general public, they do not contest that retired law enforcement officers, as a class, have significantly greater training on firearms generally—and, critically, with respect to use of firearms in situations that might pose a risk to innocent members of society—than members of the general public who are not retired law enforcement officers.  Plaintiffs' Opposition at 11 (admitting that "law

enforcement officers are required to undergo the training described by Defendants"). Although the Plaintiffs attempt to diminish the significance of the fact that retired law enforcement officers were previously entrusted with the duty to protect public safety, that fact—and the fact that their firearms training was administered in that context—also differentiates retired law enforcement officers.

Moreover, although the Plaintiffs seem to raise the possibility that some members of the general public who are not retired law enforcement officers may conceivably have as much or more training with respect to certain firearms—including certain now-banned firearms—than some retired law enforcement officers, this case presents a facial challenge to the constitutionality of the statute. As such, the Plaintiffs bear the burden of alleging a plausible claim that the class they purport to be part of—individuals who are not exempted from application of the bans by virtue of being active or retired law enforcement officials or active duty military—is nevertheless similarly situated, as a class, to the class of retired law enforcement officers. This they cannot do and, therefore, Count Three must be dismissed.

Second, even if the Plaintiffs had adequately alleged that they are part of a class that is similarly situated to retired law enforcement officers, their claim could not survive rational basis review. There is no test in constitutional law that is more deferential to the government:

> [T]he [U.S. Supreme] Court has held that the 14th Amendment permits the State a wide scope of discretion in enacting laws which affect some group of citizens differently from others. The constitutional safeguard is offended only if a classification rests on grounds wholly irrelevant to the

> achievement of the State's objective.  State legislatures are
> presumed to have acted within their constitutional power
> despite the fact that, in practice, their laws result in some
> inequality.  Statutory discrimination will not be set aside if
> any state of facts reasonably may be conceived to justify it.

*McGowan v. Maryland*, 366 U.S. 420, 425-26 (1961).  In *Giarratano v. Johnson*, 521

F.3d 298 (4th Cir. 2008), the Fourth Circuit explained how to apply that extraordinarily

deferential standard in the context of a motion to dismiss:

> While we . . . must take as true all of the complaint's
> allegations and reasonable inferences that follow, we apply
> the resulting 'facts' in the light of the deferential rational
> basis standard.  To survive a motion to dismiss for failure to
> state a claim, a plaintiff must allege facts sufficient to
> overcome the presumption of rationality that applies to
> governmental classifications.

521 F.3d at 303-04.  Thus, so long as a legislative classification satisfies any conceivable

rational legislative purpose, the cause of action must be dismissed.  The Maryland

General Assembly might logically have viewed these exceptions as related to a reduction

of gun violence and gun lethality or related to public safety.  It also might have viewed

these exceptions as a low- or no-cost way of "refreshing" law enforcement's armory, by

permitting purchase of old firearms for replacement cost, as expressly permitted by State

law with respect to a retiring State Trooper's handgun.  *See* Md. Code Ann., Pub. Safety

§ 2-415(c).  It might even have viewed these exceptions as conferring a reward on the

completion of a career of public service through law enforcement.  Any one of these is

enough to satisfy the rational basis standard, and defeat the Plaintiffs' facial challenge.[4]

---

[4] Notably, even if the Plaintiffs were to prevail, the provisions of the law challenged under the Equal Protection Clause are clearly severable.  Maryland law, by

## III.   THE LAW IS NOT VOID FOR VAGUENESS.

The parties seem to agree that, in a facial challenge, a law is not void for vagueness if there is an identifiable "core" of prohibited conduct.  Motion to Dismiss at 23; Plaintiffs' Opposition at 16-17 (both discussing *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489 (1983) and *Martin v. Lloyd*, 700 F.3d 132 (4th Cir. 2012)).  The Plaintiffs, however, seem to think that their invocation of the word "copies" is sufficient to prove that the law is vague in all of its application.  Plaintiffs' Opposition at 16-17.  Neither the word by itself nor as it appears in context ("specific assault weapons or their copies, regardless of which company produced and manufactured that assault weapon"), however, is vague.  The Plaintiffs' factual allegations betray no confusion about what brands and models constitute "copies" of the banned firearms, at least with respect to the core prohibition of the law.  Motion to Dismiss at 25 (citing specific allegations).  To the contrary, the Plaintiffs' own allegations establish that they are well aware of at least the vast majority of firearms banned as assault long guns, and appear most concerned with the AR-15 firearms they

---

statute and case law, presumes the severability of all state statutes.  *See* Md. Ann. Code, Art. 1, § 23 ("The provisions of all statutes . . . are severable unless the statute specifically provides that its provisions are not severable.  The finding by a court that some provision of a statute is unconstitutional and void does not affect the validity of the remaining portions of that statute, unless the court finds that the remaining valid provisions alone are incomplete and incapable of being executed in accordance with the legislative intent."); *Migdal v. State*, 358 Md. 308, 324 (2000); *Davis v. State*, 294 Md. 370, 383 (1982).  Thus, even in the unlikely event that the Court was to find the exceptions unconstitutional, the remedy would be to sever the exceptions from the remainder of the law.

claim are the most popular in Maryland and elsewhere, and which they understand to be banned by the law.  *Id.*

Moreover, the Attorney General has provided guidance that assists the Maryland State Police and the public in applying the prohibition on "copies."  95 Atty. Gen. Md. 101 (2010).  For 20 years, the same definition has existed in Maryland, with significant potential criminal consequences, but the alleged vagueness has not resulted in a single known arrest, let alone conviction.[5]  Other courts have not been troubled by the use of the word "copies" either.  *Wilson v. County of Cook*, 968 N.E.2d 641, 649-53 (Ill. 2012) (rejecting challenge to ban on "copies or duplicates" of listed assault weapons because the phrase was added "to prevent manufacturers from simply changing the name of the specified weapons to avoid criminal liability"); *see also Coal. of N.J. Sportsmen, Inc. v. Whitman*, 44 F. Supp. 2d 666, 679-80 (D.N.J. 1999), *aff'd*, 263 F.3d 157 (3d Cir. 2001) (holding that use of the phrase "substantially identical" in conjunction with the list of banned assault firearms was not unconstitutionally vague "in all of its applications").

---

[5] Plaintiffs are dismissive of the significance of this fact, challenging that "Defendants have cited no authority that a vague law somehow loses its vagueness because it has been in effect for a certain period of time."  Plaintiffs' Opposition at 20. To the contrary, it is commonsense that the fact that the definitions have been in place, in a statute with criminal consequences, for 20 years provides an indication they are not vague.  Moreover, the same fact—no prosecution in 20 years for misunderstanding the word "copies"—suggests that Plaintiffs are not under a "credible threat" of prosecution. *Richmond Med. Ctr. for Women v. Gilmore*, 144 F.3d 326, 328 (4th Cir. 1998); *Cooke v. Hickenlooper*, 2013 U.S. Dist. LEXIS 168806, *20 (D. Colo. Nov. 27, 2013) (dismissing certain void-for-vagueness challenges to Colorado high-capacity magazine ban because plaintiffs failed to demonstrate "'actual or imminent, not conjectural or hypothetical' threat that the statute will be enforced against him, her, or it").

Finally, even the Plaintiffs' arguments do not touch the "core" of firearms covered by the word "copies."  Despite their protestations to the contrary, the Plaintiffs' allegation that the word "copies" is vague in all its applications is a bald, conclusory allegation that is contradicted by their own factual allegations regarding their understanding of the coverage of the law.  That is insufficient to state a plausible claim.  To the extent the Plaintiffs make specific allegations, those allegations are limited to the context of isolated firearms as to which their allegations, even if true, would not raise any vagueness concerns with respect to the core of conduct regulated by the statute:

- Whether the application of the law to a model that Colt no longer manufactures (the "Colt AR-15 Sporter H-BAR rifle") is vague;

- Whether a heavy barreled Bushmaster AR-15 variant is a copy of a "Colt AR-15 Sporter H-BAR rifle" (and thus permitted, pursuant to PS §5-101(r)(2)(xv)) or is a "Bushmaster semi-auto rifle" (and thus banned, pursuant to PS §5-101(r)(2)(xi));

- Whether the difference between a Colt AR-15 with direct gas impingement operation and a Colt AR-15 with piston driven operation precludes them from both being considered "copies" of a Colt AR-15 and thus banned.

Thus, even accepting solely for purposes of this motion that these are instances in which the law may require some interpretation, the meaning of the word "copies" is clear and well-understood by the Plaintiffs in the vast majority of its applications.  In fact, that is the animating concern behind their claim in Count I, the factual allegations of which are entirely inconsistent with their claims in Count IV.

Finally, there is tremendous irony in Plaintiffs' reliance on the Sixth Circuit's decision in *Springfield Armory, Inc. v. City of Columbus*, 29 F.3d 250 (6th Cir. 1994) as

support for their vagueness claim.  *Springfield Armory* stands for the proposition that a ban on assault weapons cannot apply solely to an enumerated list of specific firearms and modifications made by those the same manufacturers, but must also apply to identical weapons—*i.e.*, copies—manufactured by competing manufacturers.  *Id.* at 252.  Thus, far from prohibiting the use of a term like "copies," *Springfield Armory*, in effect, demonstrates the necessity for it.

## IV.    THERE IS NO SECOND AMENDMENT RIGHT TO SELL GUNS.

Defendants moved to dismiss all claims by the Business Plaintiffs—Wink's, Atlantic Guns, MLFDA, and NSSF—because, as the Fourth Circuit held in *United States v. Chafin*, the Second Amendment does not protect a right to sell firearms.  423 F. App'x. 342 (4th Cir. 2011) (unpublished).  Motion to Dismiss at 32-34.  Plaintiffs responded in a two-fold manner.  First, they pointed out that, ordinarily in injunction cases, once it is determined that one plaintiff has standing, it is generally considered unnecessary to examine the standing of other plaintiffs.  Plaintiffs' Opposition at 22 (citing, *inter alia*, *National Ass'n of Optometrists & Opt. v. Brown*, 567 F.3d 521, 522 (9th Cir. 2009)).  Second, they pointed to cases in which a business was permitted standing to assert the interest of its customers.  Plaintiffs' Opposition at 23 (citing, *inter alia, Craig v. Boren*, 429 U.S. 190 (1976)).

In the instant case, however, and unlike in the cases upon which the Plaintiffs rely, the Business Plaintiffs are not merely asserting the claims of their customers.  Instead, the Business Plaintiffs purport to assert their own "rights," separate and apart from those of

the Individual Plaintiffs.  Third Amended Complaint at ¶ 18 ("Business Plaintiffs and members of NSSF and MLFDA will imminently suffer a significant loss of income by virtue of Defendants' enforcement of the Act."); *see also id.* at ¶¶ 13-14 (discussing separate interests of NSSF and MLDA); *id.* at ¶¶ 39-42 (describing "impact" of law on Business Plaintiffs).  These are completely different harms than those claimed by the other plaintiffs, and they are not properly before this Court for reasons explained in the Defendants' Motion to Dismiss.  In such a circumstance, it is appropriate and necessary for this Court to determine whether those claims are sufficient to confer standing.[6]

Once that underbrush is cleared, there remains one question for the Court's resolution with respect to the Business Plaintiffs:  Does the Second Amendment guarantee a right to sell firearms?  Although the Fourth Circuit's analysis in its unpublished decision in *Chafin* is not binding on this Court, it is persuasive and entirely consistent with the text and history of the Second Amendment.  It is, therefore, appropriate to dismiss the claims asserted by the Business Plaintiffs.

---

[6] The principal case on which Plaintiffs rely, *National Ass'n of Optometrists & Opt.,* cites for the proposition, *Preminger v. Peake*, 552 F.3d 757 (9th Cir. 2008), which, in turn, cites *Leonard v. Clark*, 12 F.3d 855 (9th Cir. 1993).  In the *Leonard* case, however, despite restating the general principle, the Ninth Circuit, because of a peculiarity of that case, had to separately investigate the standing of the different plaintiff groups.  Thus, while the general rule is a prudent timesaver, there are times when other considerations may overtake that general rule and require an independent assessment of each plaintiff's standing.

## CONCLUSION

For the reasons set forth in Defendants' Motion to Dismiss, the Memorandum of Law, and in this Reply, Counts Two, Three, and Four and the claims of Plaintiffs Wink's, Atlantic Guns, MLDFA, and NSSF as to Count One.

Respectfully submitted,


DOUGLAS F. GANSLER
Attorney General of Maryland


MATTHEW J. FADER (Fed. Bar # 29294)
STEPHEN M. RUCKMAN (Fed. Bar # 28981)
Assistant Attorneys General
200 St. Paul Place, 20th Floor
Baltimore, Maryland 2102
410-576-7906 (tel.); 410-576-6955 (fax)
mfader@oag.state.md.us

_____/s/_____
DAN FRIEDMAN (Fed. Bar # 24535)
Assistant Attorney General
Legislative Service Building
90 State Circle, Room 104
Annapolis, Maryland 21401
410-946-5600 (tel.); 410-956-5601 (fax)
dfriedman@oag.state.md.us