Exhibit 72

To Defendants' Memorandum in Support of Motion for

Summary Judgment

# Commentaries
## on the Laws
## of England

A Facsimile of the First Edition of 1765-1769

With an Introduction by Thomas A. Green

## Volume 4

## William
## Blackstone

# COMMENTARIES

## ON THE

# LAWS

## OF

# ENGLAND.

## BOOK THE FOURTH.

BY
WILLIAM BLACKSTONE, Esq.
SOLICITOR GENERAL TO HER MAJESTY.

OXFORD,
PRINTED AT THE CLARENDON PRESS.
M. DCC. LXIX.

from the miniftration of his office during pleafure. And, if any perfon in fuch church or church-yard proceeds to fmite or lay violent hands upon another, he fhall be excommunicated *ipfo facto*; or if he ftrikes him with a weapon, or draws any weapon with intent to ftrike, he fhall befides excommunication (being convicted by a jury) have one of his ears cut off; or, having no ears, be branded with the letter F in his cheek. *Two* perfons may be guilty of an affray: but,

6. RIOTS, *routs*, and *unlawful affemblies* muft have *three* perfons at leaft to conftitute them. An *unlawful affembly* is when three, or more, do affemble themfelves together to do an unlawful act, as to pull down inclofures, to deftroy a warren or the game therein; and part without doing it, or making any motion towards it[f]. A *rout* is where three or more meet to do an unlawful act upon a common quarrel, as forcibly breaking down fences upon a right claimed of common, or of way; and make fome advances towards it[g]. A *riot* is where three or more actually do an unlawful act of violence, either with or without a common caufe or quarrel[h]: as if they beat a man; or hunt and kill game in another's park, chafe, warren, or liberty; or do any other unlawful act with force and violence; or even do a lawful act, as removing a nufance, in a violent and tumultuous manner. The punifhment of unlawful affemblies, if to the number of twelve, we have juft now feen may be capital, according to the circumftances that attend it; but, from the number of three to eleven, is by fine and imprifonment only. The fame is the cafe in riots and routs by the common law; to which the pillory in very enormous cafes has been fometimes fuperadded[i]. And by the ftatute 13 Hen. IV. c. 7. any two juftices, together with the fheriff or under-fheriff of the county, may come with the *poffe comitatus*, if need be, and fupprefs any fuch riot, affembly, or rout, arreft the rioters, and record upon the fpot the nature and circumftances of the whole tranfaction;

---

[f] 3 Inft. 176.  
[g] Bro. *Abr. t. Riot.* 4. 5.  
[h] 3 Inft. 176.  
[i] 1 Hawk. P. C. 159.

which

Case 1:13-cv-02841-CCB   Document 44-72   Filed 02/14/14   Page 5 of 16

which record alone shall be a sufficient conviction of the offenders. In the interpretation of which statute it hath been holden, that all persons, noblemen and others, except women, clergymen, persons decrepit, and infants under fifteen, are bound to attend the justices in suppressing a riot, upon pain of fine and imprisonment; and that any battery, wounding, or killing the rioters, that may happen in suppressing the riot, is justifiable [j]. So that our antient law, previous to the modern riot act, seems pretty well to have guarded against any violent breach of the public peace; especially as any riotous assembly on a public or general account, as to redress grievances or pull down all inclosures, and also resisting the king's forces if sent to keep the peace, may amount to overt acts of high treason, by levying war against the king.

7. NEARLY related to this head of riots is the offence of *tumultuous petitioning*; which was carried to an enormous height in the times preceding the grand rebellion. Wherefore by statute 13 Car. II. st. 1. c. 5. it is enacted, that not more than twenty names shall be signed to any petition to the king or either house of parliament, for any alteration of matters established by law in church or state; unless the contents thereof be previously approved, in the country, by three justices, or the majority of the grand jury at the assises or quarter sessions; and, in London, by the lord mayor, aldermen, and common council [k]: and that no petition shall be delivered by a company of more than ten persons: on pain in either case of incurring a penalty not exceeding 100 l, and three months imprisonment.

8. AN eighth offence against the public peace is that of a *forcible entry* or *detainer*; which is committed by violently taking or keeping possession, with menaces, force, and arms, of lands and tenements, without the authority of law. This was for-

---

j 1 Hal. P. C. 495.  1 Hawk. P. C. 161.
k This may be one reason (among others) why the corporation of London has, since the restoration, usually taken the lead in petitions to parliament for the alteration of any established law.

merly allowable to every perſon diſſeiſed, or turned out of poſ-
ſeſſion, unleſs his entry was taken away or barred by his own
neglect, or other circumſtances; which were explained more at
large in a former volume[l]. But this being found very prejudi-
cial to the public peace, it was thought neceſſary by ſeveral ſta-
tutes to reſtrain all perſons from the uſe of ſuch violent methods,
even of doing themſelves juſtice; and much more if they have
no juſtice in their claim[m]. So that the entry now allowed by
law is a peaceable one; that forbidden is ſuch as is carried on
and maintained with force, with violence, and unuſual weapons.
By the ſtatute 5 Ric. II. ſt. 1. c. 8. all forcible entries are puniſhed
with impriſonment and ranſom at the king's will. And by the
ſeveral ſtatutes of 15 Ric. II. c. 2. 8 Hen. VI. c. 9. 31 Eliz.
c. 11. and 21 Jac. I. c. 15. upon any forcible entry, or forcible
detainer after peaceable entry, into any lands, or benefices of the
church, one or more juſtices of the peace, taking ſufficient
power of the county, may go to the place, and there record the
force upon his own view, as in caſe of riots; and upon ſuch
conviction may commit the offender to gaol, till he makes fine
and ranſom to the king. And moreover the juſtice or juſtices
have power to ſummon a jury, to try the forcible entry or de-
tainer complained of: and, if the ſame be found by that jury,
then beſides the fine on the offender, the juſtices ſhall make re-
ſtitution by the ſheriff of the poſſeſſion, without inquiring into
the merits of the title; for the force is the only thing to be
tried, puniſhed, and remedied by them: and the ſame may be
done by indictment at the general ſeſſions. But this proviſion
does not extend to ſuch as endeavour to maintain poſſeſſion by
force, where they themſelves, or their anceſtors, have been in
the peaceable enjoyment of the lands and tenements, for three
years immediately preceding.

9. THE offence of *riding* or *going armed*, with dangerous or
unuſual weapons, is a crime againſt the public peace, by terri-
fying the good people of the land; and is particularly prohibited

[l] See Vol. III. pag. 174, &c.   [m] 1 Hawk. P. C. 141.

by

Case 1:13-cv-02841-CCB Document 44-72 Filed 02/14/14 Page 6 of 16

Ch. 11. WRONGS. 149

by the ſtatute of Northampton, 2 Edw. III. c. 3. upon pain of forfeiture of the arms, and impriſonment during the king's pleaſure: in like manner as, by the laws of Solon, every Athenian was finable who walked about the city in armour[n].

10. SPREADING *falſe news*, to make diſcord between the king and nobility, or concerning any great man of the realm, is puniſhed by common law[o] with fine and impriſonment; which is confirmed by ſtatutes Weſtm. 1. 3 Edw.I. c. 34. 2 Ric. II. ſt. 1. c. 5. and 12 Ric. II. c. 11.

11. FALSE and *pretended prophecies*, with intent to diſturb the peace, are equally unlawful, and more penal; as they raiſe enthuſiaſtic jealouſies in the people, and terrify them with imaginary fears. They are therefore puniſhed by our law, upon the ſame principle that ſpreading of public news of any kind, without communicating it firſt to the magiſtrate, was prohibited by the antient Gauls[p]. Such falſe and pretended prophecies were puniſhed capitally by ſtatute 1 Edw.VI. c. 12. which was repealed in the reign of queen Mary. And now by the ſtatute 5 Eliz. c. 15. the penalty for the firſt offence is a fine of 100 l. and one year's impriſonment; for the ſecond, forfeiture of all goods and chattels, and impriſonment during life.

12. BESIDES actual breaches of the peace, any thing that tends to provoke or excite others to break it, is an offence of the ſame denomination. Therefore *challenges to fight*, either by word or letter, or to be the bearer of ſuch challenge, are puniſhable by fine and impriſonment, according to the circumſtances of the offence[q]. If this challenge ariſes on account of any mo-

---

[n] Pott. Antiqu. b. 1. c. 26.
[o] 2 Inſt. 226. 3 Inſt. 198.
[p] "Habent legibus ſanctum, ſi quis quid de "republica a finitimis rumore aut fama acceperit, "uti ad magiſtratum deferat, neve cum alio "communicet: quod ſaepe homines temerarios "atque imperitos falſis rumoribus terreri, et "ad facinus impelli, et de ſummis rebus conſi- "lium capere, cognitum eſt." Caeſ. de bell. Gall. lib. 6. cap. 19.
[q] 1 Hawk. P. C. 135. 138.

ney

ney won at gaming, or if any aſſault or affray happen upon ſuch account, the offender, by ſtatute 9 Ann. c. 14. ſhall forfeit all his goods to the crown, and ſuffer two years impriſonment.

13. OF a nature very ſimilar to challenges are *libels*, *libelli famoſi*, which, taken in their largeſt and moſt extenſive ſenſe, ſignify any writings, pictures, or the like, of an immoral or illegal tendency; but, in the ſenſe under which we are now to conſider them, are malicious defamations of any perſon, and eſpecially a magiſtrate, made public by either printing, writing, ſigns, or pictures, in order to provoke him to wrath, or expoſe him to public hatred, contempt, and ridicule [r]. The direct tendency of theſe libels is the breach of the public peace, by ſtirring up the objects of them to revenge, and perhaps to bloodſhed. The communication of a libel to any one perſon is a publication in the eye of the law [s]: and therefore the ſending an abuſive private letter to a man is as much a libel as if it were openly printed, for it equally tends to a breach of the peace [t]. For the ſame reaſon it is immaterial with reſpect to the eſſence of a libel, whether the matter of it be true or falſe [u]; ſince the provocation, and not the falſity, is the thing to be puniſhed criminally: though, doubtleſs, the falſhood of it may aggravate it's guilt, and enhance it's puniſhment. In a civil action, we may remember, a libel muſt appear to be falſe, as well as ſcandalous [w]; for, if the charge be true, the plaintiff has received no private injury, and has no ground to demand a compenſation for himſelf, whatever offence it may be againſt the public peace: and therefore, upon a civil action, the truth of the accuſation may be pleaded in bar of the ſuit. But, in a criminal proſecution, the tendency which all libels have to create animoſities, and to diſturb the public peace, is the ſole conſideration of the law. And therefore, in ſuch proſecutions,

---

[r] 1 Hawk. P. C. 193.
[s] Moor. 813.
[t] 2 Brownl. 151. 12 Rep. 35. Hob. 215.
[u] Poph. 139. 1 Hawk. P. C. 195. Moor. 627. 5 Rep. 125. 11 Mod. 99.
[w] See Vol. III. pag. 125.

the

the only facts to be considered are, first, the making or publishing of the book or writing; and secondly, whether the matter be criminal: and, if both these points are against the defendant, the offence against the public is complete. The punishment of such libellers, for either making, repeating, printing, or publishing the libel, is fine, and such corporal punishment as the court in their discretion shall inflict; regarding the quantity of the offence, and the quality of the offender[x]. By the law of the twelve tables at Rome, libels, which affected the reputation of another, were made a capital offence: but, before the reign of Augustus, the punishment became corporal only[y]. Under the emperor Valentinian[z] it was again made capital, not only to write, but to publish, or even to omit destroying them. Our law, in this and many other respects, corresponds rather with the middle age of Roman jurisprudence, when liberty, learning, and humanity, were in their full vigour, than with the cruel edicts that were established in the dark and tyrannical ages of the antient *decemviri*, or the later emperors.

IN this, and the other instances which we have lately considered, where blasphemous, immoral, treasonable, schismatical, seditious, or scandalous libels are punished by the English law, some with a greater, others with a less degree of severity; the *liberty of the press*, properly understood, is by no means infringed or violated. The liberty of the press is indeed essential to the nature of a free state: but this consists in laying no *previous* restraints upon publications, and not in freedom from censure for criminal matter when published. Every freeman has an undoubted right to lay what sentiments he pleases before the public: to forbid this, is to destroy the freedom of the

[x] 1 Hawk. P. C. 196.
[y] ——————————— *Quinetiam lex
Poenaque lata, malo quae nollet carmine quenquam
Describi: —— vertere modum formidine* fustis. Hor. *ad Aug.* 152.
[z] Cod. 9. 36.

press:

of England, like that of every other well-regulated community, is too tender of the public peace, too careful of the lives of the fubjects, to adopt fo contentious a fyftem; nor will fuffer with impunity any crime to be *prevented* by death, unlefs the fame, if committed, would alfo be *punifhed* by death.

IN thefe inftances of *juftifiable* homicide, you will obferve that the flayer is in no kind of fault whatfoever, not even in the minuteft degree; and is therefore to be totally acquitted and difcharged, with commendation rather than blame. But that is not quite the cafe in *excufable* homicide, the very name whereof imports fome fault, fome error, or omiffion; fo trivial however, that the law excufes it from the guilt of felony, though in ftrictnefs it judges it deferving of fome little degree of punifhment.

II. EXCUSABLE homicide is of two forts; either *per infortunium*, by mifadventure; or *fe defendendo*, upon a principle of felf-prefervation. We will firft fee wherein thefe two fpecies of homicide are diftinct, and then wherein they agree.

1. HOMICIDE *per infortunium*, or *mifadventure*, is where a man, doing a lawful act, without any intention of hurt, unfortunately kills another: as where a man is at work with a hatchet, and the head thereof flies off and kills a ftander by; or, where a perfon, qualified to keep a gun, is fhooting at a mark, and undefignedly kills a man [d]: for the act is lawful, and the effect is merely accidental. So where a parent is moderately correcting his child, a mafter his fervant or fcholar, or an officer punifhing a criminal, and happens to occafion his death, it is only mifadventure; for the act of correction was lawful: but if he exceeds the bounds of moderation, either in the manner, the inftrument, or the quantity of punifhment, and death enfues, it is manflaughter at leaft, and in fome cafes (according to the circumftances) murder [e]; for the act of immoderate correction is un-

---

[d] 1 Hawk. P. C. 73, 74.   [e] 1 Hal. P. C. 473, 474.

lawful.

Ch. 14.                WRONGS.                  183

lawful. Thus by an edict of the emperor Constantine [f], when the rigor of the Roman law with regard to slaves began to relax and soften, a master was allowed to chastise his slave with rods and imprisonment, and, if death accidentally ensued, he was guilty of no crime: but if he struck him with a club or a stone, and thereby occasioned his death; or if in any other yet grosser manner "*immoderate suo jure utatur, tunc reus homicidii fit.*"

BUT, to proceed. A tilt or tournament, the martial diversion of our ancestors, was however an unlawful act; and so are boxing and swordplaying, the succeeding amusement of their posterity: and therefore if a knight in the former case, or a gladiator in the latter, be killed, such killing is felony of manslaughter. But, if the king command or permit such diversion, it is said to be only misadventure; for then the act is lawful [g]. In like manner as, by the laws both of Athens and Rome, he who killed another in the *pancratium*, or public games, authorized or permitted by the state, was not held to be guilty of homicide [h]. Likewise to whip another's horse, whereby he runs over a child and kills him, is held to be accidental in the rider, for he has done nothing unlawful; but manslaughter in the person who whipped him, for the act was a trespass, and at best a piece of idleness, of inevitably dangerous consequence [i]. And in general, if death ensues in consequence of any idle, dangerous, and unlawful sport, as shooting or casting stones in a town, or the barbarous diversion of cock-throwing, in these and similar cases, the slayer is guilty of manslaughter, and not misadventure only, for these are unlawful acts [k].

2. HOMICIDE in *self-defence*, or *se defendendo*, upon a sudden affray, is also excusable rather than justifiable, by the English law. This species of self-defence must be distinguished from that just now mentioned, as calculated to hinder the perpetra-

[f] *Cod. l. 9. t. 14.*
[g] 1 Hal. P. C. 473.  1 Hawk. P. C. 74.
[h] Plato *de LL. lib. 7. Ef. 9. 2. 7.*
[i] Hawk. P. C. 73.
[k] *Ibid.* 74.  1 Hal. P. C. 472.  Foft. 261.

tion

Case 1:13-cv-02841-CCB Document 44-72 Filed 02/14/14 Page 12 of 16

tion of a capital crime) is not a matter of excuse, but of justification. But the self-defence, which we are now speaking of, is that whereby a man may protect himself from an assault, or the like, in the course of a sudden brawl or quarrel, by killing him who assaults him. And this is what the law expresses by the word *chance-medley*, or (as some rather chuse to write it) *chaud-medley*; the former of which in it's etymology signifies a *casual* affray, the latter an affray in the *heat* of blood or passion: both of them of pretty much the same import; but the former is in common speech too often erroneously applied to any manner of homicide by misadventure; whereas it appears by the statute 24 Hen. VIII. c. 5. and our antient books[l], that it is properly applied to such killing, as happens in self-defence upon a sudden rencounter[m]. This right of natural defence does not imply a right of attacking: for, instead of attacking one another for injuries past or impending, men need only have recourse to the proper tribunals of justice. They cannot therefore legally exercise this right of preventive defence, but in sudden and violent cases; when certain and immediate suffering would be the consequence of waiting for the assistance of the law. Wherefore, to excuse homicide by the plea of self-defence, it must appear that the slayer had no other possible means of escaping from his assailant.

IN some cases this species of homicide (upon *chance-medley* in self-defence) differs but little from manslaughter, which also happens frequently upon *chance-medley* in the proper legal sense of the word[n]. But the true criterion between them seems to be this: when both parties are actually combating at the time when the mortal stroke is given, the slayer is then guilty of manslaughter; but if the slayer hath not begun to fight, or (having begun) endeavours to decline any farther struggle, and afterwards, being closely pressed by his antagonist, kills him to avoid his own destruction, this is homicide excusable by self-defence[o]. For which reason the law requires, that the person, who kills another

---

[l] Staundf. P. C. 16.  
[m] 3 Inst. 55. 57. Fost. 275, 276.  
[n] 3 Inst. 55.  
[o] Fost. 277.

in

in his own defence, should have retreated as far as he conveniently or safely can, to avoid the violence of the assault, before he turns upon his assailant; and that, not fictitiously, or in order to watch his opportunity, but from a real tenderness of shedding his brother's blood. And though it may be cowardice, in time of war between two independent nations, to flee from an enemy; yet between two fellow subjects the law countenances no such point of honour: because the king and his courts are the *vindices injuriarum*, and will give to the party wronged all the satisfaction he deserves [p]. In this the civil law also agrees with ours, or perhaps goes rather farther; " *qui cum aliter tueri se non possunt,* " *damni culpam dederint, innoxii sunt* [q]. The party assaulted must therefore flee as far as he conveniently can, either by reason of some wall, ditch, or other impediment; or as far as the fierceness of the assault will permit him [r]: for it may be so fierce as not to allow him to yield a step, without manifest danger of his life, or enormous bodily harm; and then in his defence he may kill his assailant instantly. And this is the doctrine of universal justice [s], as well as of the municipal law.

AND, as the *manner* of the defence, so is also the *time* to be considered: for if the person assaulted does not fall upon the aggressor till the affray is over, or when he is running away, this is revenge and not defence. Neither, under the colour of self defence, will the law permit a man to screen himself from the guilt of deliberate murder: for if two persons, A and B, agree to fight a duel, and A gives the first onset, and B retreats as far as he safely can, and then kills A, this is murder; because of the previous malice and concerted design [t]. But if A upon a sudden quarrel assaults B first, and upon B's returning the assault, A really and *bona fide* flees; and, being driven to the wall, turns again upon B and kills him; this may be *se defendendo* according to some of our writers [u]:

[p] 1 Hal. P. C. 481. 483.
[q] *Ff.* 9. 2. 45.
[r] 1 Hal. P. C. 483.
[s] Puff. b. 2. c. 5. §. 13.
[t] 1 Hal. P. C. 479.
[u] 1 Hal. P. C. 482.

Case 1:13-cv-02841-CCB Document 44-72 Filed 02/14/14 Page 14 of 16

though others [w] have thought this opinion too favourable; inasmuch as the neceſſity, to which he is at laſt reduced, originally aroſe from his own fault. Under this excuſe of ſelf-defence, the principal civil and natural relations are comprehended; therefore maſter and ſervant, parent and child, huſband and wife, killing an aſſailant in the neceſſary defence of each other reſpectively, are excuſed; the act of the relation aſſiſting being conſtrued the ſame as the act of the party himſelf [x].

THERE is one ſpecies of homicide *ſe defendendo*, where the party ſlain is equally innocent as he who occaſions his death: and yet this homicide is alſo excuſable from the great univerſal principle of ſelf-preſervation, which prompts every man to ſave his own life preferably to that of another, where one of them muſt inevitably periſh. As, among others, in that caſe mentioned by lord Bacon [y], where two perſons, being ſhipwrecked, and getting on the ſame plank, but finding it not able to ſave them both, one of them thruſts the other from it, whereby he is drowned. He who thus preſerves his own life at the expence of another man's, is excuſable though unavoidable neceſſity, and the principle of ſelf-defence; ſince their both remaining on the ſame weak plank is a mutual, though innocent, attempt upon, and an endangering of, each other's life.

LET us next take a view of thoſe circumſtances wherein theſe two ſpecies of homicide, by miſadventure and ſelf-defence, agree; and thoſe are in their blame and puniſhment. For the law ſets ſo high a value upon the life of a man, that it always intends ſome miſbehaviour in the perſon who takes it away, unleſs by the command or expreſs permiſſion of the law. In the caſe of miſadventure, it preſumes negligence, or at leaſt a want of ſufficient caution in him who was ſo unfortunate as to commit it; who therefore is not altogether faultleſs [z]. And as to the neceſſity which excuſes a man who kills another *ſe defendendo*,

---

[w] 1 Hawk. P. C. 75.  
[x] 1 Hal. P. C. 484.  
[y] Elem. c. 5. See alſo 1 Hawk. P. C. 73.  
[z] 1 Hawk. P. C. 72.

lord

Ch. 14. WRONGS. 187

lord Bacon[a] entitles it *neceffitas culpabilis,* and thereby diftinguifhes it from the former neceffity of killing a thief or a malefactor. For the law intends that the quarrel or affault arofe from fome unknown wrong, or fome provocation, either in word or deed: and fince in quarrels both parties may be, and ufually are, in fome fault; and it fcarce can be tried who was originally in the wrong; the law will not hold the furvivor intirely guiltlefs. But it is clear, in the other cafe, that where I kill a thief that breaks into my houfe, the original default can never be upon my fide. The law befides may have a farther view, to make the crime of homicide more odious, and to caution men how they venture to kill another upon their own private judgment; by ordaining, that he who flays his neighbour, without an exprefs warrant from the law fo to do, fhall in no cafe be abfolutely free from guilt.

NOR is the law of England fingular in this refpect. Even the flaughter of enemies required a folemn purgation among the Jews; which implies that the death of a man, however it happens, will leave fome ftain behind it. And the mofaical law [b] appointed certain cities of refuge for him " who killed his neigh-" bour unawares; as if a man goeth into the wood with his " neighbour to hew wood, and his hand fetcheth a ftroke with " the ax to cut down a tree, and the head flippeth from the " helve, and lighteth upon his neighbour that he die, he fhall " flee unto one of thefe cities and live." But it feems he was not held wholly blamelefs, any more than in the Englifh law; fince the avenger of blood might flay him before he reached his afylum, or if he afterwards ftirred out of it till the death of the high prieft. In the imperial law likewife [c] cafual homicide was excufed, by the indulgence of the emperor figned with his own fign manual, *" adnotatione principis:"* otherwife the death of a man, however committed, was in fome degree punifhable. Among the Greeks [d] homicide by misfortune was expiated by

---

[a] Elem. c. 5.
[b] Numb. c. 35. and Deut. c. 19.
[c] *Cod.* 9. 16. 5.
[d] Plato *de Leg. lib.* 9.

volutary banifhment for a year[e]. In Saxony a fine is paid to the kindred of the flain; which alfo, among the weftern Goths, was little inferior to that of voluntary homicide[f]: and in France no perfon is ever abfolved in cafes of this nature, without a largefs to the poor, and the charge of certain maffes for the foul of the party killed.

THE penalty inflicted by our laws is faid by fir Edward Coke to have been antiently no lefs than death[h]; which however is with reafon denied by later and more accurate writers[i]. It feems rather to have confifted in a forfeiture, fome fay of all the goods and chattels, others of only part of them, by way of fine or *weregild*[k]: which was probably difpofed of, as in France, *in pios ufus*, according to the humane fuperftition of the times, for the benefit of *his* foul, who was thus fuddenly fent to his account, with all his imperfections on his head. But that reafon having long ceafed, and the penalty (efpecially if a total forfeiture) growing more fevere than was intended, in proportion as perfonal property has become more confiderable, the delinquent has now, and has had as early as our records will reach[l], a pardon and writ of reftitution of his goods as a matter of courfe and right, only paying for fuing out the fame[m]. And indeed, to prevent this expenfe, in cafes where the death has notorioufly happened by mifadventure or in felf-defence, the judges will ufually permit (if not direct) a general verdict of acquittal[n].

III. FELONIOUS homicide is an act of a very different nature from the former, being the killing of a human creature, of any

---

[e] To this expiation by banifhment the fpirit of Patroclus in Homer may be thought to allude, when he reminds Achilles, in the twenty third Iliad, that, when a child, he was obliged to flee his country for cafually killing his playfellow; "νηπιος, ουκ εθελων."

[f] Stiernh. *de jure Goth. l. 3. c. 4.*

[g] De Mornay on the digeft.

[h] 2 Inft. 148. 315.

[i] 1 Hal. P. C. 425.  1 Hawk. P. C. 75. Foft. 282, &c.

[k] Foft. 287.

[l] Foft. 283.

[m] 2 Hawk. P. C. 381.

[n] Foft. 288.

age