Exhibit 12

to

Plaintiffs' Cross-Motion for Summary Judgment

and

Opposition to Defendants' Motion for Summary Judgment

## **DECLARATION OF MARK GIUS**

I, Mark Gius, under penalty of perjury, declare and state as follows:

1. I am over the age of 18, have personal knowledge of the facts and events referred to in this declaration, and am competent to testify to the matters stated below.

2. I am enclosing a copy of my expert report in this matter, dated January 16, 2014, the contents of which are, to the best of my knowledge and belief, true and accurate. I hereby adopt and incorporate my expert report in this declaration as if fully set forth herein.

I declare under penalty of perjury that the foregoing is true and correct.

_____          _____3/14/14_____
Mark Gius                                              Date

Attachment A

# REPORT BY MARK P. GIUS, PH.D.

## ANALYSIS OF IMPACT OF MARYLAND GUN LAW

**BACKGROUND AND QUALIFICATIONS**

1. I am a Professor of Economics at Quinnipiac University in Hamden, Connecticut. I obtained my Ph.D. in Economics from The Pennsylvania State University in December of 1991. A copy of my curriculum vitae is attached.

2. I have conducted research on gun control laws, gun ownerships rates, and the criminal behavior of young adults. I have published over 75 articles in peer reviewed journals.

3. I recently had an article published in the peer reviewed journal *Applied Economics Letters* (2014) that dealt specifically with assault weapons bans and concealed carry laws. A copy of this article is attached. This study uses the most recent data (1980 - 2009) on gun-related murder rates and state and federal gun control laws. This study is also the only study to my knowledge that examines both state and federal assault weapons bans and concealed carry laws and incorporates them into a regression model that is used to estimate the determinants of state-level gun-related murder rates.

4. For my work in this case, I am being compensated at a rate of $300 per hour.

**RELEVANT RESEARCH ON ASSAULT WEAPONS BANS**

1. As previously noted, I recently had a study published in *Applied Economics Letters* (2014) that estimates the determinants of gun-related murder rates. In this study, state-level data was collected for the period 1980-2009. This is the most recent data used for a study of this type. Instead of using simple correlations, I estimated a

1

regression model that takes into account a variety of socioeconomic and state-specific factors in order to determine if concealed carry laws and assault weapons bans had any effects on gun-related murder rates. In addition, I also looked at the federal assault weapons ban, something most other studies on this topic neglected to include in their analysis.

2. My results indicate that state-level assault weapons bans had no statistically-significant effects on state-level gun-related murder rates for the period in question. In other words, assault weapons bans were not correlated with either higher or lower murder rates, holding all other factors constant. I also found that state-level gun-related murder rates were higher during the federal assault weapons ban (1994-2004).

3. These results were expected because very few murders are committed using rifles, let alone assault rifles. In 2012, there were 12,765 murder victims; only 322 were killed by a rifle (*Crime in the United States*, 2012). Although this data does not breakout murder victims killed by assault rifles, it is reasonable to assume that it is much less than 322. Hence, at most 2.52% of murder victims could have been killed by assault rifles; the actual percentage is probably much lower. Therefore, any ban on assault rifles would have a negligible effect on the overall murder rate. Even if one looks at just gun-related murders, in 2012, 8,855 persons were killed by firearms. Hence, only 3.6% of gun-related murders were committed using a rifle. Given the very low number of murder victims killed by a rifle, the result that assault weapons bans have no effect on gun-related murder rates is reasonable.

4. Regarding the result obtained for the federal assault weapons ban, this result also was not unexpected. The federal ban had many exemptions and loopholes; many assault rifles were "grandfathered in," and manufacturers were able to make minor modifications to their weapons in order to make their guns legal according to the federal assault weapons law. In addition, the period of the assault weapons ban also coincided with a diminishing violent crime rate. During the early years of the ban period, the crack epidemic was winding down, and the violent crime rate was still relatively high but was starting to fall. The violent crime rate fell throughout the period of the federal assault weapons ban, and it continued to fall even after the ban expired. The results of my analysis may be capturing these trends in violent crime and the relative ineffectiveness of the federal assault weapons ban.

5. Finally, unlike other studies in this area, I used regression statistical techniques to estimate the determinants of gun-related murder rates. The advantage of using such a technique is that I am able to control for a variety of other factors that affect murder rates. Clearly, there are many other variables that are more strongly correlated with murder than gun control laws. Most other studies rely on anecdotal evidence or very simple correlations in order to find support for their arguments.

**EFFECT OF ASSAULT WEAPONS BAN ON MASS SHOOTINGS**

6. Although my study does not examine the effect of an assault weapons ban on mass shootings, it is important to note that mass shootings are relatively rare. In 2012, according to data compiled by the *Mother Jones* website, there were 72 victims of mass shootings in the United States; not all of these victims were killed by assault rifles. In

the same year, 89 murder victims were killed by means of strangulation. Hence, in 2012, there was a greater probability that a person in the United States would be killed by someone strangling them than by an assault rifle in a mass shooting.

**EFFECT OF BAN ON LARGE CAPACITY MAGAZINES**

7. My research did not consider the effect of large capacity magazines on gun-related murder rates. It is important to note, however, that most state-level assault weapons bans, in addition to the federal assault weapons ban, included some restrictions on large capacity magazines. Given that assault weapons laws were found to be ineffective in reducing the gun-related murder rate, it is reasonable to assume that a ban on large capacity magazines would likewise be ineffective in reducing the murder rate. However, my research only examined the overall gun-related murder rate. I did not look at mass shootings or the use of large capacity magazines in mass shootings. However, it is important to note that the odds of being killed in a mass shooting are very low. Hence, a ban on large capacity magazine probably would not have a statistically-significant effect on the overall gun-related murder rate.

**POTENTIAL IMPACT OF MARYLAND FIREARMS LAW**

8. Given the above analysis and the results of my recently published article, it is my considered opinion that the assault weapons ban and large capacity magazine ban recently enacted by the state of Maryland would have no statistically-significant effect on the overall gun-related murder rate. Given that so few murders are committed using rifles and given that mass shooting are also very rare, the impact of the ban will

4

be nonexistent. In fact, after the federal assault weapons ban expired in 2004, gun-related murder rates continued to fall, even though certain assault weapons and large capacity magazines were no longer banned.

Report submitted by

Mark Gius

_____          Date __1/16/14__