Exhibit 15

to

Plaintiffs' Cross-Motion for Summary Judgment

and

Opposition to Defendants' Motion for Summary Judgment

# DECLARATION OF CAPTAIN (RET.) JACK MCCAULEY

I, Jack McCauley, under penalty of perjury, declare and state, to the best of my knowledge, information, and belief, as follows:

1. I am over the age of 18, have personal knowledge of the facts and events referred to in this declaration, and am competent to testify to the matters stated below.

2. I am the former Commander of the Maryland State Police Licensing Division and a retired Captain of the Maryland State Police. The Licensing Division is the Division responsible for conducting the background checks for regulated firearms and for making the determinations of whether particular firearms are "copies" of any of the enumerated long guns in Section 5-101 of the Public Safety Article of the Maryland Code.

3. Prior to becoming Commander of the Licensing Division, I was a patrol officer, criminal investigator, narcotics investigator, homicide investigator, and Lieutenant in charge of overseeing the Gang Enforcement Unit and the Firearms Enforcement Section within the Criminal Investigation Division.

4. During my time at the Maryland State Police, I was involved in the seizure of a number of firearms – mainly hunting rifles and shotguns – that were not involved in crime. An emphasis was placed on the seizure of these firearms because the Office of the Governor wished to focus solely upon the number of firearms seized. Very few of the firearms that were seized were those banned by the Maryland Firearm Safety Act.

5. The Maryland Firearm Safety Act of 2013 bans firearms and magazines that are commonly owned in the State of Maryland by law-abiding citizens, for lawful purposes. During my time as Commander of the Licensing Division, the transfer of the firearms now banned

increased steadily, and we routinely processed applications for the transfer of banned firearms, especially the AR-15 and AK-47-style semi-automatic rifles.

6. The banned firearms are almost never used in crimes. At most, they are used in 5% of firearm-related crimes in Maryland.

7. The banned firearms are also not used disproportionately in attacks on law enforcement officers. In fact, the majority of officers who are assault with firearms are attacked with handguns. More officers are killed in car accidents than with the banned firearms.

8. The Maryland Firearm Safety Act will not have an impact on mass shootings. I was the Co-Chair of the Task Force to Study those with Mental Illness and their access to Firearms. This task force focused much of their discussion on mental health and came to the conclusion that the most important factor to preventing mass shootings was ensuring proper mental health care, treatment and training for law enforcement officers. We drafted a report to advocate this position, but the General Assembly chose to ignore many of our recommendations, which could have had a meaningful impact on both firearm crime and the community in general, and enact a law that will not stop anyone intent on committing a heinous crime. Maryland has never had a mass shooting, and the Maryland Firearm Safety Act is not likely to prevent a mass shooting from occurring.

9. The banned magazines are also common throughout Maryland. Nearly all new semiautomatic handguns are sold with magazines with a capacity greater than ten, including the firearms that are used by the Maryland State Police and most law enforcement agencies in Maryland.

10. The standard issue ballistic armor worn by Maryland State Police troopers is rated only to stop handgun threats; the standard armor is not rated to stop centerfire rifle fire of any

kind. As such, any centerfire rifle round, whether fired from a banned firearm or from a single-shot target rifle, will penetrate standard law enforcement armor. To my knowledge, no Maryland law enforcement officer has been shot with a banned firearm.

11. Retired law enforcement officers no longer have the authority to make arrests or carry out any other law enforcement officer function. They also do not have the duty to respond to threatening situations that an active law enforcement officer does. The Maryland Firearm Safety Act does not condition a retiring law enforcement officer's receipt of a banned firearm on any prior training with that firearm. Retired law enforcement officers are not required to undergo any firearm training, nor any qualifications with firearms, including those that they acquire from the law enforcement agency upon retirement. In all of the above regards, retiring law enforcement officer are situated no differently from all other citizens.

I declare under penalty of perjury that the foregoing is true and correct.

_____          _____3-16-14_____
Capt. (Ret.) Jack McCauley                          Date