Exhibit 25

to

Plaintiffs' Cross-Motion for Summary Judgment

and

Opposition to Defendants' Motion for Summary Judgment

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | | |
|---|---|---|
| **STEPHEN V. KOLBE, et al.;** | ) | |
| | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Case No.: 1:13-cv-02841-CCB** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **MARTIN J. O'MALLEY, et al.;** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## DEFENDANTS' RESPONSES TO PLAINTIFF MARYLAND STATE RIFLE AND PISTOL ASSOCIATION'S FIRST SET OF REQUESTS FOR ADMISSION

Pursuant to Rule 36 of the Federal Rules of Civil Procedure, Defendants Governor Martin O'Malley, Attorney General Douglas F. Gansler, Superintendent of State Police Marcus Brown, and the Maryland State Police ("Defendants") state as follows for their responses and objections to plaintiff Maryland State Rifle and Pistol Association's first set of requests for admission.

## PRELIMINARY STATEMENT

The following responses are based on the Defendants' knowledge, information, and belief, and are complete to the best of their knowledge at this time. As discovery proceeds, facts, information, evidence, documents, and things may be discovered that are not set forth in these responses, but which may be responsive to the requests. The Defendants assume no obligation to supplement or amend voluntarily these responses beyond applicable legal requirements to reflect information, evidence, documents, or things discovered following

service of these responses.  Furthermore, these responses were prepared based on the Defendants' good faith interpretation and understanding of the plaintiffs' requests and are subject to correction for inadvertent errors or omissions, if any.  These responses are given without prejudice to subsequent revision, amendment, or supplementation based upon any information, evidence, and documentation that hereinafter may be discovered.

The Defendants reserve the right to refer to, or to offer into evidence at the time of trial, any and all facts, evidence, documents, and things developed during the course of discovery and trial preparation, notwithstanding the reference to facts, evidence, documents, and things in these responses.

The Defendants reserve all objections or other questions as to the competency, relevance, materiality, privilege or admissibility of evidence in any subsequent proceeding of their responses and of any information or documents produce in response thereto.

The Defendants state that, except for facts explicitly admitted herein, no admission of any nature whatsoever is to be implied or inferred from their responses.  The fact that the Defendants have responded to a request should not be taken as an admission, or a concession of the existence of any fact set forth, inferred or assumed by such request, or that such response constitutes evidence of any fact thus set forth, inferred, or assumed.

The Defendants' decision to respond to any request, notwithstanding the objectionable nature of any of the requests themselves, is not:  (a) an acceptance of, or agreement with, any of the characterizations or purported descriptions of the transactions or events contained in the requests; (b) a concession or admission that the material is relevant to this proceeding; (c) a waiver of the General Objections or of the objections

asserted in any specific response; (d) an admission that any such information exists; or

(e) an agreement that responses for similar information will be treated in a similar manner.

## GENERAL OBJECTIONS

The Defendants' responses are subject to, qualified by, and limited by the following

General Objections, which apply to each specific request as if incorporated and set forth in

full in each response.

1.     The Defendants object to these requests because they were not timely served.

Specifically, the requests were served by mail on November 19, 2013, making responses

due on December 23, 2013, which is after the close of fact discovery.  Because the requests

were not served in sufficient time for responses to be due before the conclusion of fact

discovery, they were not in compliance with the scheduling order in this case, and no

response is required.  The Defendants have chosen nonetheless to provide voluntarily the

information contained herein.    By responding voluntarily as set forth herein, the

Defendants do not intend to waive their objection to providing any responses or

information that is not contained herein regardless of whether any such response or

information might have been required if these requests had been served timely.  Similarly,

by voluntarily providing the information contained herein, the Defendants do not waive

objection to other untimely discovery requests.

2.     The Defendants object to these requests to the extent they seek discovery

beyond or otherwise inconsistent with the discovery permitted by the Federal Rules of Civil

Procedure, the local rules of this Court, or the Orders of the Court in this matter.

3

3.     The Defendants object to these requests to the extent that they are overbroad, oppressive, duplicative, and cumulative.

4.     The Defendants object to these requests to the extent that they are vague, ambiguous, fail to specify with reasonable particularity the information sought, or otherwise are incomprehensible.

5.     The Defendants object to these requests to the extent that they require the Defendants to make legal conclusions, and/or presuppose legal conclusions that are disputed.

6.     The Defendants object to these requests to the extent that they seek admissions regarding information not available to the Defendants and/or that calls for information that is not within the Defendants' possession, custody, or control.

7.     The Defendants object to these requests to the extent that they seek information that is protected from disclosure pursuant to the attorney-client privilege, the attorney work product doctrine, executive or legislative privilege, or otherwise is privileged, protected, or exempt from discovery.

8.     The Defendants object to these requests to the extent they seek information that is not relevant to the subject matter involved in this action, are not calculated to lead to the discovery of admissible evidence, or are beyond the scope of what is required to be provided by the Federal Rules of Civil Procedure, the local rules of this Court, or the Orders of the Court in this matter.

9.     The Defendants object to these requests to the extent that they call for the disclosure of facts known, opinions held, and reports made by experts (testifying or non-

4

testifying) acquired or developed in anticipation of litigation or for trial and not in conformity with the Federal Rules of Civil Procedure, the local rules of this Court, or the Orders of the Court in this matter.   Expert discovery will be made according to the scheduling order governing this matter.

10.   In addition to these General Objections, the Defendants also state, where appropriate, other specific objections to individual requests.  By setting forth such specific objections, the Defendants neither intend to, nor do, limit or restrict or waive the General Objections, which shall be deemed incorporated in each of the responses to the specific requests that follow, though not specifically referred to or restated therein.

## RESPONSES

**Request 1:**   Admit that none of the Banned Firearms are Fully Automatic, Burst-fire, or Select-fire.

**Response 1:**   Subject to and without waiving their General Objections, denied. Certain "assault long guns" identified at § 5-101(r)(2) of the Public Safety Article come in fully automatic or select-fire versions, including the "AK-47 in all forms."  However, the fully automatic and select-fire versions of those firearms have long been subject to federal regulation.

**Request 2:**   Admit that the Banned Firearms have a rate of fire no greater than the rate of fire of the handguns on the Maryland State Police permissible handgun roster.

**Response 2:** The Defendants object to Request 2 as vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence in that it purports to ask for an admission with respect to a comparison of the rate of fire of all of hundreds of separate handguns on the permissible handgun roster, on one hand, as compared with all of 45 specifically-enumerated assault long-guns as well as additional firearms with certain features that qualify them as "copycat weapons," on the other hand. Subject to and without waiving those objections or their General Objections, the Defendants lack sufficient knowledge or information to form a belief as to the truth or falsity of the information contained within request 2, and therefore deny it. By way of further explanation, the Defendants do not possess information about the "rate of fire" of either all of the firearms the plaintiffs have identified as "Banned Firearms" or all of the firearms on the permissible handgun roster. As a result, the Defendants are not in position to admit or deny the requested comparison.

**Request 3:**   Admit that the Banned Firearms have a rate of fire that is significantly lower than the rate of fire of the M-16 Fully Automatic rifle.

**Response 3:** The Defendants object to Request 3 as vague and ambiguous to the extent the term "significantly" is unclear, particularly with respect to whether it is intended to refer simply to the numerical difference in the number of rounds that can be fired in a certain period of time, or whether the plaintiffs seek an admission that such difference is necessarily "significant" with respect to the damage that can be inflicted with such a firearm in any specific situation. Subject to and without waiving these objections or their

6

General Objections, the Defendants deny Request 3. By way of further explanation, the Defendants admit that many of the Banned Firearms have a rate of fire that is lower than the rate of fire of the M-16 Fully Automatic Rifle, though not necessarily "significantly" lower with respect to the dangerousness of the firearm in any given situation. The rate of fire for many of the Banned Firearms is limited only by the length of time it takes a user to depress the trigger and, as the United States military has identified, even M-16 select-fire rifles are often used most effectively in military situations in semi-automatic mode.

**Request 4:**   Admit that, with respect to the rate of fire, the Banned Firearms are no more dangerous than a Semi-automatic handgun.

**Response 4:**   The Defendants object to Request 2 as vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence in that it purports to ask for an admission with respect to a comparison of the rate of fire of all semi-automatic handguns, on one hand, as compared with all of 45 specifically-enumerated assault long-guns as well as additional firearms with certain features that qualify them as "copycat weapons," on the other hand. Subject to and without waiving those objections or their General Objections, the Defendants lack sufficient knowledge or information to form a belief as to the truth or falsity of the information contained within request 2, and therefore deny it. By way of further explanation, the Defendants do not possess information about the "rate of fire" of either all of the firearms the plaintiffs have identified as "Banned Firearms" or all semi-automatic handguns. As a result, the Defendants are not in position

to admit or deny the requested comparison. Furthermore, the dangerousness of a firearm is not exclusively a function of its rate of fire.

**Request 5:**  Admit that the Banned Firearms are commonly possessed by law-abiding, responsible citizens in Maryland.

**Response 5:**  Subject to and without waiving their General Objections, denied. Although the Defendants do not possess statistics regarding the number of Marylanders (or law-abiding, responsible Marylanders) who own one or more Banned Firearms, they have access, upon request, to information contained in the Maryland Automated Firearms Services System ("MAFSS"), which maintains information regarding applications completed for the purchase of regulated firearms, including regulated long guns, since 1994. From 1994 through 2012, MAFSS reflects a total of 604,051 total transfers of regulated firearms, of which 46,577 were regulated long guns. Moreover, it is believed that many of these regulated long guns were purchased by individuals who own other regulated long guns. For example, plaintiff National Sports Shooting Foundation ("NSSF") has estimated from survey data that only 35% of owners of "modern sporting rifles" (which NSSF defines as "AR- or AK-platform rifles such as an AR-15, AR-10, AK-47 or other semi-automatic rifles with detachable magazines") own only a single such firearm, and the average owner owns 3.1 of them. *See* NSSF Report, Modern Sporting Rifle (MSR) Comprehensive Consumer Report 2013, at 4, 13. Thus, the 46,577 regulated long guns transferred from 1994 through 2012 are likely possessed by a much smaller

8

number of individuals.[1]  Using the Census Bureau's 2012 estimate that Maryland's adult population is approximately 4,542,882, that would mean that well fewer than one percent of Maryland's adult population had purchased a Banned Firearm in the last two decades.

By contrast, MAFSS reflects 10 times as many handguns as regulated long guns transferred in Maryland from 1994 through 2012.  And MAFSS does not contain, and the Maryland State Police does not track, any information about the substantial number of purchases of unregulated firearms in Maryland during that time period.  For example, using NICS data, NSSF has calculated that there were approximately 136,440 total firearms transfers in Maryland in 2012.  In 2012, according to MAFSS, there were 68,313 transfers of regulated firearms in Maryland, slightly more than half of what NSSF calculates as the total number of firearms transactions that year.  If that same ratio held for the entire period from 1994 through 2012, that would mean that regulated long guns—less than 1/10 of the sales of regulated firearms during that period—would have constituted less than 1/20 of overall firearm sales during that period.

**Request 6:**   Admit that the Banned Firearms are used for the lawful purpose of self-defense in Maryland.

**Response 6:**  Subject to and without waiving their General Objections, denied.  The Defendants understand that certain individuals have contended that they would use a

---

[1] The Defendants do not necessarily accept these data, or the conclusions drawn from them by the NSSF, as accurate or based on a supportable methodology, but the Defendants agree that the number of assault long guns owned in Maryland is significantly higher than the number of Marylanders who own assault long guns in Maryland.

Banned Firearm for self-defense if the need arose, but the Defendants are not currently aware of a single case in which a Banned Firearm has actually been used for self-defense in Maryland.

**Request 7:**   Admit that the Banned Firearms are used for the lawful purpose of hunting in Maryland.

**Response 7:**   Subject to and without waiving their General Objections, upon information and belief, the Defendants understand that certain firearms now designated as assault long guns have been used for hunting, though not necessarily frequently or commonly.

**Request 8:**   Admit that the Banned Firearms are used for the lawful purpose of Competitive Marksmanship in Maryland.

**Response 8:** Subject to and without waiving their General Objections, admitted in part. The Defendants understand that the AR-15 and its imitations and their copies have been used in certain competitive marksmanship events in Maryland. The Defendants lack knowledge that any other Banned Firearms are used in competitive marksmanship in Maryland, and therefore deny request 8 with respect to any Banned Firearms other than the AR-15.

**Request 9:**   Admit that the Banned Firearms are used for the lawful purpose of gaining proficiency in firearm marksmanship skills in Maryland.

10

**Response 9:**   Subject to and without waiving their General Objections, the Defendants lack sufficient knowledge or information to form a belief as to the truth or falsity of the contention that the Banned Firearms are used for the lawful purpose of gaining proficiency in firearm marksmanship skills in Maryland.   As discussed in Defendant's Response 8, the Defendants understand that the Colt AR-15 and its imitations and copies are used in certain competitive marksmanship events in Maryland. It stands to reason, therefore, that persons may attempt to gain proficiency with those firearms prior to competing. The Defendants lack knowledge that any other Banned Firearms are used in competitive marksmanship in Maryland, and therefore deny request 9 with respect to any Banned Firearms other than the AR-15.

**Request 10:**   Admit that a purpose for allowing retiring law enforcement officers to have transferred to them a Banned Firearm upon retirement is to allow them to own the firearm for self-defense.

**Response 10:**   In addition to their General Objections, the Defendants object to request 10 to the extent that it asks the Defendants to admit or deny what the General Assembly's purpose was in enacting a particular provision of the Firearm Safety Act of 2013.   The Act speaks for itself, and the Defendants lack personal knowledge regarding what the General Assembly's purpose was or was not in enacting the referenced provision. The Defendants do not transfer Banned Firearms to retired law enforcement officers.

**Request 11:**  Admit that Patrol Officers in the Maryland State Police are provided with, or permitted to carry, Banned Firearms.

**Response 11:**  Subject to and without waiving their General Objections, the Defendants admit that certain Patrol Officers in the Maryland State Police are provided with, or are permitted to carry, certain firearms now designated as assault long guns, upon the completion of certain training requirements specific to those firearms.  To the extent Request 11 implies that all Patrol Officers are provided with, or permitted to carry, Banned Firearms, Request 11 is denied.

**Request 12:**  Admit that a purpose of allowing Patrol Officers in the Maryland State Police to carry Banned Firearms is for self-defense.

**Response 12:**  Subject to and without waiving their General Objections, denied as stated.  The purpose of allowing certain Patrol Officers in the Maryland State Police to carry certain firearms now designated as assault long guns is to permit them to carry out their law enforcement duties, including apprehension of criminals and suspected criminals and protecting public safety.  In carrying out those responsibilities, law enforcement officers are also necessarily concerned with their own safety, in addition to the safety of the public, but the law enforcement purposes for which these firearms are used are substantially different from civilian self-defense.

**Request 13:**  Admit that the Banned Firearms are used in less than 6% of firearm crime nationwide.

12

**Response 13:**   Subject to and without waiving their General Objections, after reasonable inquiry, the Defendants lack sufficient knowledge or information to support a belief as to the truth or falsity of whether the firearms now designated as assault long guns are used in less than 6% of all firearm crime nationwide, and therefore deny Request 13. Data regarding firearm crime nationwide is collected by the Federal Bureau of Investigation, and reported on its website.  For example, data collected for 2012 is reported in numerous tables that can be accessed at the following url:  http://www.fbi.gov/about-us/cjis/ucr/crime-in-the-u.s/2012/crime-in-the-u.s.-2012/offenses-known-to-law-enforcement/expanded-offense/expandedoffensemain.  According to the FBI, in 2012 there were a total of 8,855 murders with firearms, including 6,371 with handguns, 625 with long guns, and 1,859 with other or unspecified types of firearms.  Statistics reported by the FBI do not identify the particular type of firearm associated with most other types of firearms crimes.

**Request 14:**  Admit that the Banned Firearms are used in less than 6% of firearm crime in Maryland.

**Response 14:**   Subject to and without waiving their General Objections, after reasonable inquiry, the Defendants lack sufficient knowledge or information to support a belief as to the truth or falsity of whether the firearms now designated as assault long guns are used in less than 6% of all firearm crime in Maryland, and therefore deny Request 14. Data regarding firearm crime in Maryland is collected by the Federal Bureau of Investigation, and reported on its website.  For example, data collected for 2012 is reported

13

in numerous tables that can be accessed at the following url: http://www.fbi.gov/about-us/cjis/ucr/crime-in-the-u.s/2012/crime-in-the-u.s.-2012/offenses-known-to-law-enforcement/expanded-offense/expandedoffensemain. Data is also collected by Maryland and published annually in Uniform Crime Reports. The most recent report is available at: http://www.goccp.maryland.gov/msac/documents/2012CrimeInMarylandUniformCrime Report.pdf. As reflected in that report, in 2012 in Maryland there were 281 murders by firearm, of which 271 were by handgun, 7 were by long gun, and 3 were by an unknown type of firearm. The MSP does not collect information on the type of firearm used in most other crimes.

**Request 15:** Admit that none of the Banned Firearms have been used in a mass shooting in Maryland.

**Response 15:**   Subject to and without waiving their General Objections, the Defendants are not in possession of information about the type of firearm used in every mass shooting that has taken place in Maryland. Thus, although the Defendants are not currently aware of mass shootings in Maryland that have used one or of the Banned Firearms, they lack knowledge or information sufficient to state for certain that none of the Banned Firearms have been used in a mass shooting in Maryland, and therefore deny the request. Furthermore, although technically separate incidents, a Bushmaster semi-automatic rifle was used in multiple murders over the course of a three-week span in October 2002 by John Allen Muhammad and Lee Boyd Malvo.

14

**Request 16:** Admit that the expiration of the federal ban on assault weapons did not lead to an increase in the frequency of firearm-related crime in Maryland.

**Response 16:** Subject to and without waiving their General Objections, the Defendants admit only that firearm-related crime continued to decline in Maryland after the expiration of the federal ban on assault weapons, as it had been doing before the expiration of the ban. However, that does not mean that the expiration of the federal ban on assault weapons did not leave Maryland with a higher level of firearm-related crime than would have occurred if the ban had remained in place.

**Request 17:** Admit that Magazines are a necessary component to permit a Semi-automatic firearm to be used effectively in self-defense.

**Response 17:** Subject to and without waiving their General Objections, denied. Upon information and belief, some semi-automatic firearms come with attached magazines, and other semi-automatic weapons can chamber and fire a round even without a detachable or fixed magazine being in place. Detachable magazines are thus not required in these circumstances to effectively fire a firearm in self-defense. Moreover, the Defendants understand that in many situations the sight of a firearm of any type will be sufficient to scare off a potential assailant. The Defendants admit that a detachable magazine—though not one with a capacity in excess of 10 rounds—is necessary to permit most semi-automatic firearms without attached magazines to fire more than one round.

**Request 18:** Admit that Magazines are a necessary component for some Semi-automatic firearms to function.

**Response 18:** Subject to and without waiving their General Objections, admitted as stated, at least to fire more than one round in succession without reloading. Specifically, although the Defendants understand that some semi-automatic firearms are able to function without detachable magazines, others are not.

**Request 19:** Admit that a purpose of providing Magazines capable of holding more than ten rounds to law enforcement officers as standard equipment is to allow them to better defend themselves.

**Response 19:** Subject to and without waiving their General Objections, denied as stated. The purpose of allowing certain Patrol Officers in the Maryland State Police to carry magazines capable of holding more than 10 rounds is to permit them to carry out their law enforcement duties, including apprehension of criminals and suspected criminals and protecting public safety. In carrying out those responsibilities, law enforcement officers are also necessarily concerned with their own safety, in addition to the safety of the public, but the law enforcement purposes for which these firearms are used are substantially different from civilian self-defense.

**Request 20:** Admit that a purpose of allowing retired law enforcement officers to purchase Magazines capable of holding more than ten rounds is to allow them to better defend themselves.

16

**Response 20:**   Subject to and without waiving their General Objections, the Defendants object to request 20 to the extent that it asks the Defendants to admit or deny what the General Assembly's purpose was in enacting a particular provision of the Firearm Safety Act of 2013. The Act speaks for itself, and the Defendants lack personal knowledge regarding what the General Assembly's purpose was or was not in enacting the referenced provision.

**Request 21:**  Admit that, on average, firearm crimes involve three or fewer rounds being fired.

**Response 21:**  The Defendants object to Request 21 as vague and ambiguous in that it is unclear whether the request is intended to refer to firearm crimes in Maryland, the United States, a region of the United States, or some other geographical area, and it fails to specify any particular period of time. Subject to and without waiving that objection or their General Objections, the Defendants do not maintain statistics regarding the average number of rounds fired in firearms crimes in Maryland, much less any other jurisdiction. As a result, the Defendants are unable to determine with certainty from information in their possession the truth or falsity of whether all firearm crimes involve, on average, three or fewer rounds being fired, and therefore deny Request 21.

**Request 22:**  Admit that retired law enforcement officers do not have the authority or duty that active law enforcement officers have with respect to enforcing the law or responding to criminal events.

**Response 22:** Admitted.

**Request 23:** Admit that members of Defendant Maryland State Police determine whether a particular firearm is banned as a Copy of an Enumerated Banned Firearm.

**Response 23:** Subject to and without waiving their General Objections, denied as stated. Section 5-101(r)(2) of the Public Safety Article identifies as assault long guns specifically-listed firearms and their copies. As an entity with responsibility for enforcing the requirements of State law regarding purchase of regulated long guns and the new ban on assault long guns, and in connection with providing guidance to consumers and sellers of firearms who have called or written with questions, the Maryland State Police has reached conclusions regarding whether certain firearms are copies of specifically-listed, banned firearms. Further information is provided in the Maryland State Police's response to interrogatory 10.

**Request 24:** Admit that Defendant Maryland State Police's determination of whether a particular firearm is banned as a Copy of an Enumerated Banned Firearm involves the analysis of the internal components of both the firearm in question and the Enumerated Banned Firearm.

**Response 24:** Subject to and without waiving their General Objections, the Defendants incorporate by reference their response to request 23 as though fully set forth herein. In reaching its own conclusions with respect to whether particular firearms are copies of specifically-listed firearms, the Maryland State Police has used a test that is

conservative and can be easily-administered. That test is identified in Firearms Bulletin #10-2, dated November 4, 2010, a copy of which is being produced contemporaneously with these responses. Specifically, the Maryland State Police has determined that, for its enforcement purposes and in the exercise of its enforcement discretion, it will only consider a particular firearm to be a copy of a specifically-listed firearm if it has "completely interchangeable internal components necessary for the full operation and function of any one of the specifically enumerated assault weapons." Further information is provided in the Maryland State Police's response to interrogatory 10.

**Request 25:** Admit that the determination of whether a particular firearm is banned as a Copy of an Enumerated Banned Firearm involves the exercise of judgment by a member of Defendant Maryland State Police as to whether the internal components of the firearm in question are sufficiently similar to those of an Enumerated Banned Firearm.

**Response 25:** Subject to and without waiving their General Objections, denied. The Defendants incorporate by reference their responses to requests 23 and 24, and the Maryland State Police's response to interrogatory 10, as though fully set forth herein. The test applied by the Maryland State Police is not intended to require the exercise of judgment, but instead to depend on the factual determination of whether internal components are interchangeable.

**Request 26**: Admit that Banned Firearms, including those based upon the AR-15 platform, are commonly possessed and used for lawful purposes by law-abiding, responsible citizens of Maryland.

**Response 26:** The Defendants object to request 26 as vague and ambiguous. The phrase "AR-15 platform" is not statutory language and it is not plain what additional firearms it is intended to encompass beyond the statutory definition found in § 5-101(r)(2)(xv) of the Public Safety Article, which is "Colt AR-15, CAR-15, and all imitations except Colt AR-15 Sporter H-BAR rifle." Moreover, it is unclear from the request whether it is seeking an admission regarding whether Marylanders commonly possess and own the firearms at issue, or whether it is seeking an admission regarding the use of such firearms by those Marylanders who do own them. Subject to and without waiving those objections and their General Objections, to the extent the request seeks an admission regarding whether Marylanders commonly possess and own the firearms at issue, the Defendants deny request 26 for the reasons stated in the response to request 5. To the extent the request seeks an admission regarding the uses of the firearms at issue by those Marylanders who do own them, the Defendants lack sufficient knowledge or information to form a belief as to the truth or falsity of the statement, and therefore deny it. The Defendants lack personal knowledge regarding whether or precisely how the majority of individuals who own any of the Banned Firearms use those firearms.

**Request 27:** Admit that Magazines capable of holding more than ten rounds are commonly possessed and used for lawful purposes by law-abiding, responsible citizens of Maryland.

**Response 27:** The Defendants object to request 27 as vague and ambiguous. It is unclear from the request whether it is seeking an admission regarding whether Marylanders commonly possess and own the magazines at issue, or whether it is seeking an admission regarding the use of such magazines by those Marylanders who do own them. Subject to and without waiving that objection and their General Objections, to the extent the request seeks an admission regarding whether Marylanders commonly possess and own the magazines at issue, upon information and belief, the Defendants admit that detachable magazines capable of holding more than ten rounds are commonly possessed in Maryland. To the extent the request seeks an admission regarding the uses of the magazines at issue by those Marylanders who do own them, the Defendants lack sufficient knowledge or information to form a belief as to the truth or falsity of the statement, and therefore deny it. The Defendants lack personal knowledge regarding whether or precisely how the majority of individuals who own any of the magazines at issue use those magazines.

**Request 28:** Admit that Magazines capable of holding more than ten rounds are commonly used for the lawful purpose of self-defense in Maryland.

**Response 28:** Subject to and without waiving their General Objections, denied. The Defendants lack personal knowledge regarding whether or precisely how the vast majority of individuals who own such magazines use them. By way of further response,

21

the Defendants are unaware of a single example in which it has been necessary for an individual in Maryland to fire more than ten rounds from a single magazine in self-defense.

**Request 29:** Admit that Magazines capable of holding more than ten rounds are commonly used for the lawful purpose of Competitive Marksmanship in Maryland.

**Response 29:** Subject to and without waiving their General Objections, denied. The Defendants lack personal knowledge regarding whether or precisely how the vast majority of individuals who own such magazines use them.

**Request 30:** Admit that Magazines capable of holding more than ten rounds are commonly used for the lawful purpose of gaining proficiency in firearm marksmanship skills in Maryland.

**Response 30:** Subject to and without waiving their General Objections, denied. The Defendants lack personal knowledge regarding whether or precisely how the vast majority of individuals who own such magazines use them.

DOUGLAS F. GANSLER
Attorney General


_____/s/_____

MATTHEW J. FADER (Fed. Bar # 29294)
STEPHEN M. RUCKMAN (Fed. Bar # 28981)
Assistant Attorney General
200 St. Paul Place, 20th Floor
Baltimore, Maryland 21202
410-576-7906 (tel.); 410-576-6955 (fax)
mfader@oag.state.md.us

DAN FRIEDMAN (Fed. Bar # 24535)
Assistant Attorney General
Office of the Attorney General
Legislative Services Building
90 State Circle, Room 104
Annapolis, Maryland 21401
Tel. 410-946-5600
dfriedman@oag.state.md.us

Dated: December 19, 2013          Attorneys for Defendants

23

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this  19th day of December, 2013, a copy of the

Defendant's  Responses to First Set of Requests for Admission from Plaintiff was sent by

electronic mail to, and will on the 20th day of December, 2013, be served by United

States mail, postage pre-paid on:


John Parker Sweeney, Esq. (JSweeney@babc.com)
T. Sky Woodward, Esq. (SWoodward@babc.com)
Bradley Arant Boult Cummings LLP
1615 L Street N.W., Suite 1350
Washington, D.C. 20036


          /s/
          Matthew J. Fader

24