Exhibit 26

to

Plaintiffs' Cross-Motion for Summary Judgment

and

Opposition to Defendants' Motion for Summary Judgment

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | |
|---|---|
| STEPHEN V. KOLBE, et al.; | ) |
| | ) |
| Plaintiffs, | ) Case No.: 1:13-cv-02841-CCB |
| | ) |
| v. | ) |
| | ) |
| MARTIN J. O'MALLEY, et al.; | ) |
| | ) |
| Defendants. | ) |

## DEFENDANT MARYLAND STATE POLICE'S SUPPLEMENTAL ANSWERS TO PLAINTIFF MARYLAND STATE RIFLE AND PISTOL ASSOCIATION'S INTERROGATORIES 6, 7, and 11

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendant Maryland State Police states as follows for its supplemental responses and objections to plaintiff Maryland State Rifle and Pistol Association's interrogatories 6, 7, and 11.

### PRELIMINARY STATEMENT

The following responses are based on the Defendant's knowledge, information, and belief, and are complete to the best of its knowledge at this time. As discovery proceeds, facts, information, evidence, documents, and things may be discovered that are not set forth in these responses, but which may be responsive to the interrogatories. The Defendant assumes no obligation to supplement or amend voluntarily these responses beyond applicable legal requirements to reflect information, evidence, documents, or things discovered following service of these responses. Furthermore, these responses were prepared based on the Defendant's good faith interpretation and understanding of

1

the plaintiffs' interrogatories and are subject to correction for inadvertent errors or omissions, if any. These responses are given without prejudice to subsequent revision, amendment, or supplementation based upon any information, evidence, and documentation that hereinafter may be discovered.

The Defendant reserves the right to refer to, or to offer into evidence at the time of trial, any and all facts, evidence, documents, and things developed during the course of discovery and trial preparation, notwithstanding the reference to facts, evidence, documents, and things in these responses.

The Defendant reserves all objections or other questions as to the competency, relevance, materiality, privilege or admissibility of evidence in any subsequent proceeding of their responses and of any information or documents produce in response thereto.

The Defendant states that, except for facts explicitly admitted herein, no admission of any nature whatsoever is to be implied or inferred from their responses. The fact that the Defendant has responded to a request should not be taken as an admission, or a concession of the existence of any fact set forth, inferred or assumed by such request, or that such response constitutes evidence of any fact thus set forth, inferred, or assumed.

The Defendant's decision to respond to any request, notwithstanding the objectionable nature of any of the interrogatories themselves, is not: (a) an acceptance of, or agreement with, any of the characterizations or purported descriptions of the transactions or events contained in the interrogatories; (b) a concession or admission that the material is relevant to this proceeding; (c) a waiver of the General Objections or of

the objections asserted in any specific response; (d) an admission that any such information exists; or (e) an agreement that responses for similar information will be treated in a similar manner.

## **GENERAL OBJECTIONS**

The Defendant's responses are subject to, qualified by, and limited by the following General Objections, which apply to each specific request as if incorporated and set forth in full in each response.

1. The Defendant objects to these interrogatories because they were not timely served. Specifically, the interrogatories were served by mail on November 19, 2013, making responses due on December 23, 2013, which is after the close of fact discovery. Because the interrogatories were not served in sufficient time for responses to be due before the conclusion of fact discovery, they were not in compliance with the scheduling order in this case, and no response is required. The Defendant has chosen nonetheless to provide voluntarily the information contained herein. By responding voluntarily as set forth herein, the Defendant does not intend to waive their objection to providing any responses or information that is not contained herein regardless of whether any such response or information might have been required if these interrogatories had been served timely. Similarly, by voluntarily providing the information contained herein, the Defendant does not waive objection to other untimely discovery requests.

2. The Defendant objects to these interrogatories to the extent they seek discovery beyond or otherwise inconsistent with the discovery permitted by the Federal

3

Rules of Civil Procedure, the local rules of this Court, or the Orders of the Court in this matter.

3. The Defendants objects to these interrogatories to the extent that they are overbroad, oppressive, duplicative, and cumulative.

4. The Defendant objects to these interrogatories to the extent that they are vague, ambiguous, fail to specify with reasonable particularity the information sought, or otherwise are incomprehensible.

5. The Defendant objects to these interrogatories to the extent that they require the Defendant to make legal conclusions, and/or presuppose legal conclusions that are disputed.

6. The Defendant objects to these interrogatories to the extent that they seek the disclosure of information not available to the Defendants and/or that calls for information that is not within the Defendants' possession, custody, or control.

7. The Defendant objects to these interrogatories to the extent that they seek information that is protected from disclosure pursuant to the attorney-client privilege, the attorney work product doctrine, executive or legislative privilege, or otherwise is privileged, protected, or exempt from discovery.

8. The Defendant objects to these interrogatories to the extent they seek information that is not relevant to the subject matter involved in this action, are not calculated to lead to the discovery of admissible evidence, or are beyond the scope of what is required to be provided by the Federal Rules of Civil Procedure, the local rules of this Court, or the Orders of the Court in this matter.

9. The Defendant objects to these interrogatories to the extent that they call for the disclosure of facts known, opinions held, and reports made by experts (testifying or non-testifying) acquired or developed in anticipation of litigation or for trial and not in conformity with the Federal Rules of Civil Procedure, the local rules of this Court, or the Orders of the Court in this matter. Expert discovery will be made according to the scheduling order governing this matter.

10. In addition to these General Objections, the Defendant also states, where appropriate, other specific objections to individual interrogatories. By setting forth such specific objections, the Defendant neither intends to, nor does, limit or restrict or waive the General Objections, which shall be deemed incorporated in each of the responses to the specific interrogatories that follow, though not specifically referred to or restated therein.

## SPECIFIC OBJECTIONS AND ANSWERS

6. State any and all government interests in permitting retiring law enforcement officers in Maryland to have transferred to them a Banned Firearm at retirement.

**Answer**: Subject to and without waiving its General Objections, none of the defendants proposed the exception in the law for transfer of a banned assault long gun from a law enforcement agency to a retiring or retired law enforcement officer, nor would any of the defendants provide banned assault weapons to a retiring or retired law

enforcement officer, nor are any of the defendants aware of any other law enforcement agency that intends to transfer any banned firearms to retiring or retired law enforcement officers. Thus, the defendants are not aware of any current prospect that the exemption will be used. Because, with respect to their own areas of responsibility, none of the defendants has identified a need to or interest in transferring banned assault weapons to retiring or retired law enforcement officers, they are not in a position to comment specifically on a government interest in doing so at this time. The defendants are not the General Assembly. It is conceivable that the General Assembly might have viewed this exception as related to a reduction in gun violence and gun lethality, or related to public safety. The General Assembly may also have viewed this exception as allowing a law enforcement agency to do with respect to assault long guns what those agencies have long done with respect to service side arms, which is permit a retiring law enforcement officer to purchase the old firearms (with their associated magazines) at replacement cost as a no-cost way of "refreshing" the law enforcement agency's armory. The General Assembly might also have viewed this exception as allowing a law enforcement agency, in the exercise of its discretion, to confer a reward for the completion of a career of public service. The General Assembly also may have been following the example set by the United States Congress in enacting similar exceptions as part of the 1994 Assault Weapons ban.

7.  State any and all government interests in permitting retired law enforcement officers in Maryland to buy and sell Magazines capable of holding more than ten rounds.

**Answer**: Subject to and without waiving its General Objections, none of the defendants proposed the exception in the law for transfer of large-capacity magazines to or by retired law enforcement officers. The defendants are aware of a general practice among law enforcement agencies of allowing retiring law enforcement officials to purchase their service handgun, along with any associated magazines, which is a long-standing practice that, among other things, allows agencies to replenish their weapons stocks at no cost to the agencies or the taxpayers. The exception in the law allows that important practice to continue. Other than that, none of the defendants are in a position to comment specifically on the General Assembly's purpose. It is conceivable that the General Assembly might have viewed this exception as related to a reduction in gun violence and gun lethality, or related to public safety, including in support of important officer-owned firearm programs. The General Assembly also may have been following the example set by the United States Congress in enacting similar exceptions as part of the 1994 Assault Weapons ban.

11. Identify any firearm for which the determination of whether or not it is a Copy of an Enumerated Banned Firearm has changed over any period of time. For each firearm, identify both the firearm and the person who made both the determination that it was a Copy and the person who made the determination that it was not a Copy.

7

**Answer**: Subject to and without waiving its General Objections, the Maryland State Police previously considered a Saiga Shotgun to be regulated as a copy of one of the 45 specifically-enumerated assault long guns. Upon further review, the members of the Firearms Registration Section later determined that the Saiga Shotgun was not a copy of any of the specifically-enumerated assault weapons.

Also, in response to past inquiries regarding a heavy-barreled Bushmaster semi-automatic rifle, the Maryland State Police, focusing on an exception applicable to copies of the Colt AR-15 Sporter H-BAR (§ 5-101(r)(xv) of the Public Safety Article), had provided guidance that the Bushmaster heavy-barreled semi-automatic rifle was considered a copy of the Colt AR-15 Sporter H-BAR, and therefore exempt. In response to a recent inquiry, the Maryland State Police determined that the Bushmaster heavy-barreled semi-automatic rifle was a banned assault weapon because it was covered under the law's more specific provision prohibiting the "Bushmaster semi-automatic rifle" (§ 5-101(r)(xi) of the Public Safety Article). That decision was based on statutory interpretation, deferring to the more specific listing of the "Bushmaster semi-auto rifle" as a regulated assault weapon over the more general reference to an exception for copies of the Colt AR-15 Sporter H-BAR rifle. A document reflecting this determination, signed by Lieutenant Colonel William M. Pallozzi, has been produced in discovery. This issue is unique to the Bushmaster heavy-barreled semi-automatic rifle, and does not relate to any other heavy-barreled semi-automatic rifles, in light of the law's specific application to Bushmaster semi-automatic rifles, which the Maryland State Police

interpret as referring to all Bushmaster semi-automatic rifles, including heavy-barreled semi-automatic rifles.

The plaintiffs have also raised in this lawsuit issues related to the Maryland State Police's determination that AR-15 firearms manufactured by LWRC and Adcor are regulated long guns as copies of the "Colt AR-15, CAR-15, and all imitations except Colt AR-15 Sporter H-BAR rifle" (§ 5-101(r)(xv) of the Public Safety Article). The Maryland State Police have not changed any determination with respect to the treatment of AR-15 firearms manufactured by LWRC and Adcor. Colt makes AR-15 firearms—including its current versions and imitations of AR-15 firearms—with two different operating systems, a direct gas impingement operating system and a piston-driven system. The Maryland State Police have determined that an AR-15 that is a copy of an AR-15 with a direct gas impingement operating system is a regulated long gun, and that an AR-15 that is a copy of an AR-15 with a piston-driven operating system is also a regulated long gun. Moreover, the Maryland State Police understand that a stripped lower receiver manufactured by LWRC or Adcor is operable with upper receivers employing a direct gas impingement operating system as well as a piston-driven system.

In addition, before 2010, certain manufacturers began producing reproductions or imitations of various regulated assault weapons, but in .22 caliber rim fire. As such, they were cosmetically similar to specifically-enumerated assault long guns, but had different internal components and functionality. Questions arose regarding whether those reproductions or imitations were "copies" of the specifically-enumerated assault long guns. The Maryland State Police initially considered some of these reproductions to be

9

regulated as copies of specifically-enumerated assault long guns, and required an individual to complete an application for the purchase of a regulated firearm before purchasing one. However, to clarify this issue, the Maryland State Police requested an opinion of the Maryland Attorney General, which was issued on May 24, 2010. The Attorney General's opinion concluded that "to come within the definition of 'regulated firearm,' a copy of a designated assault weapon must be similar in its internal components and function to the designated weapon. Cosmetic similarity to an enumerated assault weapon alone would not bring a weapon within the regulated firearms law." 95 Op. Att'y Gen. 101, 101.

Subsequently, the Maryland State Police issued a firearms bulletin to all regulated firearms dealers stating that "[a] firearm that is cosmetically similar alone does not make it a "copy" of an assault weapon. Firearms Bulletin # 10-1. Thus, the bulletin continued, the Maryland State Police would no longer require a regulated firearms application for "a semiautomatic .22 caliber rim fire rifle that is only cosmetically similar to an assault weapon." The Maryland State Police also issued a separate, more general, Firearms Bulletin stating that, to be considered a copy of a specifically-enumerated firearm, a firearm that is cosmetically similar must have "completely interchangeable internal components necessary for the full operation and function" of the specifically-enumerated firearm. Firearms Bulletin # 10-2.

I, Lt. Col. William Pallozzi, Maryland State Police, under penalty of perjury, declare and state, to the best of my knowledge, information, and belief, that the foregoing Answers to Plaintiff Maryland State Rifle and Pistol Association's First Set of Interrogatories to the Maryland State Police are true, correct, and complete.

*[signature]*
Lt. Col. William Pallozzi
Maryland State Police

As to objections:

*[signature]*
Matthew J. Fader

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 10th day of January, 2014, a copy of the foregoing Defendant's Supplemental Answers to Plaintiff Maryland State Rifle and Pistol Association's Interrogatories 6, 7, and 11, was served by United States mail, postage pre-paid on, and sent electronically do:

    John Parker Sweeney, Esq. (JSweeney@babc.com)
    T. Sky Woodward, Esq. (SWoodward@babc.com)
    Bradley Arant Boult Cummings LLP
    1615 L Street N.W., Suite 1350
    Washington, D.C. 20036

                                        /s/
                                  Matthew J. Fader