## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Northern Division)

| | | |
|---|---|---|
| **STEPHEN V. KOLBE, et al.,** | ) | |
| | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Case No.: 1:13-cv-02841-CCB** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **MARTIN J. O'MALLEY, et al.,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

**PLAINTIFFS' MOTION TO EXCLUDE DEFENDANTS' EXPERT TESTIMONY
AND SUPPORTING MEMORANDUM**

Plaintiffs Stephen V. Kolbe, Andrew C. Turner, Wink's Sporting Goods, Atlantic Guns, Inc. and association Plaintiffs Associated Gun Clubs of Baltimore, Inc., Maryland Shall Issue, Inc., Maryland State Rifle and Pistol Association, Inc., National Shooting Sports Foundation, Inc., and Maryland Licensed Firearms Dealers Association, Inc. (collectively, "Plaintiffs") by and through undersigned counsel and pursuant to Federal Rule of Evidence 702 hereby move to exclude Defendants' expert testimony and submit the attached Memorandum in Support.

1

## INTRODUCTION

Defendants Governor Martin O'Malley, Attorney General Douglas Gansler, Col. Marcus Brown, and Maryland State Police (collectively "Defendants") have submitted declarations from experts in support of their Motion for Summary Judgment and in Opposition to Plaintiffs' Cross-Motion for Summary Judgment that do not conform to Federal Rule of Evidence 702 and should be excluded. These declarations are not based on facts or data relevant to the issues at hand, are contradicted directly by the deposition testimony of the declarants, and are submitted, in one instance, by an individual having neither the requisite knowledge or skill to properly be deemed an expert. Plaintiffs request that this Court exclude certain portions of those declarations that are demonstrably not in compliance with the Federal Rules of Evidence.

Defendants' experts Dr. Christopher Koper and Dr. Daniel Webster have submitted opinions that will not assist the Court in understanding the evidence, that are not based on sufficient facts or data, and that are contradicted by their deposition testimony. The opinions of Chief Johnson, Commissioner Batts, and Deputy Chief Stawinski related to ballistics evidence should be excluded because they are outside the scope of these experts' expertise. Chief James Johnson's testimony before the Maryland General Assembly should be excluded because it was not disclosed to Plaintiffs during discovery. Defendants' expert Lucy Allen's opinions should be excluded because they are based entirely on anecdotal evidence from third parties that she did not analyze for accuracy. The declaration of Maximillian A. Bulinski should be excluded because Mr. Bulinski was never identified as a witness for the Defendants. Finally, Defendants' expert Joseph Vince's opinions should be excluded because he manifestly lacks the requisite knowledge, skill, and training to be able to offer expert testimony related to the issues upon which he opines.

**STANDARD**

Under Federal Rule of Evidence 702, expert opinions are admissible only if the witness has the

necessary "knowledge, skill, experience, training, or education" to provide a competent opinion.  Even

then, an expert may only offer an opinion if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of
> fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702(a)-(d).

**ARGUMENT**

**I.      Dr. Christopher Koper's Opinions Should Be Excluded Because They Are Not Consistent
with His Own Research and Are Based on Insufficient Facts and Data.**

Dr. Koper is the only social scientist to have studied the effects of the federal assault weapons

ban that was in place from 1994 until 2004. Decl. of Christopher Koper, Defendants' Ex. 7 ECF No. 44-

7 at ¶ 5. In conducting this research, Dr. Koper noted that the premise that bans on certain firearms are

capable of producing decreases in firearm-related crime is baseless. As he stated in his 2004 report,

which is attached to his declaration, "[t]here is not a clear rationale for expecting the ban to reduce

assaults and robberies with guns." Decl. of Christopher Koper, Defendants' Exhibit 7, ECF No. 44-7,

Ex. B at 81; Dep. of Christopher Koper, Ex. 1 at 51, 83. He made clear that there is no data to support

the theory that the federal assault weapons ban decreased the lethality and injuriousness of gun violence.

Decl. of Christopher Koper, Defendants' Exhibit 7, ECF No. 44-7, Ex. B at 92, 96; Dep. of Christopher

Koper, Ex. 1 at 94. The federal assault weapons ban also failed to reduce the criminal use of banned

3

magazines. Decl. of Christopher Koper, Defendants' Exhibit 7, ECF No. 44-7, Ex. B at 2. Dr. Koper also noted that the only studies focused on state-level assault weapons bans did not show a reduction in crime. Decl. of Christopher Koper, Defendants' Exhibit 7, ECF No. 44-7, Ex. B at 81 n.95; Dep. of Christopher Koper, Ex. 1 at 84-85.

Despite the complete lack of data showing that the federal assault weapons ban had any impact on criminal activity or that state-level bans of assault weapons reduced crime, Dr. Koper states that the challenged laws have "the potential to reduce shooting injuries in the state over the long-run" based on "my detailed study of the federal ban in particular." Decl. of Christopher Koper, Defendants' Exhibit 7, ECF No. 44-7, at ¶ 86. Dr. Koper's study of the federal ban, however, found *no evidence* of any reduction in lethality or frequency of criminal use of firearms. Thus, as he implicitly acknowledges, Dr. Koper's opinion is based on absolutely no data.

Federal Rule of Evidence 702(b) requires that an expert's opinion be "based on sufficient facts or data." Fed. R. Evid. 702(b). Without an adequate basis in fact, an expert's opinions should not be admitted into evidence. *See Hathaway v. Bazany*, 507 F.3d 312, 317-18 (5th Cir. 2007)(affirming the exclusion of expert testimony where it was not based on sufficient facts and data). Dr. Koper asserts repeatedly that, if given more time, the federal ban would have produced data supporting his conclusions. Decl. of Christopher Koper, Defendants' Exhibit 7, ECF No. 44-7, at ¶¶ 11, 65, 67. There is, however, absolutely no data or facts to support this assertion, other than Dr. Koper's post-hoc supposition for why the federal ban did not have the effect he expected. *See* Decl. of Christopher Koper, Defendants' Exhibit 7, ECF No. 44-7, Ex. B at 96 ("[T]here has been no discernible reduction in the lethality and injuriousness of gun violence, based on indicators like the percentage of gun crimes resulting in death or the share of gunfire incidents resulting in injury, as we might have expected had the

ban reduced crimes with both [assault weapons] and [large capacity magazines] . . . . [The federal

ban's] effects are still unfolding and may not be fully felt for several years into the future . . . ."). This is

precisely what the Rule 702(b) requirement was designed to prevent, and Dr. Koper's opinion should

not be permitted. *See McLean v. 988011 Ontario, Ltd*., 224 F.3d 797, 801 (6th Cir. 2000)(stating that an

expert's opinion "must have a basis in established fact").

In this regard, Dr. Koper's opinions mirror closely those of Dr. Hardell in *Newman v. Motorola,*

*Inc.*, 218 F. Supp. 2d 769 (D. Md. 2002) *aff'd* 78 Fed. Appx. 292 (4th Cir. 2003)(unpublished)(*per*

*curiam*). In *Newman*, Dr. Hardell was offered as an expert to establish plaintiffs' theory that his cellular

telephone usage had caused his brain tumors. *Id*. at 775. His prior research projects, however, had found

"no 'overall increased risk for brain tumours associated with exposure to cellular phones'" and "[a]

'non-significantly' increased risk for brain tumors located on the same side of the head as the cell phone

use." *Id.* at 776 (quoting Lennart Hardell, *Use of Cellular Telephones and the Risk for Brain Tumours: A*

*Case-control Study*, Int'l J. of Oncology 15: 113-116 (1999)). Dr. Hardell conducted a second study

in which he found that cellular phone usage was associated with an increased risk of tumor growth, but

not of the tumor at issue in *Newman*. *Id.* at 777. The Court, properly recognizing its role was to exclude

evidence for which "there is simply too great an analytical gap between the data and the opinion

proffered," *id.* at 774 n.4, excluded his opinion.  *Id.* at 783. The Court explicitly noted that there were

"significant problems" associated with relying on evidence of the increased risk of a tumor that was not

present in the case when there was no evidence of an increased risk of the tumors actually suffered by

Newman. *Id.* at 778. Dr. Koper's work suffers from exactly the same flaws as Dr. Hardell's did. His

studies from both 1997 and 2004 found no evidence of any reduction in crime or of the lethality or

injuriousness of crime as a result of the federal assault weapons ban. Even more to the point, his 2004

study explicitly noted that, although there was evidence of a reduction of the criminal use of assault pistols from the federal ban, there was no reduction in the criminal use of assault rifles or of banned magazines. As Plaintiffs are only challenging the Maryland prohibitions on assault rifles and magazines, the record is devoid of evidence to support Dr. Koper's opinions and they should be excluded for the same reason that Dr. Hardell's opinions were excluded.

Moreover, Dr. Koper could not confirm that his opinions were accurate to a reasonable degree of scientific certainty. It is well-established that an expert must state his or her opinions to a reasonable degree of scientific probability or certainty. *E.g. Fitzgerald v. Manning*, 679 F.2d 341, 350 (4th Cir. 1982)(stating, in the context of medical causation, "in order to qualify on causation, the opinion testimony . . . must be stated in terms of a 'reasonable degree of medical certainty'"); *Miller v. Mandrin Homes, Ltd.*, No. CCB-05-3025, 2007 U.S. Dist. LEXIS 15193 at *16 (D. Md. Feb. 28, 2007)(refusing to consider "expert" opinions because they were not stated "to a reasonable degree of scientific certainty"); *see also Daubert v. Merrell Down Pharms.*, 509 U.S. 579, 590 (1993)(expert opinions must be based on "more than subjective belief or unsupported speculation"). Dr. Koper could not testify to a reasonable degree of scientific certainty that the challenged laws would reduce the number of crimes perpetrated with the banned magazines and firearms, would reduce the number of shots fired in crimes, would reduce the number of gunshot victims in crimes, would reduce the number of wounds per gunshot victim, would reduce the lethality of gunshot injuries, or would reduce the societal costs of gunshot violence. Dep. of Christopher Koper, Ex. 1 at 170-72. Defendants' arguments that Plaintiffs are improperly holding Dr. Koper to a nonexistent and unattainable standard are unavailing. The term "reasonable degree of scientific certainty" simply means that a conclusion is more likely than not to be true – a low threshold. *See Burke v. Town of Walpole*, 405 F.3d 66, 91 (1st Cir. 2005)("[T]he term

'reasonable degree of scientific certainty' – 'a standard requiring that the injury was more likely than not caused by a particular stimulus. . . ." (quoting Black's Law Dictionary 1294 (8th ed. 2004)). Dr. Koper's inability to meet even this minimal standard illustrates that his opinions are no more than speculation and should be excluded.

Finally, Dr. Koper's opinion that he believes that the challenged laws will have an impact on firearm-related crime is directly contradicted by his deposition testimony. Dr. Koper testified that it was still his belief today that the available evidence established that state-level firearm bans were not effective in preventing crime. Dep. of Christopher Koper, Ex. 1 at 84-85. He stated in his declaration, however, that the Maryland laws, which are obviously state-level bans on firearms and magazines, will have an impact on crime. Decl. of Christopher Koper, Defendants' Exhibit 7 ECF No. 44-7 at ¶ 85-86. Dr. Koper's declaration is directly contradictory to his deposition testimony and should be excluded for that reason as well. *Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 908 (6th Cir. 2006)("A directly contradictory affidavit should be struck unless the party opposing summary judgment provides a persuasive justification for the contradiction.").

Dr. Koper's expert opinions should be excluded in their entirety. At a minimum, his opinions related to the potential effects of the challenged laws should be excluded because: 1) there is too great an "analytical gap" between the data and his opinions; 2) Dr. Koper cannot state his opinions to a reasonable degree of scientific certainty; and 3) Dr. Koper directly contradicted his opinions in his prior sworn testimony.

II.     **The Opinions of Dr. Webster Should Be Excluded Because He Has Not Personally Conducted Any Research on the Relevant Issues and Because They Are Outside the Scope of His Expertise.**

Dr. Daniel Webster readily admits that he has not conducted any original research on any of the issues at stake in this case, but relies on the flawed work of Dr. Koper. Supp. Decl. of Daniel Webster, Defendants' Ex. 81, ECF No. 62-6 at ¶ 7; Decl. of Dr. Daniel Webster, Defendants' Ex. 6, ECF No. 44-6 at ¶¶ 12, 15-16, 22, 24-28. Although an expert may rely on the data or facts of a third party, courts have routinely excluded expert opinions in which the expert did no research to ensure the validity of the facts presented by that third party. *E.g. Moore v. BASF Corp.*, No. 11-1001, 2012 U.S. Dist. LEXIS 170411 at *5 (E.D. La. Nov. 30, 2012)("An expert may rely on data collected by another expert but must conduct some independent research in order to demonstrate that the calculations are reliable."); *JRL Enters. v. Procorp Assocs.*, No. 01-2893, 2003 U.S. Dist. LEXIS 9397 at *22 (E.D. La. June 3, 2003)("Other courts have similarly excluded expert opinion where the expert failed to conduct any independent research to determine the reliability of his assumptions. *See, e.g.*, *Total Containment, Inc. v. Dayco Products, Inc.,* 2001 U.S. Dist. LEXIS 15838, 2001 WL 1167506, at * 6-7 (E.D. Pa. Sept. 6, 2001); *JMJ Enters, Inc. v. VIA Veneto Italian Ice, Inc.,* 1998 U.S. Dist. LEXIS 5098, 1998 WL 175888, at * 7-8 (E.D. Pa. Apr. 15, 1998)"); *Berlyn, Inc. v. Gazette Newspapers, Inc.*, 214 F. Supp. 2d 530, 541 (D. Md. 2002)(excluding expert opinion because, *inter alia*, the expert's "methods are wholly lacking in independent research"). Given that Dr. Webster admits that he has performed no original research on the issues and has not examined the underlying data for accuracy, his opinions should be excluded in their entirety.

At a minimum, Dr. Webster's opinions regarding the mass shooting data he obtained from *Mother Jones* magazine must be excluded, as must any opinions based on Dr. Koper's work. With

respect to the mass shooting data he acquired from *Mother Jones* magazine, Dr. Webster noted that "the only thing [he] did was examine the trends just to get an understanding of the general temporal pattern . . . ." Dep. of Daniel Webster, Ex. 2 at 136. Dr. Webster did not testify that he conducted any research to ensure that the data reported in this magazine was correct. *See Campos v. MTD Prods.*, No. 2:07-CV-00029, 2009 U.S. Dist. LEXIS 63846 at *54-56 (M.D. Tenn. July 24, 2009)(excluding magazine and internet articles based on defendants argument that "[n]o one involved with this case has vouched for the accuracy or reliability of these publications"). In fact, he was not even sure how many of the instances involved a firearm banned by the challenged laws. Dep. of Daniel Webster, Ex. 2, at 129-130. Clearly, Dr. Webster failed to conduct even the most cursory of research into the data upon which he relied. His methodology is thus flawed, and his opinions should not be accepted by this Court. *See Moore,* 2012 U.S. Dist. LEXIS 170411 at *5; *Berlyn, Inc.*, 214 F. Supp. 2d at 541.

With respect to Dr. Webster's opinions based on the studies conducted by Dr. Koper, Dr. Webster succumbs to the same criticism as Dr. Koper himself. Dr. Koper found that the federal assault weapons ban had no effect on the frequency of crime or on the injuriousness or lethality of crime. Moreover, he found that the ban did not lessen the criminal use of banned long guns or magazines. Yet, based on this evidence, Dr. Webster opines that the Maryland bans will have an effect on criminal use of the banned firearms. This is plainly inconsistent with the actual data provided by Dr. Koper in his studies. There is too great an "analytical gap" between Dr. Webster's opinions and the data upon which he bases them. Thus, his opinions that are based on Dr. Koper's studies should be excluded. *Newman*, 218 F. Supp. 2d at 778.

Finally, Dr. Webster offers his opinions as to the dangerousness of certain features of firearms. Decl. of Daniel Webster, Defendants' Exhibit 6, ECF No. 44-6 at ¶¶ 7-9. Dr. Webster does not have any

formal training or experience with respect to firearms. In fact, he expressly disavowed having any expertise or direct experience using the banned firearms. Dep. of Daniel Webster, Ex. 2 at 22. Given that he has no specialized knowledge or experience with the banned firearms or the features upon which he opines, his opinions are inadmissible. *Belk, Inc. v. Meyer Corp*, 679 F.3d 146, 162 (4th Cir. 2012)("[A]n expert must have specialized knowledge to assist jurors in deciding particular issues in the case. . . ."). Additionally, Dr. Webster's opinions in paragraph 9 of his declaration are inadmissible because they are not relevant to the issues in this case. Fed. R. Evid. 702(a); *United States v. Ali,* 735 F.3d 176, 192 (4th Cir. 2013)(affirming the exclusion of expert testimony because, *inter alia*, it was not relevant). At issue are the bans on long guns and magazines. Dr. Webster's opinions are based on a study of assault *pistols*. The only feature of an assault pistol that is in common with the banned long guns is that both can accept detachable magazines. This "feature," however, is shared by nearly every semi-automatic firearm currently made. Thus, there is no link between the opinion of Dr. Webster and the issues actually being decided in this case, and paragraph 9 of Dr. Webster's declaration should be excluded as irrelevant.

## III.   The Testimony of Chief James Johnson Before the General Assembly Should Be Excluded.

Plaintiffs requested in discovery that Defendants produce the Bill File for 2013 Senate Bill 281. Defendants produced a portion of the actual Bill File on record, but Chief Johnson's testimony was not included. It also was not included in the copy of the Bill File obtained by Plaintiffs' Counsel. Nor was this recording ever disclosed to Plaintiffs as something upon which Defendants would rely, even though Defendants had an ongoing obligation to disclose Chief Johnson's testimony. Fed. R. Civ. P. 26(e). Their failure to do so is a violation of this Rule. *Cory v. Whisman, Grygiel & Giordano, P.A.*, No. WMN-06-2694, 2012 U.S. Dist. LEXIS 64334 at *18-*19 (D. Md. May 8, 2012)("This Rule clearly requires that parties supplement their discovery responses as necessary to ensure their responses are

complete and accurate. This obligation does not end at the close of discovery. . . .”). Had Plaintiffs

known that Chief Johnson testified, they would have inquired extensively into his views in relation to

this testimony during discovery. Plaintiffs are now prejudiced because of Defendants' actions in that

they are unable to probe any inconsistencies or inaccuracies. Federal Rule of Civil Procedure 37(c)(1)

provides that “[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or

(e), the party is not allowed to use that information or witness to supply evidence on a motion, at a

hearing, or at trial, unless the failure was substantially justified or is harmless.” As has been

demonstrated, Defendants' failure to disclose this testimony was required under Rule 26(e), and the

error was not harmless. As such, Chief Johnson's testimony before the General Assembly should be

excluded as a blatant violation of Fed. R. Civ. Pro. 26(e). Fed. R. Civ. P. 37(c)(1).

## IV.    The Ballistics Opinions of the Executive Law Enforcement Officers and Mr. Vince Should Be Excluded Because they Are Outside the Scope of Their Expertise.

Defendants declined to produce a qualified expert in ballistics. Three of Defendants' experts

expressly denied being ballistics experts. Dep. of Chief James Johnson, Ex. 3 at 54 (“I am not a ballistics

expert.”); Dep. of Christopher Koper, Ex. 1 at 58 (stating that he had some “general knowledge” in

ballistics, but “I should hesitate to call myself an expert”); Dep. of Joseph Vince, Ex. 4 at 21 (stating, in

response to whether he would consider himself a ballistic expert, “[n]o, sir, I would not”). None of

Defendants' other witnesses has purported to be a ballistics expert. *See* Decl. of Col. Marcus Brown,

Defendants' Ex. 2, ECF No. 44-2; Decl. of Comm'r Anthony Batts, Defendants Ex. 4, ECF No. 44-4;

Decl. of Deputy Chief Henry Stawinski, Defendants' Ex. 5, ECF No. 44-5; Decl. of Daniel Webster,

Defendants' Ex. 6 ECF No. 44-6; Decl. of Lucy Allen, Defendants' Ex. 9 ECF No. 44-9; Decl. of Capt.

Dalaine Brady, Defendants' Ex. 10 ECF No. 44-10; Decl. of Dr. Edward Cornwell, III, Defendants' Ex.

12 ECF No. 44-12.

Defendants have attempted to inappropriately introduce ballistics evidence both by the declarations of law enforcement officers and Mr. Vince, discussed *infra*. *See* Decl. of Chief James Johnson, Defendants' Ex. 3 ECF No. 44-3 at ¶ 35; Decl. of Comm'r Anthony Batts, Defendants' Ex. 4, ECF No. 44-4 at ¶ 21; Decl. of Deputy Chief Henry Stawinki, Defendants' Ex. 5, ECF No. 44-5 at ¶ 30. Notably, only Commissioner Batts even purported to base his opinion on any actual research. Defendants have not produced this research, nor did Commissioner Batts describe it whatsoever except to say he "oversaw research." As such, Defendants have not provided any factual basis to support the notion that any of the law enforcement officers have any data to support their ballistics claims.

It is abundantly clear that opinions that are outside an expert's expertise are inadmissible. *See Belk, Inc.*, 679 F.3d at 162 ("[A]n expert must have specialized knowledge to assist jurors in deciding particular issues in the case. . . ."); *Zareemba v. General Motors Corp.*, 360 F.3d 355, 359-60 (2nd Cir. 2004); *Smith v. Rasmussen*, 249 F.3d 755, 759 (8th Cir. 2001)(approving the exclusion of expert testimony when the expert was "not well-versed in the particular discipline relevant to their testimony"); *Ruark v. BMW of North America*, No. ELH-09-2738, 2014 LEXIS 11969 at *10 (D. Md. Jan. 30, 2014)("[A]n expert witness may not offer an opinion where the subject matter goes beyond the witness's area of expertise."). Every one of Defendants' experts who provided ballistics opinions has no training or experience with ballistic science. Thus, every one of their opinions is inadmissible and should be excluded.[1]

---

[1]      Beyond this fact, none of the experts produced any data or studies to support their opinions, other than anecdotal accounts. Anecdotal evidence is not the proper basis for expert opinion. *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1312 (11th Cir. 1999)(noting that reliance on anecdotal evidence is a factor to consider when determining admissibility under *Daubert*); *see also Kings Dodge, Inc. v. Chrysler Group, LLC*, No. 1:12-cv-445, 2013 U.S. Dist. LEXIS 168756 at *24-25 (S.D. Ohio Nov. 27, 2013) (including "reliance on anecdotal evidence" as a "red flag that suggest[s] a lack of reliability of expert testimony"). Thus, there is yet another reason the ballistics opinions offered by Defendants' experts should be excluded.

**V.     The Opinions of Ms. Allen Related to the Frequency of Defensive Firearm Use and Frequency of Mass Shootings Involving the Banned Firearms and Magazines Should Be Excluded Because She Did Not Verify the Data upon Which She Relied.**

As explained above, an expert's opinion that is based exclusively on evidence collected by a third party that was never analyzed for veracity is inadmissible. *See Moore*, *supra*, 2012 U.S. Dist. LEXIS 170411 at *5; *JRL Enters*, *supra*, 2003 U.S. Dist. LEXIS 9397 at *22; *Berlyn, Inc.*, *supra*, 214 F. Supp. 2d at 541. With respect to the self-defense stories she analyzed to form her opinion on the frequency of defensive firearm use, Ms. Allen stated that she simply coded stories taken from a third party source and conducted her analysis based on this data. *See* Dep. of Lucy Allen, Ex. 5 at 24. She also relied upon the *Mother Jones* magazine data described above, without conducting any independent research to verify the data. *Id.* at 85 (stating that she does not know if anyone has "ever gone through the process of reviewing the analysis" as one would to prepare for peer review). Without any research into the reliability of the data that she did not collect, her opinions are inadmissible and should be excluded.

Moreover, all of Ms. Allen's opinions based on these self-defense stories are based solely on anecdotal evidence. This is an inappropriate foundation, and, at the least, her opinions related to self-defense usage of firearms and the number of shots fired should be excluded. *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1312 (11th Cir. 1999)(noting that reliance on anecdotal evidence is a factor to consider when determining admissibility under *Daubert*); *see also Kings Dodge, Inc. v. Chrysler Group, LLC*, No. 1:12-cv-445, 2013 U.S. Dist. LEXIS 168756 at *25 (S.D. Ohio Nov. 27, 2013)(including "reliance on anecdotal evidence" as a "red flag that suggest[s] a lack of reliability of expert testimony").

**VI.     The Declaration of Maximillian Bulinski Should Be Excluded Because He Was Never Disclosed as a Witness by Defendants.**

Mr. Bulinski's "evidence" (Decl. of Maximillian Bulinski, Defendants't Ex. 83, ECF No. 62-8) is not admissible. even if it had any probative value, because Defendants never disclosed Mr. Bulinski as

a witness pursuant to Fed. R. Civ. P. 26(a), even after they knew he would offer testimony. Defendants have an ongoing obligation to disclose all witnesses and evidence upon which they intend to rely. Fed. R. Civ. P. 26(e). Mr. Bulinski's declaration should be disregarded. Fed. R. Civ. P. 37(c)(1); *see also Cory v. Whisman, Grygiel & Giordano, P.A.*, No. WMN-06-2694, 2012 U.S. Dist. LEXIS 64334 at *18-*19 (D. Md. May 8, 2012) (stating that the obligation to supplement Rule 26 disclosures "does not end at the close of discovery"); *Fleming v. Livingston County*, No. 08-cv-1174 2011 U.S. Dist. LEXIS 44745 at *13-*14 (C.D. Ill. April 26, 2011) (finding a violation of Rule 26 when plaintiff failed to supplement his initial disclosures with a fact witness upon whom he intended to rely and granting defendant's Motion to Strike).

## VII.   The Firearms-Related Opinions of Mr. Vince Should Be Excluded Because they Are Outside the Scope of His Expertise.

The bulk of Mr. Vince's declaration is devoted to the history and functionality of firearms and their accessories. *See* Decl. of Joseph Vince, Defendants' Ex. 6, ECF No. 44-6 at ¶¶ 10-19, 31-32. Mr. Vince expressly denied being an expert in firearms, however. Dep. of Joseph Vince, Ex. 4 at 105 (stating, in response to the question of whether he was "here as a firearm expert," "Not per se"). Exploration of the extent of his technical knowledge of ballistics or firearms during his deposition further revealed that Mr. Vince clearly was not an expert on these subjects. Given that nearly his entire declaration is premised on firearms history or technical specifications, as to which he is not an expert, his declaration should be excluded in its entirety, or, at a minimum, the parts related to firearms history and development should be excluded as outside the scope of his expertise. *Belk,* 679 F.3d at 162, *Ruark*; 2014 LEXIS 11969 at *10.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant their Motion to Exclude Defendants' Expert Opinions.

Respectfully submitted,

*/s/ John Parker Sweeney*
John Parker Sweeney (Bar No. 08761)
T. Sky Woodward (Bar No. 10823)
James W. Porter, III (Admitted *pro hac vice*)
Marc A. Nardone (Bar No. 18811)
BRADLEY ARANT BOULT CUMMINGS LLP
1615 L Street N.W., Suite 1350
Washington, D.C. 20036
P (202) 719-8216
F (202) 719-8316
JSweeney@babc.com

*Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 29th day of April, 2014, Plaintiffs' Motion to Exclude Defendants' Expert Testimony, Supporting Memorandum, and a proposed Order were served, via electronic delivery to Defendants' counsel via CM/ECF system which will forward copies to Counsel of Record.

*/s/ John Parker Sweeney*
John Parker Sweeney (Bar No. 08761)