**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Northern Division)**

| | | |
|---|---|---|
| **STEPHEN V. KOLBE, et al.,** | ) | |
| | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Case No.: 1:13-cv-02841-CCB** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **MARTIN J. O'MALLEY, et al.,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

**PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION**
**TO PLAINTIFFS' MOTION TO EXCLUDE**

**INTRODUCTION**

The Defendants' Opposition to Plaintiffs' Motion to Exclude (ECF No. 70)("Opposition") does not refute any of the material contentions made by Plaintiffs in their Motion to Exclude (ECF No. 65)("Plaintiffs' Motion" or "Motion to Exclude").

Defendants failed to refute the fact that Chief James Johnson's testimony before the Maryland General Assembly was never disclosed as evidence upon which they would rely.

Defendants failed to refute the facts that Dr. Christopher Koper's opinions in this case are not based on sufficient data to be reliable, could not be stated to a reasonable probability, and are contradicted by his sworn deposition testimony.

Defendants failed to refute the facts that Dr. Daniel Webster did not conduct any original research on the issues present in this case, did not verify the data upon which he relied, lacked sufficient data for his opinions, and offered opinions outside the scope of his expertise regarding the attributes of firearms and firearms accessories.

1

Defendants failed to refute the fact that none of their witnesses are qualified to provide expert ballistics testimony.

Defendants failed to refute the facts that Lucy Allen did not verify the data upon which she relied and admitted that none of it had been peer-reviewed.

Defendants failed to refute the facts that they never supplemented their disclosures to identify Maximilian Bulinski as a witness or provide Plaintiffs an opportunity to depose him.

Defendants failed to refute the fact that Joseph Vince disclaimed being a firearms expert in his deposition.

As Defendants have failed to refute the critical points advanced in Plaintiffs' Motion to Exclude, this Court should grant Plaintiffs' Motion.

## ARGUMENT

## I.     Defendants Have Not Shown that Plaintiffs' Motion Was Untimely.

Defendants begin their Opposition by claiming, in a single paragraph devoid of any citation to Rules or authority, that "the plaintiffs' motion to exclude should be denied as untimely." Opposition at 1. Defendants failed to offer what they believe was the proper time to file such a motion. Defendants also failed to offer a coherent argument as to why they believe Plaintiffs' Motion was untimely. Instead, Defendants assert that Plaintiffs "offer no explanation for their lack of timeliness." *Id*. at 1-2.

Plaintiffs provided no "explanation for their lack of timeliness" because Plaintiffs' Motion is timely. Plaintiffs could not have known the full extent of Defendants' experts' opinions, and Defendants' reliance upon them, until they received Defendants' Reply Memorandum in Support of Motion for Summary Judgment and Response in Opposition to Plaintiffs' Cross-Motion for Summary Judgment (ECF No. 62)("Defendants' Reply and

Response in Opposition"). Plaintiffs could not have known what evidence Defendants would advance, such as "supplemental" declarations newly-minted for the Defendants' Reply and Response in Opposition. *See* Supp. Decl. of Daniel Webster, Def. Ex. 81, ECF No. 62-6; Supp. Decl. of Christopher Koper, Def. Ex. 82, ECF No. 62-7; Decl. of Maximilian Bulinski, ECF No. 62-8. Nor could Plaintiffs have known the extent of Defendants' reliance upon the opinions of their experts until Defendants filed the last of their memoranda on summary judgment.

Defendants fail to offer a single entry in the Court's Scheduling Orders or deadline in the Federal Rules of Civil Procedure or Local Rules of this Court establishing a date by which evidentiary motions were to be filed when no hearing or trial date has been set. Defendants have had ample time to respond to Plaintiffs' Motion and can claim no prejudice from Plaintiffs' decision to wait until they had all of the facts before determining that a motion to exclude would be necessary.

Plaintiffs filed their Motion to Exclude as soon as was practicable after receiving all of Defendants' evidence offered on summary judgment. Defendants have not provided any reason why Plaintiffs' Motion was untimely. Defendants' baseless arguments should be rejected.

## II.     Defendants Have Not Refuted the Fact that They Did Not Disclose Chief Johnson's Testimony as Required.

Defendants have failed to refute the fact that Chief Johnson's testimony before the Maryland General Assembly was never disclosed during discovery as evidence upon which Defendants would rely. Thus, this Court should exclude Chief Johnson's testimony before the Maryland General Assembly under Fed. R. Civ. P. 37(c)(1).

Defendants' arguments to the contrary are either beside the point or misleading. First, Defendants argue that Plaintiffs' assertion that Chief Johnson's testimony was not in the Bill File is an irrelevant fact. Opposition at 3. Defendants' argument makes Plaintiffs' case for them.

Defendants never produced a copy of Chief Johnson's testimony nor disclosed it in discovery, and the absence of his testimony from the Bill File is a relevant issue because the Bill File was disclosed as material upon which Defendants would rely. In fact, the Bill File does contain a letter written by Chief Johnson supporting the Maryland Firearms Safety Act of 2013 (the "Act"), but it only addresses the handgun licensing scheme, which is not at issue in this litigation. *See* Letter from Chief James W. Johnson, Ex. A. Thus, the fact that Chief Johnson's testimony was not in the Bill File supports Plaintiffs' argument that it was never disclosed as evidence upon which Defendants would rely.

Defendants next assert that Plaintiffs were aware of Chief Johnson's testimony because members of Association Plaintiffs were present for Chief Johnson's testimony. Opposition at 3-4. Defendants' arguments, however, do not address the basis for Plaintiffs' Motion. Had Plaintiffs been aware that Defendants would rely upon this testimony, they would have deposed Chief Johnson much more extensively with respect to the statements he made before the General Assembly. Furthermore, if mere imputation of knowledge to some adverse parties were sufficient, there would be no need for the initial disclosure requirements set forth in the Federal Rules of Civil Procedure.

Finally, Defendants claim that Plaintiffs should have been aware of Chief Johnson's testimony because a letter from Defendant Gansler to Defendant O'Malley referenced Chief Johnson's testimony in a footnote and noted that it mirrored his testimony before Congress. Opposition at 4-5. While this is irrelevant because it does not refute Plaintiffs' contention that Chief Johnson's testimony was never disclosed during discovery, it is also misleading. Chief Johnson's testimony before the Maryland General Assembly does not mirror his testimony before Congress. In fact, his testimony before the Maryland General Assembly was related to the

provisions of the Act, while his testimony before Congress was a general policy statement on behalf of the National Law Enforcement Partnership to Prevent Gun Violence. *Compare* Transcript of Testimony of Chief James Johnson before Maryland General Assembly (Mar. 1, 2013), Ex. B *with* Testimony of Chief Jim Johnson before Senate Judiciary Committee (Jan. 30, 2013), Ex. C. Thus, even if a footnote citation to different testimony within one of hundreds of documents that were disclosed in discovery was sufficient to meet Defendants' obligations under Rule 26, the fact that Chief Johnson's congressional testimony is markedly different from his testimony before the Maryland General Assembly negates Defendants' argument.

Defendants' assertion that Plaintiffs are not prejudiced because Chief Johnson's designation as a hybrid fact/expert witness provided Plaintiffs with an opportunity "to examine him with respect to all of his views," Opposition at 5, is meritless. Defendants' Third Amended Disclosures, Ex. D, identify Chief Johnson, but do not identify either his testimony before Congress or his testimony before the General Assembly as areas of expected testimony. Thus, Plaintiffs were not provided with any notice that Defendants intended to rely upon him for such. Defendants cannot rely upon simply classifying Chief Johnson as a "hybrid fact/expert witness" as justification for failing to disclose his testimony before the General Assembly (and subsequently relying on it).

Plaintiffs have established that Defendants never disclosed during discovery that they would rely upon the testimony of Chief Johnson before the Maryland General Assembly and Defendants have not provided any refutation of that fact. Under Fed. R. of Civ. P. 26(a), Defendants were obligated to disclose any evidence upon which they would rely, and under Fed. R. Civ. P. 26(e), this obligation was, and is, ongoing. Defendants still have not supplemented their disclosures, despite being under an obligation to do so. *Cory v. Whisman, Grygiel &*

*Giordano, P.A.*, No. WMN-06-2694, 2012 U.S. Dist. LEXIS 64334 at *18-*19 (D. Md. May 8, 2012)(stating that the obligation to supplement disclosures under Fed. R. Civ. P. 26(e) "does not end at the close of discovery").

Defendants have violated Rule 26 and have provided no argument as to why their failure was substantially justified. Moreover, Defendants' failure to comply with Rule 26 prejudiced Plaintiffs, in that Plaintiffs would have questioned Chief Johnson thoroughly about this testimony at his deposition, had they known Defendants were going to rely upon it. Thus, under Fed. R. Civ. P. 37(c)(1), Defendants should be precluded from relying upon Chief Johnson's testimony in their motion for summary judgment, at the hearing, and at trial.

**III.    Defendants Have Not Refuted the Facts that Dr. Christopher Koper's Opinions Are Not Supported by Sufficient Data to Be Reliable, Cannot Meet the Low Standard of "More Likely than Not," and Are Contradicted by His Deposition Testimony.**

Defendants have failed to refute the facts that Dr. Koper's opinions are not based on sufficient data to be reliable under Fed. R. Evid. 702(b), that these opinions cannot meet even the low standard of "more likely than not," and that they are contradicted by his sworn deposition testimony. Plaintiffs' Motion at 3, 6-7.

First, Defendants assert that Plaintiffs have ignored data upon which Dr. Koper relied. Defendants identify three sources of information that purportedly justify their position: Dr. Koper's testimony in this case, Dr. Koper's 2013 Report, and Dr. Koper's testimony in his Supplemental Affidavit. Opposition at 8. The first and last of Defendants' list of sources are the same and are the subject of Plaintiffs' Motion. The opinions that Plaintiffs seek to exclude as based on insufficient data cannot themselves form their own supporting data.

Dr. Koper's 2013 "report" also does not provide any additional data support. At his deposition, Dr. Koper made clear that the book chapter which he authored in 2013 did not

contain any new research. Dep. of Christopher Koper, Ex. E at 68-69 (identifying only his 1997 and 2004 reports as having original research). In fact, Dr. Koper described his 2013 writing as a summary of his 2004 report. *Id*. at 26. The 2013 "report" authored by Dr. Koper for inclusion in Dr. Daniel Webster's book does not provide any more data upon which Dr. Koper could have based his opinion.

Thus, Defendants have not refuted the fact that Dr. Koper's opinion – that the challenged laws "have the potential to reduce shooting injuries in the state over the long run" – is not supported by any evidence. Dr. Koper himself has admitted that his studies of the federal assault weapon ban, which formed the basis of his opinions in this case, found no data to support the position that assault weapon bans decrease the lethality or injuriousness of gun violence or reduce the use of banned long guns or magazines in crime. Decl. of Christopher Koper, Defendants' Exhibit 7, ECF No.44-7, Ex. B at 2, 92, 96; Dep. of Christopher Koper, Ex. E at 94. For this reason alone, Dr. Koper's opinions should be excluded by this Court.

Defendants have failed to refute the fact that Dr. Koper could not state his conclusions to a reasonable degree of scientific certainty or probability. Opposition at 10-11. Defendants misconstrue Plaintiffs' position. By being unable to state that his conclusions were accurate to a reasonable degree of scientific certainty, Dr. Koper is unable to state that his opinions are more likely than not true. *See Burke v. Town of Walpole*, 405 F.3d 66, 91 (1st Cir. 2005)("[T]he term 'reasonable degree of scientific certainty' [is] 'a standard requiring that the injury was more likely than not caused by a particular stimulus. . . .'" (quoting Black's Law Dictionary 1294 (8th ed. 2004)). Plaintiffs are not arguing that Dr. Koper must "provide any specific range of probability or state the outcome to a certainty." Opposition at 10. Instead, all Plaintiffs sought was an affirmation from Dr. Koper that his opinions were more likely accurate than not; in other

words, that his opinions were more reliable than a guess. As Dr. Koper's deposition makes clear, and as Defendants do not refute, he is unable to provide such an assurance. Dr. Koper's opinions, by his own admission, are merely a guess. *See* Dep. of Christopher Koper, Ex. E at 185-87 ("Q: And so you cannot say that [the Act] would be more likely than not to achieve [a reduction or elimination of the use of banned magazines in mass shootings]? A: Not – I would have to see more observation. Have to see what happens.")

Defendants next argue that Dr. Koper's deposition testimony does not contradict of his declaration in this case. Opposition at 9-10. Dr. Koper testified at his deposition that his 2004 report was still accurate in that the available studies of state-level firearm bans did not show that they are effective tools in combating crime. Dep. of Christopher Koper, Ex. E at 84-85. His declaration, however, states that he believes the challenged Maryland laws will have an impact on crime. Decl. of Christopher Koper, Defendants Ex. 7, ECF No. 44-7 at ¶¶ 85-86. These two positions are not compatible, and Dr. Koper's opinions as to the efficacy of the challenged laws should be excluded. *Grace v. Family Dollar Stores, Inc.*, 637 F.3d 508, 512-13 (4th Cir. 2011)(disregarding an affidavit that contradicted previous, sworn deposition testimony); *see also Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 908 (6th Cir. 2006)("A directly contradictory affidavit should be struck unless the party opposing summary judgment provides a persuasive justification for the contradiction.").

Even if Defendants' unsupported assertion that "there is no inconsistency between the 2004 statement that a few state-level bans in existence for brief periods in the early 1990s had not been shown to reduce overall crime, on the one hand, and Professor Koper's opinion that a different state-level ban enacted in 2013 likely will reduce negative effects of gun violence, on the other," Opposition at 9, were correct, however, Dr. Koper's opinions still should be excluded.

As noted above, Fed. R. Evid. 702(b) requires that an expert's opinion be based on sufficient data. As Dr. Koper admits, however, all of the data related to state-level firearm bans illustrates that they will not have an impact on crime or the effects of criminal activity. Thus, even if Defendants were correct that Dr. Koper's deposition is not directly contradictory, it only underscores the lack of data upon which Dr. Koper has based his opinions.

Finally, Defendants' claim that Plaintiffs' position would mean there could be no new regulation of firearms is wholly without merit. Opposition at 11. Plaintiffs have demonstrated that there exists substantial data, from Dr. Koper's own reports, that conclusively shows that the challenged laws will not have an impact on crime, the negative effects of crime, or even the criminal use of the banned firearms and magazines. Dr. Koper readily admits this. Given this substantial data, Dr. Koper's opinions that the challenged laws will have an effect are inconsistent with available evidence and should be excluded as based on insufficient data. Plaintiffs have made no argument related to the admissibility of an expert opinion in the absence of any data; they argue only that an opinion that is contrary to all available data should be excluded.

**IV.     Defendants Have Not Refuted the Facts that Dr. Webster Performed No Original Research, Did Not Verify the Accuracy of the Third-Party Data Upon Which He Relied, Lacked Sufficient Data for His Opinions to Be Reliable, and Offered Opinions Outside the Scope of His Expertise.**

Defendants have failed to refute that Dr. Webster relied upon Dr. Koper's work without having done any of his own research. Opposition at 12-13. To the extent that Dr. Webster's opinions about the efficacy of the Act are based upon Dr. Koper's work, his opinions are no less subject to exclusion than Dr. Koper's opinions. Dr. Webster admitted he was aware of no other researcher than Dr. Koper who had studied the efficacy of laws similar to the Act. Dep. of Daniel Webster, Ex. F. at 144-45 (stating that the only other study of which Dr. Webster was aware was

9

one conducted by Plaintiffs' Expert Dr. Mark Gius, whose work also showed no "effects on state level gun related murder rates").

To the extent that Dr. Webster went beyond Dr. Koper's work, Defendants have not refuted Plaintiffs' showing that Dr. Webster's opinions should be excluded. Defendants admit that Dr. Webster based his opinions, in part, on the unverified, non-peer-reviewed data published by an online magazine, *Mother Jones*. Opposition at 15. Dr. Webster admitted that he had conducted no analysis of the data to determine how many of the reported mass shooting incidents involved firearms banned by the Act. Dep. of Daniel Webster, Ex. F. at 129-30. While Defendants are correct that experts need not personally conduct research to support their opinions, reliance on data that has never been verified without any analysis is not permissible. Dr. Webster blithely assumed that the *Mother Jones* data was both accurate and relevant to the issues at hand, when it was not. As the District Court for the Eastern District of Louisiana succinctly stated, "courts have . . . excluded expert opinion where the expert failed to conduct any independent research to determine the reliability of his assumptions." *JRL Enters. v. Procorp Assocs.*, No. 01-2893, 2003 U.S. Dist. LEXIS 9397 at *22 (E.D. La. June 3, 2003).

Defendants attempt to distinguish the many cases cited by Plaintiffs in support of their position by arguing that all of the authority cited by Plaintiffs involved "much different circumstances in which: (1) the data or opinions being relied upon were subject to significant question and not subject to verification; and (2) the expert relied solely and directly on that work, without any analysis or validation." Opposition at 14. Defendants fail to recognize, however, that these two conditions are met with respect to Dr. Webster's opinions based on the *Mother Jones* data. As noted above, the *Mother Jones* data was never subjected to any sort of validation or verification process. Moreover, Dr. Webster admitted in his deposition, "the only thing I did was

examine the trends just to get an understanding of the general temporal pattern." Dep. of Daniel Webster, Ex. F. at 136. Clearly, Dr. Webster did not subject the data to any analysis or verification and relied only on the data itself and as reported by *Mother Jones*. Thus, Defendants' attempt to distinguish the cases relied upon by Plaintiffs is without merit.

Finally, Defendants did not address the fact that Dr. Webster offered expert opinions on topics outside the scope of his expertise and that his opinions in Paragraph 9 of his declaration are not relevant to the issues in this case. Plaintiffs' Motion at 9-10. Thus, Defendants have conceded that these opinions are subject to exclusion.

## V.   Defendants Have Not Refuted the Facts that None of Defendants' Witnesses Are Experts in Ballistics and None of Defendants' Experts Are Qualified to Offer Non-expert Opinions on Ballistics.

Defendants failed to refute the fact that none of the witnesses challenged in Plaintiffs' Motion are experts in ballistics. Rather, Defendants claim that the opinions given by the law enforcement officers do not constitute "expert" ballistics testimony. Opposition at 16-17. This argument is without merit because these non-expert opinions fail to meet the requirements of Federal Rule of Evidence 701. Rule 701 permits a lay-witness to offer opinion testimony only if it is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701.

Defendants cited Chief Johnson's personal experience with shotguns, both as a hunter and a law enforcement officer, as the basis for his testimony that a shotgun loaded with the correct load "that does not give rise to too great a risk of overpenetration," would be a more suitable self-defense firearm than an assault weapon. Opposition at 16. While Plaintiffs do not dispute the fact that Chief Johnson does have some experience hunting with shotguns, that is not

sufficient to permit him to opine on the suitability of literally thousands of combinations of different loads, gauges, and shell lengths available for home-defense shotguns and their performance in the home. The opinions offered by Chief Johnson are not the types of opinions based on his perception and are impermissible under Rule 701(a). Only a qualified ballistics expert, which Defendants do not argue Chief Johnson is, is qualified to present such evidence to the Court.

Defendants attempted to defend Commissioner Batts' ballistics testimony by arguing that it was "not expert ballistics testimony." Opposition at 16. As Defendants themselves admit, however, Commissioner Batts merely relayed the results of someone else's research. He did not have personal knowledge of the ballistics testimony he offered. Rather, he reviewed relevant literature, formed an opinion based on it, and relayed both the facts and his opinion to the Court. Commissioner Batts' opinions are not based on his personal perception and are based on scientific knowledge within the scope of Rule 702. Thus, Commissioner Batts' opinions are impermissible under both 701(a) and 701(c).

Defendants also attempted to insulate Deputy Chief Stawinski's ballistics opinion from exclusion by asserting that it was based on events he had personally observed. Opposition at 17. This argument is without merit, however, as Deputy Chief Stawinski's opinions go far beyond his personal experience of once witnessing a .223 cal. round penetrating a soft ballistic vest and bullet resistant glass. As Deputy Chief Stawinski opines in Paragraph 33 of his Declaration, "rounds from assault weapons have the ability to easily penetrate most material used in standard home construction, car doors, and similar materials. Although rounds from many handguns can also penetrate through such materials, the rounds from assault weapons like the AR-15 are more dangerous and effective once they do so." Decl. of Deputy Chief Henry Stawinski, Defendants

Ex. 5, ECF No. 44-5 at ¶ 33. This opinion, in addition to being contradicted by the findings of ballistics studies conducted by the Federal Bureau of Investigation, proceeds beyond the scope of Deputy Chief Stawinski's personal experience. Uninformed extrapolation from personal perceptionis not permitted under Fed. R. Evid. 701(a).

Finally, Defendants make no argument related to Mr. Vince's ballistics testimony. Thus, they effectively concede that Mr. Vince is not qualified to offer ballistics opinions, as he admitted he was not, Dep. of Joseph Vince, Ex. G at 21, and any ballistics-related testimony offered in his declaration should be excluded.

For these reasons, Defendants have failed to refute any of Plaintiffs' arguments related to the ballistics testimony offered by Defendants' witnesses and Plaintiffs' Motion should be granted.

**VI.     Defendants Have Not Refuted the Fact that Lucy Allen Did Not Verify the Accuracy or Authenticity of the Data Upon Which She Relied.**

Defendants have failed to refute the fact, as discussed thoroughly above with respect to the opinions of Dr. Webster, that Ms. Allen's reliance on the *Mother Jones* data was improper and her opinions based on that data should be excluded. Defendants' argument that "the data used by *Mother Jones* has been made available to the public, [and] can be readily reviewed and tested" is not sufficient. Opposition at 19. As Ms. Allen admits, neither she, nor anyone else that she knows of, has verified the data reported by *Mother Jones* that provides the basis for her opinions. As such, Ms. Allen's opinions based on the *Mother Jones* data should be excluded.

**VII.    Defendants Have Not Refuted the Fact that They Did Not Disclose Maximilian Bulinski as a Witness.**

Defendants admit that they knew as early as March 27, 2014 that they might rely on the declaration of Mr. Bulinski. Opposition at 21. Defendants do not dispute that they never

supplemented their witness disclosures to include Mr. Bulinski as required by Fed. R. Civ. P. 26(e). Defendants have still failed to supplement their witness disclosures, despite their failure having been called to their attention by Plaintiffs' Motion. Their unjustified and stubborn failure to comply with Rule 26(e) mandates exclusion under Rule 27(c)(1) of this surprise witness, who was never disclosed in discovery nor offered for deposition.

## VIII.   Defendants Have Not Refuted the Fact that Mr. Vince Disclaimed Being a Firearms Expert at his Deposition.

Plaintiffs showed in their Motion to Exclude that Mr. Vince expressly disclaimed being a firearms expert and then offered expert testimony as to the history and functionality of firearms. Plaintiffs' Motion at 14. Defendants attempted to overcome Mr. Vince's deposition admissions by pointing to his education and experience, Opposition at 23, but the fact remains that Mr. Vince expressly rejected the notion that he was an expert in firearms. Defendants did not, and could not, refute this. Thus, Mr. Vince offered testimony outside the scope of his expertise, which must be excluded. *Belk, Inc. v. Meyer Corp*, 679 F.3d 146, 162 (4th Cir. 2012)("[A]n expert must have specialized knowledge to assist jurors in deciding particular issues in the case. . . .").

## CONCLUSION

As Defendants have failed to refute any of the grounds for exclusion offered by the Plaintiffs in their Motion to Exclude, this Court should grant Plaintiffs' Motion.

Respectfully submitted,

*/s/ John Parker Sweeney*
John Parker Sweeney (Bar No. 08761)
T. Sky Woodward (Bar No. 10823)
James W. Porter, III (Admitted *pro hac vice*)
Marc A. Nardone (Bar No. 18811)
BRADLEY ARANT BOULT CUMMINGS LLP
1615 L Street N.W., Suite 1350
Washington, D.C. 20036
P (202) 719-8216
F (202) 719-8316
JSweeney@babc.com

*Counsel for Plaintiffs*

**TABLE OF EXHIBITS**

Ex.     Exhibit Title

A.      Letter from Chief James W. Johnson

B.      Transcript of Testimony of Chief James Johnson before Maryland General Assembly

C.      Testimony of Chief Jim Johnson before Senate Judiciary Committee

D.      Defendants' Third Amended Disclosures

E.      Deposition of Christopher Koper (Feb. 3, 2014)

F.      Deposition of Daniel Webster (Jan. 17, 2014)

G.      Deposition of Joseph Vince, Jr. (January 17, 2014)